UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

## **DEFENDANTS' MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF**

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9238
kelly.klaus@mto.com

Attorneys for Defendants

## MOTION TO TRANSFER VENUE

Defendants Apple Inc. and Aftermath Records d/b/a Aftermath Entertainment move this Court to transfer this case, pursuant to 28 U.S.C. § 1404(a) to the Central District of California.

More than two months before they filed this lawsuit, the *same Plaintiffs* (using the names of different LLCs), represented by the *same counsel*, filed an action in the Central District of California that seeks damages for the *same transactions* that are at issue in this case. Both lawsuits will require the Courts to construe the *same underlying contracts*, and therefore will involve a significant overlap in terms of witness testimony, document discovery and issues for the Courts to resolve. The typical deference accorded to a plaintiff's forum selection drops out where, as here, the Plaintiffs already have selected another District in which to litigate overlapping issues, and where the Plaintiffs' maintenance of closely related proceedings in different Districts does not serve any valid interest.

As set forth more fully in the accompanying Memorandum of Points and Authorities, this is a clear case for a venue transfer under § 1404(a). The convenience of the parties and witnesses favors transfer, since the same witnesses are likely to testify about the same or substantially related issues involving the same contracts. The interest of justice favors transfer, because it is a more efficient conservation of Court and party resources to have overlapping cases decided in one federal court rather than two. It is undisputed that the Central District is a proper venue for this suit, and that District was Plaintiffs' preferred forum when they filed the substantially related action there two months before filing the complaint in this case.

Pursuant to Civil Local Rule 7.1(a), counsel for Defendants explained the nature of this motion and its legal basis to counsel for Plaintiffs during a telephone conference on September 14, 2007. Plaintiffs declined to stipulate to the relief that Defendants request through this motion.

1

2

This motion is supported by the accompanying Brief; all other pleadings and documents on file in this action; and any further submissions or arguments of counsel as may properly come before this Court.

s/Daniel D. Quick
Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
 (248) 433-7200
dquick@dickinsonwright.com
Attorneys for Defendants

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
 (213) 683-9238
kelly.klaus@mto.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT
<u>THEREOF</u>**

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9238
kelly.klaus@mto.com

Attorneys for Defendants

i

## **STATEMENT OF ISSUE PRESENTED**

Should this action be transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Central District of California, where (1) this action could have been brought and (2) the Plaintiffs, through sibling LLCs, **already have filed a substantially related lawsuit** that involves many of the same contracts, witnesses and transactions at issue in this lawsuit?

## CONTROLLING AUTHORITIES

*A.J. Indus., Inc. v. United States Dist. Ct.*, 503 F.2d 384 (9th Cir. 1974);

*Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256 (W.D. Wash. 2005);

*Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960);

*Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F. Supp. 1241 (S.D.N.Y. 1982).

*Helder v. Hitachi Power Tools*, 764 F. Supp. 93 (E.D. Mich. 1991);

*Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (9th Cir. 1989);

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996);

*Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393 (E.D. Mich. 1994);

*Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014 (N.D. Ill. 1998);

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809 (E.D. Mich. 2000);

*Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391 (S.D.N.Y. 2004);

*Republic of Bolivia v. Philip Morris Cos.*, 39 F. Supp. 2d 1008 (S.D. Tex. 1999);

*Thomas v. Home Depot*, 131 F. Supp. 2d 934 (E.D. Mich. 2001);

*Van Dusen v. Barrack*, 376 U.S. 612 (1964);

*Viron Int'l Corp. v. David Boland, Inc.*¸ 237 F. Supp. 2d 812 (W.D. Mich. 2002);

28 U.S.C. § 1404(a);

28 U.S.C. § 1391(b);

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO TRANSFER VENUE**

**I.      INTRODUCTION**

Two months before filing this lawsuit (the "Michigan Action"), the Plaintiffs in this case, through their sibling LLCs, filed a substantially related lawsuit in a different Judicial District, the United States District Court for the Central District of California (the "California Action"). The California and Michigan Actions seek damages for exactly the same transactions, namely, sales of downloads of recordings by the popular rap artist, Marshall B. Mathers III, professionally known as "Eminem," through the "iTunes Store" operated by Defendant Apple Inc. ("Apple").

