.

AFTERMATH RECORDS
c/o Peter Paterno, Esq.
King, Purtich, Holmes, Paterno & Berliner
1900 Avenue of the Stars, Suite 2500
Los Angeles, CA 90067

As of July 2, 2003

Marshall B. Mathers III
c/o Paul Rosenberg
270 Lafayette Street
Suite 805
New York, NY 10012

RE: **AFTERMATH RECORDS/ MARSHALL B. MATHERS III  p/k/a "EMINEM"**

Dear Mr. Mathers:

The following, when executed by all of the parties, will confirm the material terms of the agreement (the "Artist Agreement") between Aftermath Records ("Aftermath") and Marshall B. Mathers III p/k/a "EMINEM" ("Artist"). The parties hereto may enter into a more formal agreement containing the terms of this Agreement and the standard terms and conditions commonly found in our distributor's long-form agreement ("Long Form Agreement"). In connection therewith, Aftermath and you will negotiate in good faith all additional terms and conditions contained in our distributor's standard long form agreement, and all terms and conditions not included in this Agreement. Unless and until the Long Form Agreement is entered into, this Agreement shall be the sole and exclusive binding agreement between the parties with respect to the subject matter hereof and our failure to enter into any Long Form Agreement will not derogate from this agreement's enforceability. Notwithstanding the foregoing, Aftermath agrees to include in the Long Form Agreement (and in the event that a Long Form Agreement has not been entered into, Aftermath and you will negotiate in good faith, all terms and conditions not contained in this Agreement) all of the provisions usually included in "high end" recording agreements, including such matters as greatest hits advances, longer periods to audit records, bring lawsuits, etc. Further, reference is made to the agreement dated as of March 9, 1998 between you, F.B.T. Productions and Aftermath Entertainment, as amended and the assignment and amendment agreement dated as of September 27, 2000 hereinafter sometimes referred to collectively together with all amendments, modifications, exhibits, schedules and inducement letters thereto as the "Prior Agreements". This Agreement shall not constitute or be deemed a modification or an extension of the Prior Agreements, as this Agreement is a new and separate one for your services and shall have the full force and effect of a new and separate agreement, supported by new consideration, executed as of the date hereof. You further acknowledge, understand and agree after consulting with

7/2/03
03-088-2-exe
lcr

1




the numerator of which shall be the number of Artist's videos embodied thereon and the denominator of which shall be the total number of royalty bearing videos embodied thereon (including Artist's videos).

6.    Mechanical Royalties:    All Controlled Compositions (i.e., songs written or controlled, directly or indirectly, in whole or in part, by Artist, any affiliated company of Artist, any producer or any affiliated company of any producer) will be licensed to Aftermath and its distributors/licensees and Aftermath and its distributors'/licensees' Canadian licensee for the U.S. and Canada, respectively, at a rate equal to the minimum statutory rate (i.e., without regard to the so-called "long-song formula") which is in effect in the applicable country upon the date the earlier of the actual delivery date of such master or the date such master was supposed to be delivered in accordance with the Agreement (the "Controlled Rate"). The maximum mechanical royalty on each LP will be limited to 12 for LPs, 4 for EPs and 2 for singles. No mechanical royalties will be payable on non-record royalty-bearing records (but Aftermath will pay mechanical royalties on fifty percent [50%] of standard album free goods, but not on limited duration Special Program free goods).

7.    Individual Producers/Creative Control:    The individual producer, selections, recording budget and time and place of recording shall be subject to Aftermath's reasonable prior approval.    All recordings hereunder shall be commercially and technically satisfactory in Aftermath's sole judgment. Artist will record masters that are reasonably consistent in style and genre to the material that induced Aftermath to enter into this agreement.

8. Ownership: All master recordings recorded by Artist during the term hereof, from inception of recording, and all reproductions derived therefrom, and all master recordings acquired hereunder shall be Aftermath's property and Aftermath shall be the copyright proprietor thereof (specifically excluding the copyright in the underlying musical compositions). The rights granted to Aftermath for such masters shall be in perpetuity and shall be for the Territory described above. Aftermath has the exclusive right to exploit and license or assign for exploitation the masters or any derivatives of the masters. Aftermath can exploit them in any manner in records or any other medium or field of use, and can add to, edit, alter or delete from or remix the masters at our sole election. Aftermath and its distributors/licensees shall have the exclusive right to exploit all such masters in any and all forms of media now known and hereinafter developed and shall have the further exclusive right to use Artist's name, likeness and biographical material (such likeness and biographical material subject to your reasonable and timely approvals) in connection with any and all promotion, marketing and/or exploitation of such masters. Artist agrees not to participate in the re-recording of any composition embodied in a master before the later of: five (5) years after Artist delivers such masters to Aftermath, or two (2) years after the end of the term.

