AS OF March 9, 1998

**VIA FACSIMILE**
(212) 431-0733

Paul Rosenberg, Esq.
67 Vestry Street, #9A
New York, NY 10013

    RE:    **AFTERMATH ENTERTAINMENT/ F.B.T PRODUCTIONS
MARSHALL B. MATHERS III p/k/a "EMINEM"**

Dear Paul:

    The following, when executed by all of the parties, will confirm the material terms of the agreement (the "Agreement") between Aftermath Entertainment ("Aftermath") and F.B.T. Productions ("F.B.T.") regarding F.B.T. furnishing to Aftermath the exclusive recording services of Marshall B. Mathers III p/k/a "EMINEM" ("Artist").

    The parties hereto may enter into a more formal agreement containing the terms of this Agreement and the standard terms and conditions commonly found in our distributor's long form agreement ("Long Form Agreement"). In connection therewith, Aftermath and F.B.T. will negotiate in good faith all additional terms and conditions contained in our distributor's standard long form agreement, and all terms and conditions not included in this Agreement. Unless and until the Long Form Agreement is entered into, this Agreement shall be the sole and exclusive binding agreement between the parties and our failure to enter into any Long Form Agreement will not derogate from this agreement's enforceability. Notwithstanding the foregoing, Aftermath agrees to include in the Long Form Agreement (and in the event that a Long Form Agreement has not been entered into, Aftermath and F.B.T. will negotiate in good faith, all terms and conditions not contained in this Agreement) all of the provisions usually included in "high end" recording agreements, including such matters as greatest hits advances, longer periods to audit records, bring lawsuits, etc.

    1.    Territory:    The Universe.

184253CT.N05
March 12, 1998

-1-



   (g) The royalty payable to you for New Mediums will be seventy five percent (75%) of the otherwise applicable royalty rate.

6. Mechanical Royalties:

   (a) All Controlled Compositions (i.e., songs written or controlled, directly or indirectly, in whole or in part, by F.B.T., Artist, any affiliated company of F.B.T., Artist, any producer or any affiliated company of any producer) will be licensed to Aftermath and its distributors/licensees and Aftermath and its distributors'/licensees' Canadian licensee for the U.S. and Canada, respectively, at a rate equal to 75% (the "Controlled Rate") of the minimum statutory rate (i.e., without regard to the so-called "long-song formula") which is in effect in the applicable country upon the date the earlier of the actual delivery date of such master or the date such master was supposed to be delivered in accordance with the Agreement. The maximum mechanical royalty on each LP will be limited to the following:

$$(A \times B) + (.75A)(C-B)$$

Where "A" = the Statutory Rate, "B" = the number of compositions (or fractional equivalent) written by Dr. Dre, and "C" = the total number of compositions on the record concerned (not to exceed 10 for LPs (but 11 solely for USNRC Net Sales of LPs in CD configuration in excess of five hundred thousand [500,000] units), 4 for EPs and 2 for singles), provided, however, with respect to LPs, Aftermath will increase such cap for one (1) outside composition (i.e. compositions not written by you, Artist or the producer thereof) to 100% of the minimum statutory rate as applicable . No mechanical royalties will be payable on non-record royalty-bearing records (but Aftermath will pay mechanical royalties on fifty percent [50%] of standard album free goods, but not on limited duration Special Program free goods).

   (i) With respect to LPs 2 through 4, in the event that any such LP achieves USNRC net sales of 500,000 units the Controlled Rate will escalate on a prospective, LP-by-LP basis to 85% of the minimum statutory rate (i.e., without regard to the so-called "long-song formula") which is in effect in the applicable country upon the date the earlier of the actual delivery date of such master or the date such master was supposed to be delivered in accordance with the Agreement.

   (ii) With respect to LPs 5 through 7, in the event that any such LP achieves USNRC net sales of 500,000 units the Controlled Rate will escalate on a prospective, LP-by-LP basis to 85% of the minimum statutory rate (i.e., without regard to the so-called "long-song formula") which is in effect in the applicable country upon the date the earlier of the actual delivery date of such master or the date such master was supposed to be delivered in accordance with the Agreement; and in the event that any such LP achieves USNRC net sales of 1,000,000 units the Controlled Rate will escalate on a prospective, LP-by-LP basis to 100% of the minimum statutory rate (i.e., without regard to the so-called "long-song formula") which is in effect in the applicable country upon the date the earlier of the actual delivery date of such

(b) LP1 shall be released in Canada and the United Kingdom within 120 days of the initial release in the United States in accordance with Aftermath's standard terms and conditions (i.e. in the event that Aftermath does not release LP1 in Canada or the United Kingdom during such 120 day period, F.B.T. shall have the right within 60 days after such period to notify Aftermath of its election to cause Aftermath to enter into an approved license agreement with a third party record manufacturer and distributor to release such unreleased album in such territory, provided Aftermath shall be required to enter into such license agreement prior to the end of a 60 day cure period commencing upon Aftermath's receipt of F.B.T.'s notice.

18. Videos: Commitment of one (1) video per album. The producer, director, budget and master for the video will be mutually selected by you and us. F.B.T. and Aftermath will mutually agree to a production budget for each video, and any production costs in excess of such budget which result from F.B.T./Artist's acts or omissions will be recoupable from any and all monies otherwise payable to you under this agreement (excluding mechanical royalties). Aftermath will own all videos and the copyrights in the videos, but we will not exploit videos for other than promotional purposes without your consent. With respect to such promotional uses, you will provide us with free synchronization and mechanical licenses for any Controlled Compositions. With respect to each video that Aftermath agrees to produce, fifty percent (50%) of all video production costs (or payments to acquire video rights) paid by Aftermath will be recoupable from record royalties and one hundred percent (100%) thereof will be recoupable from video royalties. The budget for each such video shall be mutually approved by Aftermath and F.B.T. provided a budget of $50,000 shall not be disapproved by virtue of its overall amount.

19. Tour Support: In connection with LP1, Aftermath will designate the amount of $50,000 for short fall domestic tour support. The short fall tour support is 100% recoupable.

20. Assignment. Aftermath may assign this agreement to any parent, subsidiary or affiliate of ours, to any person or entity acquiring all or a substantial portion of our assets, or to any entity with which we merge. You may not assign this agreement, in whole or in part; provided, that you may assign your right to receive income, one-time, to an entity wholly-owned and controlled by you.

21. This Agreement shall be the sole and exclusive binding agreement between the parties setting forth the entire understanding of the parties hereto relating to the subject matter hereof and superseding all prior or contemporaneous agreements, negotiations, promises, representations, understandings and/or discussions whether oral or written, pertaining thereto. No modification, amendment, waiver, termination or discharge of this Agreement or of any of the terms or provisions hereof shall be binding upon either party hereto unless confirmed by a written instrument signed by Aftermath or by F.B.T.. No waiver by either party hereto of any term or provision of this Agreement or of any default hereunder shall affect Aftermath's or F.B.T.'s respective rights thereafter to enforce such term or provision or to exercise any right or remedy in

the event of any other default whether or not similar. This Agreement shall be subject to California law.

If this accurately reflects your understanding and agreement, please sign in the spaces provided below.

ACCEPTED AND AGREED:

AFTERMATH ENTERTAINMENT                F.B.T. Productions

By: _____              By: _____
    an authorized signatory                          an authorized signatory