UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC

        Plaintiffs,

        vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT

        Defendants.

Case No. 2:07-cv-13164
Hon. Anna Diggs Taylor

| | |
|---|---|
| Norman C. Ankers (P30533) | Richard S. Busch  (TN BPR#14594) |
| Michael A. Lisi (P39597) | King & Ballow |
| Brian D. Wassom (P60381) | 1100 Union Street Plaza |
| Honigman Miller Schwartz and Cohn LLP | 315 Union Street |
| 2290 First National Building | Nashville, TN 37201 |
| 660 Woodward Avenue | (615) 259-3456 |
| Detroit, MI  48226-3506 | rbusch@kingballow.com |
| (313) 465-7306 | Attorney for Plaintiffs |
| nankers@honigman.com | |
| mlisi@honigman.com | |
| bdw@honigman.com | |
| Attorneys for Plaintiffs | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

Dockets.Justia.com

# TABLE OF CONTENTS

STATEMENT OF ISSUE PRESENTED ...................................................................... ii

CONTROLLING AUTHORITIES ............................................................................ iii

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 2

   A. The Michigan Action ............................................................................. 2

   B. The California Action ............................................................................ 4

   C. The Mastertone Agreement .................................................................. 5

III.    ARGUMENT ............................................................................................ 6

   A. The Standards For Transfer .................................................................. 6

   B. The Mastertone Agreement Relevant To The Michigan Action Has
      An Eastern District Of Michigan Forum Selection Clause ................... 9

   C. The Michigan Action Is Not "Substantially Related" To The
      California Action .................................................................................... 9

      1.    The Actions involve different plaintiffs and defendants .............. 10

      2.    There are no overlapping issues of fact or law .......................... 10

      3.    The Michigan Action is not duplicative of the California Action .............. 11

   D. Convenience Of Parties And Witnesses Does Not Justify Transfer .................... 13

      1.    The standards governing convenience transfers ........................... 13

      2.    The interests of justice do not strongly weigh in favor of transfer .............. 15

      3.    This Court is equally able to adjudicate federal law .................... 16

      4.    Access to documents does not weigh strongly in favor of transfer .............. 17

      5.    Relative court congestion does not support transfer ..................... 17

      6.    Michigan's interest in protecting the property rights of its residents weighs
      against transfer ................................................................................. 19

IV.     CONCLUSION ........................................................................................ 19

## STATEMENT OF ISSUE PRESENTED

Should plaintiffs' choice of forum be given substantial deference where defendants have failed to meet their burden of showing that the convenience of the parties and witnesses and the interests of justice weigh strongly in favor of transfer, particularly since the matter before this Court is not even substantially related to a pending lawsuit in the United States District Court for the Central District of California?

## CONTROLLING AUTHORITIES

*Audi A.G. v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004)

## I.     **INTRODUCTION**

Defendants Apple Computer, Inc. and intervenor Aftermath Records, d/b/a Aftermath Entertainment (collectively, defendants) have moved to transfer the venue of this action to the Central District of California -- because there is ostensibly a substantially related case already pending there and it would otherwise supposedly be more convenient to try the case there -- even though (1) the plaintiffs in the two lawsuits are completely different; (2) the defendants in the lawsuit are completely different (except for a single defendant, Aftermath, which is a party in this action only because it moved to intervene here even though no claims had been asserted against it; (3) the claims are different (federal copyright infringement and related Michigan state causes of action here, versus purely California state law claims brought in the California action); (4) this action will involve factual, legal and expert questions related to the infringement of a musical composition, while the California action will not; (5) a significant document that is pertinent to a resolution of this action is an agreement specifying Michigan as the exclusive venue for disputes concerning it; (6) plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (collectively, plaintiffs) brought this lawsuit in this forum and want it to stay here; and (7) defendants -- in violation of controlling authority in this District -- do not even bother to tell the Court for which fact witnesses it will be more convenient to try this case in California, and what testimony those fact witnesses have to offer.

Defendants do not remotely satisfy their burden to support transfer, and their motion should be denied.

## II.    FACTUAL BACKGROUND

The facts pertinent to this motion are either contained in the pleadings on file in this District or in the Central District of California or in the accompanying Declaration of Richard Busch, which is attached as Exhibit 1 hereto.

