# EXHIBIT 3

Dockets.Justia.com

Richard S. Busch (TN Bar No. 014594)
*Pro Hac Vice Pending*
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456   Facsimile: (615) 726-5417

Paul H. Duvall (State Bar No. 73699)
KING & BALLOW
9404 Genesee Avenue, Suite 340
La Jolla, CA 92037-1355
(858) 597-6000   Facsimile: (838) 597-6008

Mark L. Block (State Bar No. 115457)
Christensen, Glaser, Fink, Jacobs, Weil, & Shapiro, LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
(310) 553-3000   Facsimile: (310) 556-2920

Attorneys for Plaintiffs F.B.T. Productions, LLC and Em2M, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.B.T. PRODUCTIONS, LLC, and Em2M, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AFTERMATH RECORDS doing business as AFTERMATH ENTERTAINMENT; INTERSCOPE RECORDS; UMG RECORDINGS, INC.; and ARY, INC.,<br><br>Defendants. | Case No. CV 07-03314 PSG (MANx)<br><br>FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY JUDGMENT<br><br>JURY DEMAND |

1

Plaintiffs F.B.T. Productions, LLC, and Em2M, LLC (collectively "Plaintiffs"), by and through their attorneys, for their Complaint against the Defendants named above allege as follows:

## I. NATURE OF THE ACTION

1. This action for breach of contract and declaratory judgment against Defendants named herein arises from Defendants' failure to properly account to and pay Plaintiffs royalties with respect to master recordings of the musical performances by Marshall B. Mathers III professionally known as Eminem ("Eminem") licensed from Defendants by various "Music Download Providers" for reproduction and sale as more fully described hereinbelow (including but not limited to iTunes, Buy.com, Napster, among others) and by "Mastertone Providers" (including but not limited to Cingular Wireless, Sprint, T-Mobile, and certain affiliates of Defendants, among others).

2. This action seeks remedies for Defendants' knowing violations of the terms of their agreements with Plaintiffs whereby Defendants have paid Plaintiffs significantly less royalties than are owed to Plaintiffs for the licensing of the master recordings to Music Download Providers and Mastertone Providers.

3. Plaintiffs seek damages for breach of contract. Plaintiffs further seek a declaration, pursuant to 28 U.S.C. §2201, that Defendants are obligated to pay Plaintiffs an amount equal to fifty percent (50%) of Defendants' net receipts from

the sale of records or other uses of the master sound recordings which are licensed by Defendants or Defendants' licensees to others for their manufacture and sale of records or for any other uses.

4. Defendants' recording agreements with Plaintiffs require Defendants to pay Plaintiffs fifty percent (50%) of all net receipts received by Defendants on masters licensed by Defendants or Defendants' licensees to others for their manufacture and sale of records or for any other use.

5. Rather than paying Plaintiffs fifty percent (50%) of the net receipts paid to Defendants for the licensed digital uses of master recordings featuring Eminem's performances, Defendants wrongfully (a) calculate royalties by applying an album royalty rate to an artificially imputed retail price of the download without a packaging or configuration deduction; (b) incorrectly compute domestic digital download sales using a fabricated retail price of 130% of wholesale price rather than the retail price actually charged to consumers by the licensees; and (c) apply territory reductions to so-called foreign digital download sales without an economic or contractual basis for such reductions.

6. As a result of Defendants' intentional past and continuing contractual breaches, Plaintiffs have been damaged by the loss of royalty payments in excess of the jurisdictional limits of this Court which royalty payments Defendants have retained for their own benefit.

7. Plaintiffs seek compensatory damages, attorneys' fees and other costs, and a judgment declaring Plaintiffs' rights pursuant to the recording agreements with Defendants and the proper method of calculating royalty payments or crediting royalty accounts with respect to licensed digital uses of the applicable master recordings by third party Music Download Providers, Mastertone Providers and others, and requiring that Defendants adhere to the proper method of calculating such royalties in the future.

