UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

       Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

       Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9238
kelly.klaus@mto.com

Attorneys for Defendants

3810567.1

Dockets.Justia.com

Plaintiffs, using the same lawyer, filed substantially related Actions in different Districts. The same witnesses will testify in both Actions concerning the same Agreements, regarding the parties' rights concerning the same digital downloads. Plaintiffs offer no reason for requiring two Courts to deal with overlapping discovery and merits issues. The only apparent reason Plaintiffs filed in different Districts was to take inconsistent positions on the scope of the same Agreements: In California, Plaintiffs admit the Agreements grant digital rights; in Michigan, Plaintiffs claim the Agreements do not. Transfer is not only appropriate but is required to avoid inconsistent allegations and inconsistent results.

## I.    THE TWO ACTIONS ARE SUBSTANTIALLY RELATED

Plaintiffs do not dispute that a case should be transferred to another District "in the interest of justice" under § 1404(a) if a plaintiff previously filed another, substantially related case there. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Plaintiffs' arguments for disregarding this rule are meritless and ignore the identity of the parties, their lawyers, and the transactions and Agreements at issue in both cases.[1]

***The Real Plaintiffs In Interest Are The Same Three People***: Plaintiffs admit that the Bass Brothers and Joel Martin own the LLCs in ***both*** Actions. But rather than conceding the obvious effect of the overlapping ownership interests, Plaintiffs only retort is to say "so what?"

---

[1] Also meritless is Plaintiffs' suggestion that, if this Court transferred this Action to the Central District, the Court there would not relate this case to the California Action and consolidate discovery. The Central District, like this District, coordinates related cases to promote judicial efficiency. The Central District Rules provide for related cases to be assigned to the same Judge if (1) the actions arise from the "same or closely related" transactions or events; (2) the actions call for the determination of the "same or substantially related" questions of law and fact; or (3) the actions "would entail substantial duplication of labor if heard by different judges." C.D. Cal. Civ. L.R. 83-1.3.1. The two Actions clearly will be related if they are in the Central District.

Opp. at 10.  Although pithy, Plaintiffs' argument lacks the substance usually found in legal arguments and totally ignores the fact that the identity of interests and participation of these individuals is highly relevant under § 1404(a).  The "LLCs" will not testify; their principals will.  To that end, the same three people will testify for Plaintiffs in both Actions regarding their view of the same Agreements (from 1998 and 2003).  The same lawyer (Mr. Busch) will represent these three individuals in both cases.  Plaintiffs offer no reason for having two different Courts expend their resources supervising and considering the testimony and claims of the same people.

*Defendant Aftermath Is The Same In Both Actions*:  Plaintiffs concede that Aftermath Records is a Defendant in both Actions, but say this is irrelevant because "Aftermath has filed no answer or other pleading in the Michigan Action[.]"  Opp. at 3.  This is false.  Aftermath intervened in this case by stipulation of all parties (including Plaintiffs) and filed and served its Answer.  *See* Reply Ex. A.  And Plaintiffs' *own* Complaint in this Court admits why Aftermath's testimony is significant.  Plaintiffs allege that Apple is distributing the Eminem songs pursuant to an agreement "with Universal," but that Universal had no authorization to agree to this.  Compl. ¶ 12.  For these purposes, "Universal" is synonymous with Aftermath, which is a joint venture majority owned by UMG Recordings, Inc. ("UMG" being short for "*Universal* Music Group").  *See* Mot. Exh. B ¶ 9(a) (California Complaint).  Universal-Aftermath witnesses thus will testify in this Action about whether the Agreements provide the authorization that Plaintiffs say Universal lacks; and Universal-Aftermath witnesses will testify about the *same* Agreements in response to the contract claims in California.  The overlap in defense-side testimony about the same Agreements also shows that one Court, not two, should consider both Actions.

*Both Actions Will Involve The Interpretation Of The Same Agreements*:  Plaintiffs concede that the same Agreements are relevant to both cases, but nevertheless argue that this overlap is irrelevant to § 1404(a) because different clauses are at issue in the two Actions.  Opp.

at 11-12.  Plaintiffs are wrong and are trying to slice it way too thin.  The same individuals signed the **Agreements as a whole**; they did not sign individual clauses.[2]  There obviously will be overlap in witness testimony and documentary evidence concerning the two Agreements. Also, it is elementary that the Court construes the Agreements as a whole, and does not construe clauses in isolation.  This is significant because Plaintiffs indicate they will take inconsistent positions in the two cases regarding the scope of the Agreements.  Specifically, Plaintiffs argue here that the Controlled Composition clauses are irrelevant because "**digital rights were not contemplated to be granted under the agreements**[.]"  Opp. at 12 n.4 (emphasis added).  Yet, in the California Action, Plaintiffs claim that the Agreements **do grant digital rights**.  Plaintiffs' only complaint in California is that Aftermath should calculate royalties for exercising those digital rights by treating Apple as a "Licensee," rather than as a distributor.  *See* Mot. Ex. B ¶ 32. In short, Plaintiffs appear to be trying to have it both ways, before different Courts.[3]  Having one Court, rather than two, resolve both Actions will ensure consistency in the parties' positions and the Agreements' interpretation.