The Michigan and California Actions have significant overlap in parties, counsel, issues and likely witnesses. The Plaintiffs behind the nominal LLC Plaintiffs in the two cases are the same three individuals: Jeffrey and Mark Bass and Joel Martin. One of the Defendants in this case – Aftermath Records d/b/a Aftermath Entertainment ("Aftermath") – also is a Defendant in the California Action.[1] The same lawyer – Richard S. Busch of King & Ballow – represents the Plaintiffs in both cases. And, as explained below, the Courts in both cases almost certainly will have to construe provisions in the same agreements.

The agreements relate to Eminem's musical works and are signed by the same individuals, including the individuals behind the LLC Plaintiffs in both actions. In the California Action, Plaintiffs claim that Aftermath breached those agreements by improperly computing artist royalties arising from the sale of Eminem recordings to Apple. Specifically, they claim that the relationship between Aftermath and Apple is not wholesaler/retailer but is instead licensor/licensee, and that artist royalties should have been calculated as such. In the Michigan Action, the Plaintiffs claim that Aftermath does not have the right to authorize Apple to

---

[1] Eminem is not a party to either case.

1

disseminate the musical compositions embodied in the recordings that are sold by Apple despite the fact that the same written agreements at issue in the California Action authorize Aftermath as well as its "distributors" *and* "licensees" to disseminate the compositions. That means that *even if* Plaintiffs are right in the California Action that Apple is a "licensee" (and they are not), they still will lose the Michigan Action because Aftermath has the right to disseminate the compositions at issue through licensees.

In short, the California and Michigan Actions likely will involve significant issues of contract interpretation concerning the ***same contracts***, signed by the ***same individuals***, and how those contracts relate to the sale of the ***same works*** sold by Apple. Plaintiffs may believe there is a tactical advantage to litigating overlapping cases in two different Districts. But neither the Federal Courts nor the Defendants are required to duplicate their efforts because Plaintiffs may perceive a tactical advantage in doing so. Plaintiffs conceded that the Central District of California is a proper and convenient forum for them and their counsel to litigate the issues in these cases by filing the related California Action there two months before filing in this District. Section 1404(a) authorizes the Court to transfer the suit to the Central District, where it will be related to the previously filed California Action and discovery and pretrial practice in the two actions coordinated.

## II.    FACTUAL BACKGROUND

### A.    The Plaintiff LLCs

The California and Michigan Actions bear the names of two different sets of LLC Plaintiffs. The same three individuals, however, are behind the LLC labels in both Actions, and the same lawyer represents both sets of Plaintiffs in both Actions. These three individuals are

Jeffrey and Mark Bass (the "Bass Brothers") and Joel Martin, who have had prior affiliations with Eminem and are party to some of the Eminem agreements at issue in the two Actions.[2]

The Plaintiff LLCs in the California Action are F.B.T., LLC ("F.B.T.") and Em2M, LLC ("Em2M"). According to the complaint filed in the California Action, the Bass Brothers are the only members of F.B.T., and Mr. Martin is the sole member of Em2M. Ex. B (First Amended Complaint) ¶¶ 8, 9. The Plaintiff LLCs in the California Action are represented by Richard S. Busch of King & Ballow. *Id.* at 1. The Plaintiff LLCs in the Michigan Action are Eight Mile Style, LLC ("Eight Mile") and Martin Affiliated, LLC ("Martin Affiliated"). According to documents filed with the State of Michigan, the Bass Brothers are the only members of Eight Mile. Ex. C (Articles of Organization and Certificate of Conversion for Eight Mile). The remaining LLC Plaintiff – Martin Affiliated – does not disclose its membership in the complaint or in filings with the State. As suggested by its name, however, it is overwhelmingly likely that Martin Affiliated is comprised of Joel Martin, who is the real person behind the second plaintiff in the California Action.[3] Mr. Busch also represents the Plaintiff LLCs in the Michigan Action.