7/2/03
03-088-2-exe
lcr

8

controlled by the Artist , but no such assignment shall relieve the Artist from any of its obligations hereunder and F.B.T., Martin, Aftermath and/or Interscope may assign its rights under this Agreement in whole or in part to any subsidiary, affiliated or controlling corporation, to any Person owning or acquiring a substantial portion of its stock or assets, and such rights may be similarly assigned by any assignee. This agreement shall be binding on each party's successors and permitted assigns.

22.    This Agreement shall be the sole and exclusive binding agreement between the parties setting forth the entire understanding of the parties hereto relating to the subject matter hereof and superseding all prior or contemporaneous agreements, negotiations, promises, representations, understandings and/or discussions whether oral or written, pertaining thereto. No modification, amendment, waiver, termination or discharge of this Agreement or of any of the terms or provisions hereof shall be binding upon either party hereto unless confirmed by a written instrument signed by Aftermath or by Artist. No waiver by either party hereto of any term or provision of this Agreement or of any default hereunder shall affect Aftermath's or Artist's respective rights thereafter to enforce such term or provision or to exercise any right or remedy in the event of any other default whether or not similar. This Agreement has been entered into in the State of California, and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of California applicable to contracts entered into and performed entirely within the State of California, with respect to the determination of any claim, dispute or disagreement, which may arise out of the interpretation, performance or breach of this Agreement.

23.    (a)    Artist's address for notice and payments shall be to Marshall Mathers III, c/o Paul Rosenberg, Esq., Goliath Artists, 270 Lafayette, Ste 805, New York, NY 10012 with a copy to Theo Sedlmayr, Esq., Cutler and Sedlmayr LLP, 270 Lafayette, New York, NY 10012. Aftermath shall provide a courtesy copy of all notices to Artist to Gary Stiffleman, Esq, Ziffren, Brittenham, Branca Fischer, Gilbert-Lurie & Stiffelman LLP, 1801 Century Park West, Los Angeles, CA 90067 provided Aftermath's failure to provide same shall not be deemed a breach hereof or otherwise impair the notice given.

(b)    F.B.T.'s address for notice and payments shall be to F.B.T. as set forth on the first page hereof with a copy to Howard Hertz, Esq., Hertz, Schram & Saretsky, P.C., 1760 S. Telegraph Rd., #300, Bloomfield Hills, MI 43802-0183.

(c)    Martin's address for notice and payments shall be 1525 E. Nine Mile Road, Ferndale, MI 48220.

(d)    Aftermath's address for notice shall be to Aftermath as set forth on the first page hereof with a copy to Interscope Records, 2220 Colorado Boulevard, Santa Monica, CA 90404 attention Head of Business Affairs.

24.    A waiver by any party of any provision of this Agreement in any instance

7/2/03
03-088-2-exe
lcr

22

shall not be deemed to waive it for the future. All remedies, rights, undertakings, and obligations contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking or obligation of either party.

25.    Should any party hereto institute any action or proceeding at law or in equity to enforce any provision of this Agreement, including an action for declaratory relief, or for damages by reason of an alleged breach of any provision of this Agreement, or otherwise in connection with this Agreement, or any provision hereof, the prevailing party shall be entitled to recover from the non-prevailing party reasonable and actual attorneys' fees and costs for services rendered to the prevailing party in such action or proceeding.

26.    As a material inducement for F.B.T. and Martin to enter into this Agreement, Aftermath, Interscope and Artist each hereby represent, warrant and confirm that nothing contained in or omitted from this Agreement is intended to or shall be deemed to deprive F.B.T. or Martin, or any of their respective affiliated entities or principals, of the benefits of any and all rights, privileges and entitlements accorded to them under the Prior Agreements or any amendments, modifications, exhibits, inducement letters or schedules thereto, as well as under any other related documentation, all of which agreements and related documentation are hereby ratified and affirmed. Without limiting the foregoing, the surviving provisions of the underlying artist agreement dated as of November 28, 1995 between F.B.T. and Artist, as amended (e.g. those provisions relating to representations, warranties, indemnifications and music publishing rights – but expressly excluding provisions that were superseded by the Prior Agreements such as royalty obligations and exclusive recording obligations) are hereby ratified and affirmed.

If this accurately reflects your understanding and agreement, please sign in the spaces provided below.


ACCEPTED AND AGREED:

AFTERMATHRECORDS


By: _____          By: _____
    an authorized signatory               Marshall Mathers III


ACKNOWLEDGED AND AGREED TO INSOFAR AS SAME PERTAINS TO IT:

F.B.T. Productions, L.L.C.                Interscope Records, a division
                                          of UMG Recordings, Inc.


7/2/03
03-088-2-exe                              23
lcr

By: _____          By: _____
      An authorized signatory                  An authorized signatory


_____              _____
Andre Romell Young ("Dre")                    Joel Martin
ss#_____           ss#_____