### A.    THE MICHIGAN ACTION

This lawsuit (the Michigan Action) was filed on July 30, 2007 by plaintiffs Eight Mile and Martin Affiliated against Apple Computer, Inc.  The Michigan Action is a federal question action alleging willful copyright infringement and violation of the Lanham Act, as well as Michigan state law claims for tortious interference, unfair competition, and violation of the Michigan Consumer Protection Act. Plaintiffs seek actual damages and/or statutory damages under the federal copyright act. The complaint is Exhibit 2 for the Court's convenience.

Plaintiffs Eight Mile and Martin Affiliated are owners of, or have ownership in, the copyrights in musical compositions written and composed by Marshall Mathers p/k/a Eminem (the Eminem Compositions) pursuant to an Exclusive Artist Recording Agreement.  (Compl. ¶ 8.)  Defendant Apple Computer, Inc. (Apple), through its iTunes service, provides customers digital downloading of recordings which contain the Eminem Compositions.  (*Id.* ¶ 9.)  Customers pay a fee (typically $0.99) to download the musical recordings in the form of a digital audio file.  (*Id.*)

Apple did not seek or obtain permission from Eight Mile or Martin Affiliated to digitally reproduce and distribute the Compositions on iTunes, and has provided no compensation to Eight Mile or Martin Affiliated for its digital use of the Eminem Compositions.  (Compl. ¶ 11.)  Instead, Apple has reproduced and distributed the Eminem Compositions pursuant to a purported license with Universal.  (*Id.* ¶ 12.)  Apple

2

pays a fee to Universal (or one of its divisions) when a customer purchases an Eminem Composition on iTunes.  (*Id.* ¶ 10.)  Despite the fact that Universal has previously requested, on repeated occasions, Eight Mile's and Martin Affiliated's permission to engage in reproduction or distribution of the plaintiffs' copyrighted compositions by means of digital transmissions through third parties, Eight Mile and Martin Affiliated have never granted such permission, except in very limited contractual contexts, one of which is described in section II(C) below, and none of which give Apple the right to engage in the conduct complained of herein. (*Id.* ¶ 12.) Eight Mile and Martin Affiliated demanded that Apple cease and desist its reproduction and distribution of the digital transmissions of the Eminem Compositions, and Apple has refused. (*Id.* ¶ 14.)

In the Michigan Action, Eight Mile and Martin Affiliated seek an injunction preventing Apple from reproducing and distributing the Eminem Compositions, a declaratory judgment that such acts constitute willful copyright infringement, and actual damages and profits of Apple or alternatively statutory damages of $150,000 per act of infringement, plus their attorneys' fees and costs.

On September 9, 2007, the Court granted Aftermath Records d/b/a Aftermath Entertainment's (Aftermath's) request to intervene as a party defendant in this case. (Doc. No. 8.)  Plaintiffs in the Michigan Action have asserted no claims against Aftermath.  Aftermath has filed no answer or other pleading in the Michigan Action; there was nothing for Aftermath to "answer" because no allegations have been directed to it.  Still, Aftermath -- which is a party defendant in this action only because it voluntarily asked to be -- now claims that there is something untoward, inconvenient or inappropriate about its having to litigate both in Michigan and in California.

## B.    THE CALIFORNIA ACTION

The California Action was filed on May 21, 2007. F.B.T. Productions, LLC (FBT) and Em2M, LLC (Em2M) are the plaintiffs. None of them are plaintiffs in the Michigan Action. The defendants in the California Action are Interscope Records (Interscope), UMG Recordings, Inc. (UMG), ARY, Inc. (ARY) and Aftermath. None of the defendants in the California Action is a defendant in the Michigan Action -- except, as mentioned, Aftermath. The California Action is a diversity of citizenship action for breach of contract and declaratory judgment governed by California law. In other words, every single complaint claim in the Michigan Action (federal and Michigan state counts) is different from every single complaint claim (California state counts) in the California Action. The damages sought also are different, particularly since the Copyright Act allows for statutory damages while the claims in the California Action do not. The complaint in the California Action is Exhibit 3.

The California Action arises from a March 9, 1998 Agreement between F.B.T. and Aftermath whereby F.B.T. agreed to furnish to Aftermath the recording services of Eminem (the 1998 Agreement) and a 2003 Agreement affirming the 1998 Agreement (the 2003 Agreement). The California Action also involves numerous other related agreements specifically set forth in the complaint.[1] (California Compl. ¶¶ 19-26.)