## PARTIES

8. Plaintiff F.B.T. Productions LLC ("F.B.T.") is a Michigan limited liability company. The only members comprising F.B.T. are Mark Bass and Jeff Bass. Both members are natural persons and United States citizens. Both members are residents of Michigan and intend to reside in Michigan permanently, and therefore are domiciled in Michigan. F.B.T. is a citizen of Michigan.

9. Plaintiff Em2M LLC ("Em2M") is a Michigan limited liability company. Joel Martin, a natural person, is the sole member of Em2M. Mr. Martin is a United States citizen and a resident of the State of Michigan. He intends to reside in Michigan permanently, and therefore is domiciled in Michigan. Em2M is a citizen of Michigan.

### Defendant Aftermath Records

10. Defendant Aftermath Records and Aftermath Records doing business

4

as Aftermath Entertainment ("Aftermath") is a joint venture between three entities: (1) Interscope Records, a California general partnership (the "Interscope Partnership"), (2) Interscope Records, an unincorporated division of UMG Recordings, Inc., a Delaware corporation authorized to do business in the State of California ("UMG"), and (3) ARY, Inc., a California corporation ("ARY"). The Interscope Records, a Partnership, is a general partnership comprised of three entities: (a) Interscope Records, an unincorporated division of UMG, (b) UMG, and (c) PRI Productions, Inc., a Delaware Corporation. Based on the citizenship of the entities of the joint venture, Aftermath Entertainment is a citizen of California and Delaware.

      a.    UMG is organized under the laws of the State of Delaware and is a citizen of that state, as is its unincorporated division, Interscope Records. UMG Recordings and its divisions also are citizens of the state that is UMG's principal place of business, which is California. According to its website, "UMG's corporate headquarters are located at 2220 Colorado Avenue, Santa Monica, CA 90404 and 1755 Broadway, New York, NY 10019." According to its registration on file with the California Secretary of State, UMG is registered in the State of Delaware and its offices are located at "10 Universal City Plaza, Universal City, California, 91608." Lastly, UMG's critical copyright and licensing department and its Film & TV Licensing departments are stationed in California as

well. On information and belief, Plaintiffs allege that UMG employs a majority of its employees in California, and the majority of its executive and administrative functions are performed in California because (a) at least one of its two headquarters are located in California, (b) UMG's critical licensing and copyright divisions are located in California, and (c) a majority of its operations, both executive and administrative, take place in California.

      b.    PRI Productions, Inc., (hereinafter, "PRI") is a Delaware Corporation registered to do business in California. PRI's principal place of business is California. It lists its address with the California Secretary of State as "10 Universal City Plaza, Universal City, CA, 91608." This address is the exact same address as UMG registered with the California Secretary of State. On information and belief, Plaintiffs allege that PRI is involved in the entertainment and music industries and performs the majority of its operations in California in concert with UMG. Additionally, Plaintiffs allege on investigation and discovery that PRI has no executive and no administrative staff operating outside of California. All of its operations therefore take place in California. It is a citizen of California and Delaware.

    11.    Interscope Records, a Partnership, is comprised of UMG and PRI, and is a citizen of Delaware and California because UMG and PRI are both citizens of Delaware and California.

12. Interscope Records, an unincorporated division of UMG, is legally indistinguishable from UMG, and its citizenship is the same as UMG. As explained above, UMG is a citizen of Delaware and California.

13. ARY is a registered California Corporation. Plaintiffs allege on information and belief that ARY is owned and operated solely by Andre Rommel Young, Jr., professionally known as the hip-hop artist "Dr. Dre." The principal place of business of ARY is California. Its registered mailing address is 10100 Santa Monica Blvd., Suite 1300, Los Angeles, California 90067. ARY lists its agent for service of process as Howard King of the law firm King, Holmes, Paterno & Berliner, LLP, located at 1900 Avenue of the Stars, 25th Floor, Los Angeles, California 90067. On information and belief, Plaintiffs allege that Mr. Young lives in California and runs ARY exclusively from California. Also on information and belief, Plaintiffs allege that ARY has no employees other than Andre R. Young, Jr. and has no assets and no operations outside of California. ARY's principal place of business is California, and ARY is a citizen of California.