    **Both Actions Involve The Same Transactions**:  Plaintiffs argue there is no overlap because the Actions involve "separate rights," *i.e.*, to the sound recording and to the compositions.  Opp. at 10.  While sound recordings and musical compositions are different, Plaintiffs ignore that **both** rights are bound up in **each** digital download over iTunes, and that every download at issue here also is at issue in California.  It will be more efficient to have

---

[2] Jeff Bass signed both Agreements, and Mr. Martin signed the 2003 Agreement.  Rand Hoffman signed both for Aftermath; Eminem and Andre R. Young (whose ARY, Inc., is a California Defendant) also signed both.  *See* Mot. Exs. H and I.  Contrary to Plaintiffs' argument, Defendants submitted the Agreements and identified the signers as potential witnesses.  *See* Mot. at 8-9.

[3] Plaintiffs hint they will try to reconcile their inconsistent positions by asserting that digital distribution is permitted under the royalty clause (which Plaintiffs like in California) but not under the Controlled Composition clause (which Plaintiffs dislike here).  Opp. at 12.  This underscores the importance of having one Court construe both Agreements consistently.

discovery concerning the same transactions take place before one Court, rather than two.

## II.    PLAINTIFFS OFFER NO COMPELLING REASON FOR HAVING TWO COURTS CONSIDER THESE SUBSTANTIALLY RELATED CASES

Given the significant overlap among parties, witnesses, transactions and underlying contracts, one would expect Plaintiffs to offer some reason why they filed this Action here more than a month after filing the related Action in California.  The most Plaintiffs do is suggest cryptically that there may be "several non-party witnesses" they want to call to trial in Michigan.  Opp. at 14.  But examination of the declaration offered to back up this assertion shows there is much less to this claim than meets the eye.  First, the "several" potential witnesses turns out to be two people (*see* Opp. Ex. 1), and even as to them, Plaintiffs do not offer competent evidence about who they are or what their testimony is.  Plaintiffs instead offer their lawyers' averments on "information and belief."  *Id.*  Even this "evidence" (inadmissible under Fed. R. Evid. 602) is underwhelming:  The purported witnesses represent an entirely different artist (Kid Rock) who has no relationship to the Eminem Agreements, to Plaintiffs or to Aftermath-Universal.

Ultimately, Plaintiffs offer no reason for filing in two different Districts other than to say they "want to litigate [this case] here and their choice of forum is entitled to a strong preference."  Opp. at 19.  A plaintiff's choice is never "sacrosanct."  *Thomas v. Home Depot*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001).  And it should not be controlling here, particularly since it appears that the only reason Plaintiffs filed their Complaints in separate Districts was to obtain a tactical advantage – namely, to argue in California that the 1998 and 2003 Agreements ***do*** cover digital distributions (a result Plaintiffs hope will bring higher royalties under the Agreements); but to argue in this Action that "digital rights were not contemplated to be granted under the agreements," Opp. at 12 n.4 (a result Plaintiffs hope will avoid the application of the Controlled Composition clauses).  Needless to say, any interest Plaintiffs may have in asserting contrary interpretations of the same Agreements is not entitled to any deference under § 1404(a).

### III.    THE MASTERTONE AGREEMENT'S FORUM SELECTION CLAUSE IS IRRELEVANT

Plaintiffs' argument that the "Mastertone Agreement's" forum selection clause controls is specious.  Opp. at 9.  This Action is not for breach of the Mastertone Agreement,[4] and its forum selection clause is irrelevant.  To the extent that Agreement bears on the interpretation of the 1998 and 2003 Agreements, *see id.*, that fact favors transfer:  The individuals who executed the Mastertone Agreement (Joel Martin and Rand Hoffman) also signed one or both of the 1998 and 2003 Agreements.  *See* Reply Ex. B & n.2, *supra*.  The same witnesses should testify concerning all three Agreements in one District Court Action, not two.

*    *    *

Defendants respectfully submit the motion to transfer should be granted.

s/Daniel D. Quick
Daniel D. Quick (P48109)
Dickinson Wright PLLC
Attorneys for Defendants

Kelly M. Klaus
Munger, Tolles & Olson LLP
Attorneys for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2007, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the all counsel.

s/Daniel D. Quick
Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
 (248) 433-7200
dquick@dickinsonwright.com

---

[4] This Action does not involve Mastertones at all.  Ironically for Plaintiffs, mastertones (as well as digital downloads) *are* at issue in the California Action.  *See* Mot. Ex. B ¶ 1.