---

[2] The Bass Brothers maintain a website ("8milestyle.com") that features a story about their and Mr. Martin's relationship with Eminem, and that discusses some of the LLCs that are Plaintiffs. *See* Ex. A, http://www.8milestyle.com/free-press.html ("Eminem has been signed for nearly a decade to [the Bass Brothers'] company, FBT Productions. In legalese, they furnish his services to Interscope Records. In regular talk, they're all good friends.").

[3] Other indicia of Mr. Martin's affiliation with "Martin Affiliated" (in addition to the name) include:

    (a)    The registered office address for Martin Affiliated is 1525 East Nine Mile Road, in Ferndale, which is exactly the same address as that of the three other LLCs. Ex. D (2007 Annual Statement for Martin Affiliated).

    (b)    Mr. Martin is the agent for service and manager of Eight Mile. Ex. E (Certificate of Assumed Name for Eight Mile).

    (c)    Martin Affiliated and Eight Mile both use the same counsel for their corporate filings. *See* Ex. I (Articles of Organization and Certificate of Conversion for Eight Mile); Ex. F (Articles of Organization for Martin Affiliated).

3

In short, the Bass Brothers are the real individuals behind one of the Plaintiff LLCs in the California Action and one of the Plaintiff LLCs here; and Joel Martin is the real individual behind the other Plaintiff LLC in the California Action and (almost certainly) is the real person behind the second Plaintiff LLC in this Action.

**B.     The First-Filed Case – The California Action**

On May 21, 2007, the Bass Brothers (through F.B.T.) and Mr. Martin (through Em2M) filed the California Action against Aftermath, which also is a Defendant in this Action.[4] Aftermath has entered into written agreements, dated March 9, 1998 and July 2, 2003 (the "1998 Agreement" and the "2003 Agreement," respectively), with Eminem. Jeffrey Bass (for F.B.T.) signed both Agreements, and Mr. Martin signed the 2003 Agreement.

In the California Action, the Bass Brothers and Mr. Martin contend their LLCs have interests in the royalties that Aftermath pays for selling certain Eminem recordings through various channels, including through Apple's iTunes Store. Ex. B ¶¶ 21-24. The Bass Brothers and Mr. Martin further allege that Aftermath breached the 1998 and 2003 Agreements by calculating royalties on sales through iTunes (and other download sites) according to the Agreements' terms for distribution by resale, rather than according to the Agreements' royalty terms for licensees. *Id.* ¶ 35; Ex. H (excerpts from 1998 Agreement); Ex. I (excerpts from 2003 Agreement).

---

(d)     In a 2004 action filed by Eight Mile and Martin Affiliated against Apple (also assigned to this Court), Plaintiffs characterized Joel Martin as "a representative of Plaintiffs." Ex. G (*Eight Mile Style, LLC et al. v. Apple Computer, Inc. et al.* Complaint) ¶ 26.

[4] Aftermath is a joint venture, and the California Action also names as Defendants the entities that have ownership interests in the Aftermath joint venture. The additional named Defendants are UMG Recordings, Inc., Interscope Records and ARY, Inc.

4

### C.     The Second-Filed Action - The Michigan Action

On July 30, 2007, two months after they filed the California Action, the Bass Brothers (through Eight Mile) and Mr. Martin (through Martin Affiliated) filed the Michigan Action. The Michigan Action, like the California Action, seeks damages arising from the sales of Eminem downloads through the iTunes Store. The only difference between the Plaintiffs' claims concerning iTunes sales in the two cases relates to the particular right that is being asserted in each case. In the California Action, the Bass Brothers and Mr. Martin are seeking damages related to their claimed interests in the *sound recordings* of the Eminem songs sold through iTunes. In the Michigan Action, the Bass Brothers and Mr. Martin are seeking damages relating to their claimed interests in the *compositions* that are embodied in those same sound recordings sold through iTunes. Michigan Compl. ¶ 8. In the California Action, the Bass Brothers and Mr. Martin claim that Aftermath and its affiliates *have* the right to authorize distribution of Eminem's *sound recordings* through iTunes, but that Aftermath is not calculating the royalty correctly. In the Michigan Action, the Bass Brothers and Mr. Martin contend that Aftermath and Apple do *not* have the right to distribute the *compositions* embodied in those recordings, and the Bass Brothers and Mr. Martin have therefore styled their principal claim in the Michigan Action as one for copyright infringement. *Id.* ¶ 12.