In the California Action, F.B.T. and Em2M allege that the defendants failed to properly account and pay royalties pursuant to the 1998 and 2003 Agreements for the licensing of master recordings of Eminem (the Eminem Masters) to various third parties

---

[1]    The California Action also involves a 1995 Exclusive Artist Recording Agreement between F.B.T. and Eminem (and amendments thereto), a March 9, 1998 Letter of Inducement between Eminem and Aftermath, and a September 27, 2000 novation of the 1998 between F.B.T. and Eminem (and November 1, 2004 modification thereto). (California Compl. ¶¶ 19-25.)

(including, but not limited to, iTunes, Buy.com, Napster Cingular Wireless, Sprint, and T-Mobile). (California Compl. ¶¶ 1-2.) Specifically, F.B.T. and Em2M allege that rather than paying them 50% of the net receipts for the licensed digital uses of the Eminem Masters, the defendants wrongfully (a) calculated royalties by applying an album royalty rate to an artificially imputed retail price of the download without a packaging or configuration deduction; (b) incorrectly computed domestic digital download sales using a fabricated retail price of 130% of wholesale price rather than the retail price actually charged to consumers by the licensees; and (c) applied territory reductions to so-called foreign digital download sales without an economic or contractual basis for such reductions. (*Id.* ¶ 5.) F.B.T. and Em2M further allege that as a result of the improper calculation of royalties, the defendants further breached the agreements by failing to account properly and to render accurate royalty statements. (*Id.* ¶ 37.) In the California Action, F.B.T. and Em2M seek contract damages in excess of $1,000,000 and a declaratory judgment that the defendants are obligated to pay 50% of net receipts from the licensing of the Eminem Masters to download providers.

### C.    THE MASTERTONE AGREEMENT

Although not completely dispositive of the issues in this lawsuit, a relevant agreement is a permanent digital download mastertone license agreement between Eight Mile and Martin Affiliated on the one hand, and Interscope Records on the other (the Mastertone Agreement, attached as Exhibit 4 hereto.)[2]  Aftermath is an affiliate of Interscope as defined in the Mastertone Agreement. (Ex. 4 ¶ 1(a).)  In the Mastertone Agreement, Eight Mile and Martin Affiliated granted a limited license to create and

---

[2]      Because the Mastertone Agreement contains a confidentiality clause, plaintiffs have redacted the economic portions thereof.

distribute mastertone recordings with short excerpts (not to exceed thirty seconds) of the Eminem Compositions (entire list attached as Schedule A to Ex. 4) for permanent download to an end user's telephone to announce the reception of an incoming telephone call by playing such excerpt. Please note that the Mastertone Agreement does <u>not</u> authorize downloads of iTunes -- only Mastertones on phones; to the contrary, the Mastertone Agreement reserves to the plaintiffs all rights not specifically granted thereunder.

The significance of this Mastertone Agreement to this lawsuit is twofold. First, there is no such similar agreement authorizing downloads of iTunes; where Eight Mile and Martin Affiliated have authorized digital downloading for any reason, it has been pursuant to carefully negotiated contract provisions, providing express authorization to do so. Second, the Mastertone Agreement, which is the only agreement involving digital rights that has a choice of venue clause, requires any action to be brought in the United States District Court for the Eastern District of Michigan (*Id.* ¶ 7(d)); Interscope, an affiliate of Aftermath, was perfectly comfortable using the Michigan forum.

### III.    ARGUMENT

#### A.    THE STANDARDS FOR TRANSFER

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To transfer an action under § 1404(a), the following criteria must be met: "(1) the action could have

been brought in the transferee district court;[3] (2) a transfer serves the interest of justice;

and (3) transfer is in the convenience of the witnesses and parties." *E.g.*, *Kepler v. ITT*

*Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). Factors that courts may

consider in determining whether to transfer venue include:

(1)    the convenience of witnesses;
(2)    the location of relevant documents and relative ease of access to sources of proof;
(3)    the convenience of the parties;
(4)    the locus of the operative facts;
(5)    the availability of process to compel the attendance of unwilling witnesses;
(6)    the relative means of the parties;
(7)    the forum's familiarity with the governing law;
(8)    the weight accorded the plaintiff's choice of forum; and
(9)    trial efficiency and the interests of justice, based on the totality of the circumstances.

*E.g., Hord v. Recchio*, No. 05-cv-73387 2006 U.S. Dist. LEXIS 14887, *7 (E.D. Mich.