14. Defendant Aftermath is a citizen of California and Delaware.

15. For purposes of diversity jurisdiction, Defendants Aftermath, the Interscope Partnership and UMG are all citizens of Delaware and California. Defendant ARY, Inc., is a citizen of California. Plaintiffs, as citizens of Michigan, are diverse from Defendants' citizenship.

## JURISDICTION AND VENUE

16.   The jurisdiction of this Court is based upon 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. This action for declaratory judgment is brought pursuant to 28 U.S.C. §2201 which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. §1331. Venue is proper in this District pursuant to 28 U.S.C. §§1391 and 1400(a).

17.   Personal jurisdiction over each of the Defendants is proper in this Court, among other reasons, on the grounds that (a) Defendants and/or Defendants' agents transact business in the State of California; (b) Defendants' wrongful conduct alleged herein occurred in the State of California and this District; and (c) the Agreements that are the subject of this action were entered into in this District.

18.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(c).

## GENERAL ALLEGATIONS

19.   On November 28, 1995, F.B.T. entered into an Exclusive Artist's Recording Agreement with Eminem ("1995 Agreement"). The 1995 Recording Agreement between F.B.T. and Eminem subsequently was amended on November 5, 1998, February 22, 1999 and November 28, 1999.

20.   On March 9, 1998 F.B.T. and Aftermath entered into a written

agreement whereby F.B.T. agreed to furnish to Aftermath the exclusive recording services of "Eminem." ("March 9, 1998 Agreement") On March 9, 1998, Eminem also entered into a Letter of Inducement with Aftermath whereby Eminem acknowledged and approved of the agreement between F.B.T. and Aftermath for Eminem's exclusive recording services. ("Letter of Inducement")

21. On September 27, 2000, F.B.T., Eminem and Aftermath entered into a novation of the March 9, 1998 Agreement between F.B.T. and Eminem whereby F.B.T. assigned all of its rights under the March 9, 1998 Agreement to Eminem, Eminem assumed all of F.B.T's rights and obligation to Aftermath, and Aftermath assumed F.B.T.'s obligations to Eminem so that Eminem would have a direct relationship with Aftermath effective September 27, 2000 ("Novation"). Pursuant to the Novation, F.B.T. irrevocably directed Aftermath to compute, account and pay directly to Joel Martin, twenty-five percent (25%) of the monies payable to F.B.T. under the Novation at the same times and on the same basis as Aftermath accounts to F.B.T. All parties expressly agreed Joel Martin is a third party beneficiary under the Novation.

22. Pursuant to the terms of the Novation, among other things, F.B.T. remained an income participant with respect to all master recordings released by Aftermath under the Novation and to which F.B.T. would have had rights prior to the execution of the Novation (for purposes of this Complaint, the "Eminem

Masters"). Further, pursuant to the terms of the Novation, the 1995 Recording Agreement with its three subsequent modifications as well as the March 9, 1998 Agreement and Letter of Inducement were affirmed by the parties. One of the terms of the Novation provided that the royalties owed by Aftermath pursuant thereto were to be divided between F.B.T. and Eminem.

23.     On or about August 22, 2003 and effective as of July 2, 2003, a new agreement was entered into between Aftermath and Eminem regarding, among other things, the Eminem Masters ("2003 Agreement"). Pursuant to the terms of the 2003 Agreement, all "Prior Agreements" are affirmed expressly including (a) the 1995 Recording Agreement and amendments thereto; (b) the March 9, 1998 Agreement and Letter of Inducement; and (c) the September 27, 2000 Novation.

24.     On September 20, 2004, Joel Martin assigned all of his interests in and to the 2000 Novation and under the 2003 Agreement to Em2M LLC, and all payments and accountings otherwise due to Joel Martin thereafter were due to be made by Defendants to Em2M LLC.

25.     On November 1, 2004, F.B.T. and Eminem, on the one hand, and Aftermath, on the other hand, entered into a written modification of the Novation. ("2004 Amendment").

26.     Pursuant to the terms of the foregoing agreements referenced hereinabove, F.B.T. and Eminem caused certain recorded performances of Eminem

to be delivered to Defendants, and Defendants agreed to manufacture, distribute, sell, and license for sale and distribution those master recordings in various configurations throughout the Universe.