The Complaint in the Michigan Action does not mention either the 1998 or the 2003 Agreement. Both of those Agreements, however, are directly relevant to the Plaintiffs' contention that there has been no authorization for the dissemination of the compositions. That is because each Agreement contains a "Controlled Composition" clause, which grants to Aftermath all the authorization that is required for the dissemination of the compositions as embodied in the Eminem sound recordings. The 1998 Agreement provides:

> All Controlled Compositions (i.e., songs written or controlled, directly or indirectly, in whole or in part, by F.B.T., Artist [Eminem], *any affiliated company of F.B.T.*, Artist, any producer or any affiliated company of any producer) *will be licensed to Aftermath and its distributors/licensees* ....

5

Ex. H ¶ 6(a) (emphasis added).

    Similarly, the 2003 Agreement provides:

> All Controlled Compositions (i.e., songs written or controlled, directly or indirectly, in whole or in part, by Artist [Eminem], any affiliated company of Artist, *any producer or any affiliated company of any producer*) *will be licensed to Aftermath and its distributors/licensees ....*

Ex. I ¶ 6 (emphasis added).

    The Controlled Composition clauses go on to prescribe the royalty that will be paid for the dissemination of the compositions embodied in the sound recordings covered by the Agreements.

    The Controlled Composition clauses will be the basis for a complete defense to the allegations in the Michigan Action. The compositions at issue in that Action are "Controlled Compositions" according to the express allegations on the face of Plaintiffs' Complaint. Plaintiffs specifically allege that the compositions in issue were "written and composed, in part, by Marshall B. Mathers, III, professionally known as 'Eminem.'" Michigan Compl. ¶ 8. Such compositions fall precisely within the Agreements' definition of "Controlled Compositions." Ex. H ¶ 6(a); Ex. I ¶ 6. The compositions also are "Controlled Compositions" because Plaintiffs allege that Eight Mile and Martin Affiliated control them in whole are in part, and both of these LLCs are clearly "affiliated compan[ies] of F.B.T." – which also makes the works "Controlled Compositions" under the Agreements. Ex. H ¶ 6(a); Ex. I ¶ 6.

    The Agreements expressly provide that "Controlled Compositions" "will be licensed to Aftermath *and its distributors/licensees*." *Id*. (emphasis added). Hence, regardless of the resolution of the contract question that is central to the California Action – namely, whether Apple is a "distributor" or "licensee" – the dissemination of the compositions through iTunes is authorized under the 1998 and 2003 Agreements.

### III. ARGUMENT

Section 1404(a) "prevent[s] the waste of 'time, energy and money'... 'protect[s] litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The statute expressly authorizes the Court to transfer this civil action to any District where it might have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

This Action satisfies both of the requirements for transfer. *First*, it is undisputed this case could have been brought in the Central District of California. Indeed, Plaintiffs *already* filed a substantially related case (through sibling LLCs) in the Central District of California. *Second*, Plaintiffs' prior filing in the Central District of California, as well as the significant overlap in likely issues in the two cases, demonstrates that a transfer and relation of the two cases in one court is in "the convenience of parties and witnesses" and "the interest of justice."

### A. The Michigan Action Could Have Been Brought In The Central District of California

It is undisputed that Plaintiffs could have instituted this Action in the Central District of California. "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought in only (1) a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b). For venue purposes, a corporation resides in "any judicial district in which it is subject to personal jurisdiction." *Id.* § 1391(c). In this case, both Apple and Aftermath are subject to personal jurisdiction in the Central District of California, and hence both reside there. Plaintiffs clearly could have filed this case in the Central District, just as they filed (through their sibling LLCs) the closely related California Action in the Central District two months before filing this Action.

### B. A Transfer Serves The Convenience Of Parties And Witnesses And Is In The Interest of Justice

In considering whether to transfer venue to a District where a case could have been brought, the Courts may consider a number of factors, including: "(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). The pertinent factors here weigh overwhelmingly in favor of a transfer.