Mar. 31, 2006). "The Court also takes into account public interests, such as 'court docket

congestion; burden on the community if no connection with the case; local interest in

having localized controversies decided at home; and the court's familiarity with

governing law.'" *Sloan v. Borgwarner Diversified Transmission Prods.*, No. 06-10861

2006 U.S. Dist. LEXIS 42857, *9 (E.D. Mich. June 9, 2006).

As the party seeking transfer, defendants "bear[ ] the burden of demonstrating that

'fairness and practicality **strongly favor** the forum to which transfer is sought.'" *Audi*

*AG v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004)(emphasis added). A

transfer under Section 1404 will not be granted absent a clear and convincing showing by

the defendant that the balance of convenience weighs strongly in favor of the transferee

---

[3]    Plaintiffs do not dispute that the matter before this Court could have been brought by them in the Central District of California, just as defendants do not argue that plaintiffs were required to have done so. Plaintiffs wish to litigate their claims here. There is also no dispute that venue is proper in this District.

court. *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 845-846 (E.D. Mich. 1994), *appeal dismissed*, 48 F.3d 1219 (6th Cir. 1995). Therefore, defendants must "convince the court that the proposed transfer will accomplish more than 'shifting the inconvenience from one party to the other'" by showing "that the original forum is inconvenient for it and that plaintiff would not be substantially inconvenienced by a transfer." *Omega Healthcare Investors, Inc. v. First Am. Title Ins. Co.*, No. 01-C-70346, 2001 U.S. Dist. LEXIS 11780, *8 (E.D. Mich. June 8, 2001)(citing 15 Wright & Miller, Federal Practice and Procedure (hereinafter Wright & Miller) §§ 3848-3849); *Audi AG v. D'Amato*, *supra*, 341 F. Supp. 2d at 751 ("[i]n making this determination, the Court is mindful that 'a transfer is not appropriate if the result is simply to shift the inconvenience from one party to another'")(citation omitted).

Where, as here, plaintiffs are residents of the Eastern District of Michigan, their "choice of forum is entitled to substantial deference." *Audi AG v. D'Amato*, 341 F. Supp. 2d at 750; *United States v. Edward Rose & Sons*, 246 F. Supp. 2d 744, 755 (E.D. Mich. 2003)("a court should defer to a plaintiff's choice of venue and a defendant moving for transfer must overcome the presumption that plaintiff has chosen the proper forum"); *see also Hunter Fan Co. v. Minka Lighting, Inc.*, No. 06-2108 M1/P, 2006 U.S. Dist. LEXIS 39080, *4-5 (W.D. Tenn. June 12, 2006)("[a]s a general rule, there is a 'strong presumption' in favor of the plaintiff's selection of forum, and the plaintiff's choice should not be altered 'unless the defendant carries his burden of demonstrating that the balance of convenience strongly favors transfer'").

**B.    THE MASTERTONE AGREEMENT RELEVANT TO THE MICHIGAN ACTION HAS AN EASTERN DISTRICT OF MICHIGAN FORUM SELECTION CLAUSE**

The only relevant agreement to the Michigan Action that has a forum selection clause is the Mastertone Agreement, which requires that suit be brought in this district. Although not dispositive, this factor is a "a significant factor that [should figure] centrally in the District Court's calculus.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991)(citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). As discussed above, by entering the Mastertone Agreement, Universal admitted that the controlled composition clause in the 1998 and 2003 Agreements (that defendants now contend will support their defense to the Michigan Action, but which in actuality did not grant any mechanical license, much less a digital download license) did *not* include digital uses of the Eminem Compositions, including for permanent download.

Further, although the 1998 and 2003 Agreements contain California choice of law provisions, they do not contain any forum selection clauses. Therefore, the only forum selection clause that is relevant to the Michigan Action requires claims to be litigated in this district.

**C.    THE MICHIGAN ACTION IS NOT "SUBSTANTIALLY RELATED" TO THE CALIFORNIA ACTION**

Defendants contend that there is "significant overlap in the likely issues in the two cases," and therefore "a transfer and relation of the two cases in one court is in 'the convenience of parties and witnesses' and 'the interest of justice.'" (Defendants' Motion at 7.)   As discussed below, however, defendants' arguments fail since the Michigan Action is not substantially related to the California Action.  Plaintiffs' choices of forum

were not merely tactical decisions as defendants allege, but reflect the different and separate nature of the two actions.