27. Plaintiffs have each performed their respective material obligations pursuant to the terms of each of the agreements referenced hereinabove.

28. Pursuant to the terms of the March 9, 1998 Agreement and the 2003 Agreement, Defendants were to provide certain remuneration to Plaintiffs, including royalties, and to furnish Plaintiffs with semi-annual royalty accounting statements setting forth the computations of each Plaintiff's entitlement to royalties for the commercial exploitation of the Eminem Masters, which statements were to be accompanied by any royalty payments due.

29. Pursuant to the terms of the March 9, 1998 Agreement and the 2003 Agreement, Defendants agreed to pay certain royalties as follows: "On masters licensed by us or our Licensees to others for their manufacture and sale of records or for any other use, your royalty shall be an amount equal to fifty percent (50%) of our net receipts from the sale of those records or from those other uses of the masters." The "other uses" of the Eminem Masters include, without limitation, Defendants, or Defendants' [L]icensees, licensing to various Music Download Providers and Mastertone Providers for digital uses, including digital downloads, digital streaming and mastertones. The identities of each of the Music Download

Case 2:07-cv-13164-ADT-DAS   Document 13-5   Filed 10/09/2007   Page 13 of 18

Case 2:07-cv-13164-A⬤-DAS   Document 11-4   Filed 09/⬤/2007   Page 12 of 17.

Providers and Mastertone Providers are known exclusively to Defendants.

30. Under the agreements entered into between Plaintiffs and Defendants, Defendants were obligated to act in good faith in their dealings with Plaintiffs and to render accurate royalty accounting statements, and to properly credit and account for the royalties generated by the commercial exploitation of the Eminem Masters.

31. During the period January 1, 2002 to present, Defendants or Defendants' licensees have licensed the Eminem Masters to various Music Download Providers including but not limited to iTunes, Buy.com, Napster, among others, and Mastertone Providers (including but not limited to Cingular Wireless, Sprint, T-Mobile, and certain affiliates of Defendants, among others).

32. Upon information and belief, Defendants' agreements with the Music Download Providers and Mastertone Providers involve the licensing of the Eminem Masters to such Music Download Providers and Mastertone Providers for sale in the form of digital music files which is encompassed in the definition of "other uses of the masters" as set forth in the March 9, 1998 Agreement and the 2003 Novation.

33. In 2005, F.B.T. and Eminem retained an accounting firm to review the accounting records of Defendants and to perform a royalty audit on behalf of Plaintiffs for the periods January 1, 2002 through and including June 30, 2005. On

February 10, 2006, the accounting firm submitted its audit report to Defendants. As a result, the February 10, 2006 audit showed, among other things, that Plaintiffs, collectively, have been underpaid by Defendants for the digital uses in an amount in excess of $650,000.

## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

34.   Plaintiffs reallege each and every allegation in Paragraphs 1 through 33 hereof as if fully set forth herein.

35.   Defendants have failed to comply with the terms of the March 9, 1998 Agreement and the 2003 Agreement by failing to account and pay Plaintiffs fifty percent (50%) of Defendants' net receipts from the digital uses of the Eminem Masters by the Music Download Providers and Mastertone Providers. Defendants apply an incorrect formula for calculating royalties with respect to those royalties to be paid to Plaintiffs which results in Plaintiffs collectively receiving an average royalty of approximately twelve percent (12%) instead of the fifty percent (50%) required by the terms of the agreements.

36.   On February 21, 2007, and pursuant to paragraph 15(b) of the March 9, 1998 Agreement and the 2003 Agreement, Plaintiffs sent written notice to Defendants by certified mail, return receipt requested, advising Defendants of their breach of said agreements and requesting that Defendants cure the breach within thirty (30) days after the date of the notice.

37. Despite said notice, Defendants have failed and refused to cure the breach and continue to incorrectly calculate royalties in violation of the March 9, 1998 Agreement and 2003 Agreement. As a result of Defendants' improper calculation of royalties, Defendants have further breached said agreements by their failure (a) to account properly, (b) to credit and pay the correct amount of royalties due to Plaintiffs; and (c) to render royalty statements reflecting the correct amount of royalties due to Plaintiffs.