#### 1. The Same Witnesses Almost Certainly Will Testify On Issues Related To The Same Agreements In The California Action

The convenience of witnesses is one of the most important factors in adjudicating a motion to transfer venue. *Thomas v. Home Depot*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001). In weighing this factor, the residence of key witnesses is more important than the raw numbers of witnesses residing in any particular jurisdiction. *Id.* In this Circuit, courts consider the convenience of party, as well as third-party, witnesses. *See id.* at 938-39 (rejecting the plaintiff's assertion that the convenience of the defendant's party witnesses carried no weight and noting that "no authority in this jurisdiction supports that contention").

Based on the Complaints and the identity of the individual parties in interest, it appears that every individual who would be a witness in the Michigan Action also would be a witness in the California Action. As discussed in the factual background, *supra*, both Actions likely will involve significant issues of interpreting the exact same Agreements, the 1998 and 2003 Agreements. To the extent these questions call for the testimony of witnesses who negotiated and/or signed the Agreements, the same witnesses would be testifying in both Actions. By

8

transferring this Action to the Central District, where the first Action was filed, the Court will increase the likelihood that witnesses need only be deposed once rather than twice.

The Central District of California also is a convenient forum for the party witnesses. The real individuals behind the LLCs in both actions – the Bass Brothers and Mr. Martin – are the same in both cases. The Bass Brothers and Mr. Martin already have demonstrated that the Central District is a convenient District for them to appear as witnesses and to litigate: that is where they filed the first Action. The Central District also is more convenient for witnesses affiliated with Apple and Aftermath, both of which are based in California. The convenience of witnesses weighs decisively in favor of transfer.

### 2. The Interest Of Justice Favors Transfer To Facilitate Coordination With The Substantially Related California Action

The "interest of justice" analysis asks which forum will be superior for "'ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case.'" *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (9th Cir. 1989)). Courts may consider "any factor that may make any eventual trial 'easy, expeditious, and inexpensive'" in determining whether a transfer is in the interest of justice. *See Helder v. Hitachi Power Tools*, 764 F. Supp. 93, 96 (E.D. Mich. 1991) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "'Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion ....'" *Amazon.com*, 404 F. Supp. 2d at 1261 (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)).

Transfer of this Action to the Central District of California is in the interest of justice because it will allow coordination with Plaintiffs' previously filed California Action. "Although there is no precise rule that, as between federal district courts, one court should defer to the other,

9

'*the general principle is to avoid duplicative litigation.*'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (emphasis added). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). *Accord Heller Fin.*, 883 F.2d at 1293 (courts should consider the benefit from "trying related litigation together, and having a judge who is familiar with the applicable law try the case"). Transfer to a District with a pending, related case is a frequently cited and independent basis for transfer. *See, e.g.*, *A.J. Indus., Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974); *Republic of Bolivia v. Philip Morris Cos.*, 39 F. Supp. 2d 1008, 1009-10 (S.D. Tex. 1999); *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004); *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982).

Consolidating the two Actions before one Court in the same District will conserve judicial resources and further the interest of justice. Given that both Actions likely will require the interpretation of the same Agreements, it is in the interest of justice to have one Court, rather than two Courts, supervise litigation concerning the interpretation of those same Agreements. It serves the interest of justice for the Court in the California Action to consider those questions, both because that is the District where the Plaintiffs first filed an Action related to the Agreements and because *both Agreements provide they are to be construed according to California law*. Ex. H ¶ 21; Ex. I ¶ 22. A District Court in California deals with questions of California state law in diversity cases much more frequently than a Court in this District, and hence is the preferred forum for resolving issues of local law. *See, e.g.*, *Heller Fin.*, 883 F.2d at 1294.

Courts may also consider in the interest of justice analysis the relative congestion of court dockets or the speed at which a case will proceed to trial or disposition. *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 819 (W.D. Mich. 2002); *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1019-20 (N.D. Ill. 1998). The most relevant court management statistics in this inquiry are the median time intervals between filing and disposition and between filing and trial. *Law Bulletin Publ'g Co.*, 992 F. Supp. at 1020.