### 1.    The Actions involve different plaintiffs and defendants

There is no basis for defendants' contention that the Michigan Action involves the same parties as the California Action. Defendants devote several pages of argument and submit six exhibits to support their assertions that Joel Martin is the sole member of Em2M and Martin Affiliated, and that Jeff and Mark Bass are the only members of F.B.T. and Eight Mile. (*See* defendants' Motion at 2-4, Exhibits A, C, D, E, F and G.) The short answer, respectfully, is: so what? F.B.T. and Em2M are distinct legal entities seeking to enforce their contractual rights under the agreements at issue in the California Action with regard to the Eminem Masters. In the Michigan Action, Martin Affiliated and Eight Mile are music publishers seeking to protect their property interests in the Eminem Compositions from Apple's willful copyright infringement. These parties are separate legal entities seeking to enforce distinct legal interests. Further, there is no basis for defendants' argument that the parties are the same because Richard S. Busch is a lawyer who has entered an appearance for the plaintiffs in both actions; common legal representation does not remotely entitle a Court to disregard the separate corporate status of various entities, and defendants cite no case so stating.

### 2.    There are no overlapping issues of fact or law

Not only are the claims in the two Actions different, but the interests at stake in the two actions are separate rights owned by the distinct entities. In the Michigan Action, Eight Mile and Martin Affiliated seek to protect their property rights in the Eminem *Compositions*. In the California Action, F.B.T. and Em2M seek to enforce their contractual rights with respect to Aftermath's licensing of the Eminem *Masters*. The

separate and distinct nature of interests is a fundamental principle of copyright law. *E.g.*, *Bridgeport Music v. Dimension Films,* 410 F. 3d 792, 796 n.3, (6th Cir. 2005)("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights"); 17 U.S.C. 102(a)(2)(7).

### 3.    The Michigan Action is not duplicative of the California Action

Since the legal and factual issues do not overlap, resolution of one action would not affect the resolution of the other. As defendants recognize, "*even if* Plaintiffs are right in the California Action that Apple is a 'licensee' (and they are not), they still will lose the Michigan Action because Aftermath has the right to disseminate the compositions at issues through licenses." (Defendants' Motion at 2; *see also id.* at 6 (asserting they would prevail in the Michigan Action "regardless of the resolution of the contract question that is central to the California Action").) That very assertion by defendants proves that the actions are not duplicative. *See Smith v. SEC,* 129 F.3d 356, 361 (6th Cir. 1997)(duplicative lawsuits are those in which the issues "have such an identity that a determination in one action leaves little or nothing to be determined in the other").

Defendants say that the "Controlled Composition" clause in the 1998 and 2003 Agreements granted to Aftermath the right to license the Eminem Compositions to Apple for digital download, and therefore is the "basis for a complete defense to the allegations in the Michigan Action." (Motion at 5-6.) Although plaintiffs deny that the Controlled Composition clause granted any rights that are relevant to the digital distribution of the Eminem Compositions,[4] it is also important to note that the scope and interpretation of

---

[4]    Although it is unnecessary to argue the merits of defendants' purported defenses at this time, plaintiffs note that this clause is titled "Mechanical Royalties," and the agreements do not even purport to

the Controlled Composition clause has no relevance to the issues involved in the California Action.

The California Action likewise involves no issue of copyright law with respect to the Eminem Masters. Instead, one of the key issues in the California Action is whether F.B.T. and Em2M should be paid 50% of the net receipts from the sale of the Eminem Masters by download providers under a provision in the 1998 Agreement (which is nearly identical in the 2003 Agreement) that:

> (v)  On masters licensed by us or our NRS Licensees to others for their manufacture and sale of records or for any other uses, your royalty shall be an amount equal to fifty percent (50%) of our net receipts from the sale of those records or from those other uses of the masters.

(Defendants' Motion, Ex. H ¶ 4(v); Ex. I ¶ 5(c)(v).)   F.B.T. and Em2M allege that the sale in the form of digital music files is encompassed in the definition of "other uses of the masters."   (California Compl. ¶ 32.)   As above, clauses of the 1998 and 2003 Agreements that are directly at issue in the California Action are entirely separate from the clause that the Michigan Defendants assert as a defense in the Michigan Action.[5]

---

grant an automatic *mechanical license* under the agreements, much less a Digital Phonorecord Delivery License (DPD License). In other words, digital rights were not contemplated to be granted under the agreements; and, even with respect to mechanical licenses, plaintiffs were entitled to require the execution of separate licenses before their property could be legitimately exploited. No such licenses were agreed to or executed here.