38. By reason of the foregoing and other acts not presently known by Plaintiffs, Defendants have knowingly and materially breached its contractual obligations to Plaintiffs under the March 9, 1998 Agreement and the 2003 Agreement, and wantonly have disregarded the rights of Plaintiffs.

39. Pursuant to the terms of the 2003 Agreement, should any party institute any action or proceeding at law or in equity to enforce any provision of the 2003 Agreement, including an action for declaratory relief, or for damages by reason of an alleged breach of any provision of the 2003 Agreement, or otherwise in connection with the 2003 Agreement or any of its provisions, the prevailing party is entitled to recover from the non-prevailing party reasonable and actual attorneys' fees and costs for services rendered to the prevailing party in such action or proceeding.

40. As a result of the wrongful conduct of Defendants alleged

hereinabove, Plaintiffs have been damaged in an amount to be determined at the time of trial, which upon information and belief is well in excess of one million dollars ($1,000,000) for the digital uses.

## SECOND CAUSE OF ACTION
## (DECLARATORY JUDGMENT)

41. Plaintiffs reallege each and every allegation in Paragraphs 1 through 40 hereof as if fully set forth herein.

42. Pursuant to 28 U.S.C. §2201, this Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

43. Plaintiffs contend, and seek a declaration, that, pursuant to the March 9, 1998 Agreement and the 2003 Agreement, Defendants are obligated to pay Plaintiffs, collectively, fifty percent (50%) of Defendants' net receipts derived from the licensing by Defendants or Defendants' Licensees to others "for their manufacture and sale of records or for any other uses" of the Eminem Masters, including, without limitation, Music Download Providers and Mastertone Providers, the identities of which are known exclusively by Defendants. Defendants deny they have such an obligation under said agreements.

44. Plaintiffs have no adequate remedy at law.

45. By reason of the foregoing, there is a present controversy between

Plaintiffs and Defendants for which a declaratory judgment should be entered determining that the March 9, 1998 Agreement and the 2003 Agreement obligates Defendants to pay Plaintiffs, collectively, fifty percent (50%) of Defendants' net receipts from the licensing by Defendants or Defendants' Licensees of the Eminem Masters to Music Download Providers and Mastertone Providers for sale.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand a jury trial against Defendants on those matters to be determined by a jury and further pray for judgment against Defendants, and each of them, as follows:

1. On the First Cause of Action, judgment awarding Plaintiffs compensatory damages, the exact amount is to be determined at the time of trial;

2. On the Second Cause of Action, an order and judgment declaring that the March 9, 1998 Agreement and the 2003 Agreement obligates Defendants to pay Plaintiffs, collectively, fifty percent (50%) of Defendants' net receipts from the licensing by Defendants or Defendants' Licensees to Music Download Providers, Mastertone Providers, and others for digital and other licensed uses of the Eminem Masters, including, without limitation, digital downloads, digital streaming and digital mastertones;

3. An award of reasonable and actual attorneys' fees and costs for services rendered to Plaintiffs in this action;

4. An award of pre- and post-judgment interest;

5. Such other and further relief as the Court deems just and proper.

DATED: June 12, 2007            Respectfully submitted,

KING & BALLOW

*[signature]*

Richard S. Busch (TN Bar No. 014594)
*Pro hac vice pending*
Paul H. Duvall (State Bar No. 73699)
9404 Genesee Avenue, Suite 340
La Jolla, CA 92037-1355
Telephone: (858) 597-6000
Facsimile: (838) 597-6008
pduvall@kingballow.com
rbusch@kingballow.com

Mark Block (State Bar No. 115457)
Christensen, Glaser, Fink, Jacobs, Weil, & Shapiro, LLP
10250 Constellation Blvd. 19th Floor
Los Angeles, CA 90067
Telephone: (310) 282-6240
Facsimile: (310) 556-2920
mblock@chrisglase.com

Attorneys for Plaintiffs