In the Eastern District of Michigan, the median time interval between filing of a civil case and disposition of the case for the 12-month period ending September 30, 2006 was **101.2** months; there were 18,713 such cases in 2006. Ex. J (*2006 Judicial Business of the United States Courts: Annual Report of the Director*, tbl. C-5). For the same time period in the Central District of California, the median interval between filing and disposition was **7.2** months; there were 8,851 such cases during the period. *Id.* In the Eastern District of Michigan for the same time period, the median time interval between filing of a civil case and trial was **24 months**; there were 66 such cases that went to trial. *Id.* at tbl. C-10. For the same time period in the Central District of California, the median time interval between filing and trial was **21.3 months**; there were 134 such cases that went to trial.[5] *Id.*

Transferring this Action to the Central District of California, where the related Action is pending, will require only one court to expend its resources familiarizing itself with the Agreements, parties, witnesses, and transactions at issue. Here, the less congested Court (the

---

[5] For the prior period ending September 30, 2005, the median time interval between filing of a civil case and disposition in the Eastern District of Michigan was 9.9 months (3,677 such cases); for the same time period in the Central District of California, the median interval between filing and disposition was 7.4 months (10,773 cases). Ex. K (*2005 Judicial Business of the United States Courts: Annual Report of the Director*, tbl. C-5). In 2005, the median time interval between filing of a civil case and trial in the Eastern District of Michigan was 22 months (66 such cases); for the same time period in the Central District of California, the median interval between filing and trial was 20.5 months (155 such cases). *Id.* at tbl. C-10. These statistical reports from the Administrative Office of the U.S. Courts can be found at http://www.uscourts.gov/judbususc/judbus.html.

Central District of California) is also the forum where the Plaintiffs filed the first of the related cases, and the forum supported by the clear weight of the other interest of justice and convenience factors. In this case, all of the relevant interest of justice factors point to the Central District of California as the proper forum for consideration of both of these related cases.

### 3. The Location Of Documents And Ease Of Access To Sources Of Proof Favors Transfer

The ease of access to sources of proof strongly favors the California venue. *See Helder*, 764 F. Supp. at 96 (finding that access to sources of proof would be most convenient in the transferee district and granting the motion to transfer venue based on this and other factors). The sources of proof concerning the interpretation of the Agreements will substantially overlap between the two cases. So will any questions concerning the number of downloads through iTunes, which could be relevant to the damages issues across the two cases.

### 4. Plaintiffs Already Have Indicated Their Preferred Forum – The Central District Of California

Courts traditionally give some weight to a plaintiff's choice of forum, though this factor cannot defeat transfer to a forum that is more convenient and in the interest of justice. *See Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 399 (E.D. Mich. 1994) (although a plaintiff's "choice of forum should be granted some deference, it is undisputed that courts will not blindly prefer the plaintiff's choice of forum over a more convenient location.") (quotations omitted); *Thomas*, 131 F. Supp. 2d at 937 ("A plaintiff's chosen forum ... is not sacrosanct, and will not defeat a well-founded motion for a change of venue.").

In this case, Plaintiff's choice of forum for the Michigan Action is entitled to no weight, because these same Plaintiffs (through their affiliated LLCs) previously filed a substantially related case in the Central District, where they are represented by the same lawyer who represents them in this Action. Plaintiffs cannot with a straight face contend that they will be inconvenienced by a transfer, given that they and their counsel will be traveling to the Central

12

District to litigate related issues concerning damage claims for the same digital downloads in the California Action. To the extent the Plaintiffs' choice of forum has any weight on this motion, it weighs in favor of the *first* forum in which they chose to litigate these related cases.

## IV.    CONCLUSION

Transfer of the Michigan Action to the Central District of California pursuant to 28 U.S.C. § 1404(a) best serves the convenience of the witnesses and the interest of justice. For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Transfer Venue.

s/Daniel D. Quick
Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
 (248) 433-7200
dquick@dickinsonwright.com
Attorneys for Defendants

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
 (213) 683-9238
kelly.klaus@mto.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2007, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the all counsel.

13

                                        <u>s/Daniel D. Quick</u>
                                        Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
 (248) 433-7200
dquick@dickinsonwright.com

BLOOMFIELD 46456-12 867417v1

14