[5]      For these reasons, defendants' characterization of the California Action as the "First-Filed Case," and the Michigan Action as the "Second-Filed Action" is misleading and inappropriate. *See Bandit Indus. v. Woodsman*, No. 07-11401 2007 U.S. Dist. LEXIS 69969, *8 (E.D. Mich. Sept. 21, 2007)("even though the parties may be related, they are not 'nearly identical' such that the Court should apply the first-to-file rule"); *Emergency Dictation Servs. v. CBay Sys.*, No. 05-72137 2005 U.S. Dist. LEXIS 27507, *8 (E.D. Mich. Oct. 25, 2005)(applying first to file rule where "identical parties have filed mirror-image complaints in two different district courts").

### D.    CONVENIENCE OF PARTIES AND WITNESSES DOES NOT JUSTIFY TRANSFER

#### 1.    The standards governing convenience transfers

In this District, the case law is that when a party seeks to transfer a case to another district for the convenience of parties and witnesses, it cannot effectuate a transfer by making conclusionary statements about witnesses for whom it will ostensibly be more convenient for a case to be tried in a transferee forum. Instead, the party seeking transfer and bearing the burden of demonstrating that it would be more convenient in another forum must provide affidavit proof which identifies (a) specific witnesses for whom it would be more convenient to try the case in a transferee forum and (b) what their testimony is going to be, so that the Court can evaluate whether the testimony is material. Moreover, it is the convenience of non-party witnesses that is crucial:  the proponent of transfer must identify specific non-party witnesses for whom the balance of convenience tips in favor of the transferee forum, and what those witnesses are going to say. *See Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 750 (E.D. Mich. 2004)("[t]he moving party should generally provide each witness's name and the subject matter of the witness's anticipated testimony"); *Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001)("[i]n weighing the convenience of the witnesses, more important than the raw numbers of witnesses living in a particular jurisdiction is the residence of the key witness or witnesses.  One chief witness's convenience, in fact, may outweigh the convenience of other, less significant witnesses.  This is why the parties should provide each witness's name and an outline of what material testimony that witness would provide"); *Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc.*, 316 F. Supp. 1350, 1357 (E.D. Mich. 1970); *Thomas, supra*, 131 F. Supp. 2d at 938 (conclusionary statements about witnesses

are entitled to no weight from the court); *Nat'l Gen. Ins. Co. v. Goodyear Tire & Rubber Co.*, No. 05:05CV1819 2005 U.S. Dist. LEXIS 28298, *7-8 (N.D. Ohio 2005)("[i]n determining the most convenient forum for witnesses involved in this litigation, the Court focuses its inquiry not on party witnesses, but on non-party witnesses").

Critically here, defendants fail to identify any non-party witnesses -- or even party witnesses -- for whom testifying would be more burdensome in this District. That is enough to defeat defendants' motion. Wright & Miller § 3851 ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied"); *Barnett v. MCI Serv. Parts, Inc.*, Case No. 05-70209, 2005 U.S. Dist. LEXIS 8850, *8 (E.D. Mich. May 13, 2005).

In contrast to defendants' unsupported arguments, plaintiffs can identify, even at this early stage of the proceedings, several non-party witnesses for whom it will be more convenient for the trial to take place in Michigan. *See* Declaration of Richard Busch attached as Exhibit 1 hereto. So plaintiffs, who do not have the burden of proof here, have identified witnesses for whom Michigan is a more convenient forum, and defendants, who do have the burden of proof, have not. This alone disposes of defendants' motion; since the convenience of non party witnesses "has been called the 'most powerful factor governing the decision of whether to transfer a case'," this factor flat out precludes transfer. *McCuiston v. Hoffa*, 313 F. Supp. 2d 710, 719 (E.D. Mich. 2004) (citing 17 Moore's Federal Practice, ¶ 111.13[1][f][i]); *Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004)(citing *Gundle Lining Constr. Corp.*

*v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994))("[i]n deciding a change of venue motion, 'it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight'"). Defendants' motion utterly fails.

### 2.    The interests of justice do not strongly weigh in favor of transfer

Defendants also assert that "[t]ransfer of this Action to the Central District of California is in the interest of justice because "it is in the interest of justice to have one Court, rather than two Courts, supervise litigation concerning the interpretation of those same Agreements." (Defendants' Motion at 10.)  That presupposes that the actions are substantially similar, and plaintiffs have demonstrated that they are not.[6]

Defendants' presumption, that if transferred, the Michigan Action would be consolidated with the California Action, is also erroneous.  *See Zacky Farms v. FMC Corp.*, Case No. CV-F-01-5380, 2001 U.S. Dist. LEXIS 24255, *12 (E.D. Cal. Sept. 12, 2001)("[t]he mere existence of common issues, a prerequisite to consolidation, does not require consolidation"); *also Reed Elsevier, Inc. v. Innovator Corp.,* 105 F. Supp. 2d 816, 820 n.7 (S.D. Ohio 2000)(denying transfer based on related action where "it does not appear that the issues in that case will overlap significantly with the issues in this

---

[6]      *See A.J. Indus., Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974)(in transfer analysis, an action "might have been brought" of action in transferee district where "the subject matter of the transferred suit could have been raised by counterclaim with leave of the court"); *POSVEN, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004)(granting transfer where the court lacked jurisdiction over the third party defendant and there was no significant connection between plaintiff and the district); *Republic of Bolivia v. Philip Morris Cos.*, 39 F. Supp. 2d 1008, 1009-10 (S.D. Tex. 1999)(transferring where there were six similar action brought in various districts, there was no connection between the plaintiff and the forum, and there was a request pending before the Judicial Panel on Multidistrict Litigation to transfer to the District of Columbia); *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F. Supp. 1241, 1244 (S.D.N.Y. 1982)(holding that plaintiff's claims "cannot be justly evaluated without determining" issues in the earlier lawsuit, "i.e., this action is subsumed within the earlier Ohio one"); *see also Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)(affirming transfer where "the substance of what had to be done to adjudicate the rights of the parties was not different at all" and the actions were "inseparable parts of one single 'civil action'"); *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (affirming denial of transfer of case).

litigation," since the action in the transferee court involved the alleged breach of a settlement agreement between the parties involving "false or misleading statements in advertising," as opposed to plaintiff's trademark claims based on the same underlying conduct). Since consolidation by the Central District of California would not be appropriate, any similarities between the actions do not weigh strongly in favor of transfer. Wright & Miller, *supra, at* § 3854 ("[t]his factor need not be given any or significant weight by the court considering a transfer motion if there is no realistic possibility of consolidating the litigation before it with the related cases, as might be the situation when the parties or issues do not overlap extensively or the actions are at different stages of development").

Further, as evidenced by defendants' attempts to conflate the separate and distinct issues in this case, consolidation would pose the risk of confusion to the trier of fact in determining the entirely unrelated questions of fact involved. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999)("in deciding whether to consolidate actions under Rule 42(a), a court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result").

### 3.     This Court is equally able to adjudicate federal law

Defendants' contention that both Agreements would require the interpretation of California law again misrepresents the Michigan Action, which arises under Federal law and four separate causes of action under the Michigan Action. Defendants fail to explain why this Court is not equipped to interpret and apply federal copyright law, or why a California court should be asked to adjudicate Michigan causes of action. *Audi AG v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002)("this Court is familiar with all

16

federal laws and is more than qualified to interpret and apply federal law"); Wright & Miller § 3854 ("all federal judges are considered adept in interpreting the various aspects of federal law no matter where they are sitting").

### 4.    Access to documents does not weigh strongly in favor of transfer

Defendants make the conclusionary statement -- again, unsupported by affidavit, and defendants are the movants here -- that "ease of access to sources of proof strongly favors the California venue." (Defendants' Motion at 12.) But since documentary evidence is equally accessible in this district, that is no basis for transfer even if defendants could prove it. *E.g.*, *Audi AG v. Shokan Coachworks, Inc.*, Case No. 04-70626, 2007 U.S. Dist. LEXIS 10054, *15-16 (E.D. Mich. Feb. 13, 2007)("The location of documentary evidence, however, is typically given minimal consideration absent evidence that it would be unduly burdensome for either party to produce their documents in one or the other district."); *Reed Elsevier, Inc. v. Innovator Corp.*, 105 F. Supp. 2d 816, 822 (S.D. Ohio 2000)("the location of documents will rarely weigh in favor of transfer because documents may be easily photocopied and shipped to wherever the documents are needed")(citation omitted); Wright & Miller, *supra* at § 3853 ("[s]ince most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight").

### 5.    Relative court congestion does not support transfer

Defendants next offer court management statistics to argue that the Central District of California is the "less congested Court." (Defendants' Motion at 11-12.) But as regular practitioners in this District know, the median time interval of 101.2 months between filing of a civil case and disposition for the Eastern District of Michigan was

clearly an anomaly skewed by the termination of 14,768 breast implant cases that were terminated in 2006, and has been stayed for a long period of time.[7]  The following numbers are from the 2007 Annual State of the Court Message delivered September 11, 2007 (attached as Exhibit 6 hereto) and are based on the time period from July 1, 2006 to June 30, 2007 with the corresponding statistics for the Central District of California:

Civil cases disposed of without court action:

| | |
|---|---|
| E.D. Mich. | 809 (4.7 months median time interval) |
| C.D. Cal. | 3,353 (6.2 months) |

Civil cases disposed of before final pretrial conference

| | |
|---|---|
| E.D. Mich. | 1,212 (6.5 months median time interval) |
| C.D. Cal. | 5,266 (8.7 months) |

Civil cases disposed of during or after pretrial without trial:

| | |
|---|---|
| E.D. Mich. | 1,507 (13.5 months median time interval) |
| C.D. Cal. | 85 (19.0 months) |

Civil cases disposed of by trial:

| | |
|---|---|
| E.D. Mich. | 72 (25 months median time interval) |
| C.D. Cal. | 147 (21.7 months) |

Indeed, as these statistics show, when the proper comparison is made, this factor weighs against transfer.

---

[7]     On May 15, 1995, Dow Corning filed for bankruptcy in the Eastern District of Michigan. In 1996 and 1997, the United States Court of Appeals for the Sixth Circuit issued two opinions transferring in excess of 11,500 preexisting breast implant cases to the Eastern District of Michigan. In his 2006 Annual State of the Court Message (delivered September 26, 2006), relevant portions of which are attached as Exhibit 5, Chief Judge Bernard A. Friedman noted that 14,768 breast implant cases were terminated in 2006. This Court has previously recognized that the Eastern District's statistics were skewed by these cases. *See Barnett v. MCI Serv. Parts, Inc.*, No. 05-70209 2005 U.S. Dist. LEXIS 8850 at *7 n.2. ("Counsel fails to point out that the 77 figure [percent of civil cases pending in the district for over three years] for the Eastern District of Michigan is followed by two asterisks referring the reader to an 'explanation of selected terms.' This 'explanation' provides that the 77 figure includes 'between 10,000 and 14,000 silicone breast implant cases . . . technically . . . pending, but effectively . . . stayed pending the resolution of an appeal on a related bankruptcy matter.' This obviously would tell a reader that the 77 figure is not a reliable figure.")

**6.    Michigan's interest in protecting the property rights of its residents weighs against transfer**

Finally, although not discussed by defendants, Michigan has a strong interest in providing a forum for its residents to vindicate their copyright interests. 341 F. Supp. 2d at 748 (in personal jurisdiction analysis, "Michigan has a strong interest in protecting companies that principally reside here against trademark infringement. The Court also finds that Plaintiffs have a strong interest in obtaining relief. The Court finds that Plaintiffs' interest in obtaining relief, coupled with Michigan's interest in protecting companies that reside there, significantly outweighs whatever burden may be placed upon Defendant in having to defend this action in Michigan"). This factor weighs strongly against transfer.

## IV.    CONCLUSION

The plaintiffs in the Michigan Action and California Action are different. So are the defendants, with the exception of one defendant who insinuated itself into these proceedings without having had any claim asserted against it. The claims are all different. Plaintiffs in the Michigan Action want to litigate here and their choice of forum is entitled to a strong preference. Defendants have failed utterly to show that transfer would be more convenient for anyone except perhaps themselves. Defendants' motion should be denied.

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorney for Plaintiffs


By: s/Norman C. Ankers (P30533)
2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226-3506
(313) 465-7306
nankers@honigman.com

KING & BALLOW
Attorney for Plaintiffs


Richard S. Busch
1100 Union Street Plaza
315 Union Street
Nashville, Tennessee  37201
(615) 726-5422
rbusch@kingballow.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2007, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.

Honigman Miller Schwartz and Cohn LLP
Attorney for Plaintiffs

By: s/Norman C. Ankers
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
(313) 465-7306
nankers@honigman.com
(P30533)

DETROIT.2819232.3

20