UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

        Plaintiffs

 vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

        Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

## AFTERMATH RECORDS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com
Attorneys for Defendants

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9238
kelly.klaus@mto.com
Attorneys for Defendants

Eight Mile Style, LLC et al v. Apple Computer, Inc. et al Doc. 33 Att. 4

PROPOUNDING PARTY:     Plaintiffs Eight Mile Style, LLC and
                             Martin Affiliated, LLC

RESPONDING PARTY:       Defendant Apple Inc.

SET NO.                 One (1)

4682351.1

Pursuant to Federal Rule of Civil Procedure 33, Defendant Aftermath Records d/b/a Aftermath Entertainment ("Aftermath") provides the following objections and responses to Plaintiffs' First Set of Interrogatories ("Interrogatories"):

## GENERAL OBJECTIONS

The following General Objections apply to and are incorporated in each and every response to each and every individual Interrogatory, whether or not such General Objections are expressly incorporated by reference in such response.

1. Aftermath objects to the Interrogatories to the extent they purport to impose on Aftermath any obligation that is different from or greater than any imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of California, or any other applicable law or rule.

2. Aftermath objects to the Interrogatories to the extent they request disclosure of information subject to the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure, including without limitation any joint privilege relating to the same. Aftermath claims such privileges and protections to the extent implicated by each Interrogatory, and excludes privileged and protected information from its responses to the Interrogatories. Any disclosure of such protected or privileged information is inadvertent, and is not intended to waive those privileges or protections.

3. Aftermath objects to the Interrogatories as duplicative, unduly burdensome, and harassing to the extent they seek information that is equally available to Plaintiffs, or information that could be derived or ascertained by Plaintiffs with substantially the same effort that would be required of Aftermath from review of the documents produced in this case.

4. Aftermath objects to the Interrogatories to the extent they seek information that is not in Aftermath's possession, custody, or control, or that is publicly available.

1

5.     Aftermath objects to the Interrogatories to the extent they seek information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath will disclose such responsive, non-privileged information only upon the entry of, and in accordance with the terms of, an appropriate protective order.

6.     To the extent that the Interrogatories seek information concerning an identified contention or factual issue, Aftermath objects that the Interrogatories are premature. Discovery in this case has only recently commenced, and Aftermath has not completed its investigation of the facts relevant to this case. Aftermath's responses are necessarily preliminary and are made without prejudice to its right to disclose, introduce or rely upon information that may be later discovered or produced.

7.     Aftermath objects to the Interrogatories to the extent they seek information created after, or related to events after, the filing of the Complaint in this action, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8.     Aftermath objects to the Interrogatories to the extent they seek information outside of any applicable limitations period, whether arising by statute, contract or otherwise.

9.     In responding to the Interrogatories, Aftermath does not waive, or intend to waive, any privilege or objection, including, but not limited to, any objections to the competency, relevance, materiality, or admissibility of any of the information disclosed in response to the Interrogatories. No objection or response made in these responses and objections shall be deemed to constitute a representation by Aftermath as to the existence or non-existence of the information requested.

10.     Aftermath objects to Interrogatories containing the defined terms "You," "Aftermath," "Defendants," or "Defendant" as vague, ambiguous, overly broad and unduly

burdensome to the extent any of these terms include any entity other than Defendant herein Aftermath Records d/b/a Aftermath Entertainment.

11. Aftermath objects to Interrogatories containing the defined term "Apple" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than defendant herein Apple Inc.

12. Aftermath objects to Interrogatories containing the defined term "Plaintiffs" as vague, ambiguous, overly broad and unduly burdensome to the extent the definition includes any entity other than the named Plaintiffs.

13. Aftermath objects to Interrogatories containing the defined term "Eight Mile" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than the named Plaintiff Eight Mile Style, LLC.

14. Aftermath objects to Interrogatories containing the defined term "Marin Affiliated" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than the named Plaintiff Martin Affiliated, LLC.

15. Aftermath objects to Interrogatories containing the defined term "UMG" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than UMG Recordings, Inc.

16. Aftermath objects to Interrogatories containing the defined term "Eminem" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any person other than Marshall B. Mathers III.

17. Aftermath objects to Interrogatories containing the defined term "Eminem Compositions" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any works other than those listed on Exhibit A to the Complaint.

18. Aftermath objects to Interrogatories containing the defined term "1995 Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term

includes any document other than the purported Exclusive Artist's Recording Agreement entered into by F.B.T. Productions, LLC and Eminem on November 28, 1995. Aftermath also objects to such Interrogatories as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

19. Aftermath objects to Interrogatories containing the defined term "March 9, 1998 Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in the first sentence of Paragraph 20 of Aftermath's Amended Answer to the Complaint in the related lawsuit, *F.B.T. Productions, LLC et al. v. Aftermath Records et al.*, Case No. CV-07-3314 PSG (C.D. Cal.) (hereinafter the "F.B.T. Lawsuit"). Aftermath also objects to such Interrogatories as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

20. Aftermath objects to Interrogatories containing the defined term "Letter of Inducement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in the second sentence of Paragraph 20 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Interrogatories as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

21. Aftermath objects to Interrogatories containing the defined term "Novation" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in Paragraph 21 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Interrogatories as

misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

22.     Aftermath objects to Interrogatories containing the defined term "2003 Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in Paragraph 23 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Interrogatories as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

23.     Aftermath objects to Interrogatories containing the defined term "2004 Amendment" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in Paragraph 25 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Interrogatories as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

24.     Aftermath objects to Interrogatories containing the defined term "Mastertone Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement entered into as of August 26, 2005, by and between Eight Mile and Martin Affiliated, on the one hand, and Interscope Records, a Division of UMG. Aftermath also objects to such Interrogatories as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

25.     Aftermath objects to Interrogatories containing the defined terms "Document," "Electronically Stored Information" or "Things" as vague, ambiguous, overly broad and unduly burdensome to the extent any of those terms has a meaning or scope that is different than that required by Rules 33 or 34 of the Federal Rules of Civil Procedure. Aftermath further objects that the terms "draft" and "non-identical copy" in Definition Paragraph Q are vague, ambiguous, overly broad and unduly burdensome to the extent those terms purport to include documents whose human readable text is identical.

26.     Aftermath objects to Interrogatories containing the defined term "Communication" as vague, ambiguous, overly broad and unduly burdensome to the extent the term purports to require Aftermath to produce information other than as embodied in documents as defined by the Federal Rules of Civil Procedure.

27.     Aftermath objects to Definition Paragraph V as vague, ambiguous, overly broad, unduly burdensome, and incomprehensible. Aftermath interprets defined terms as set forth above and undefined terms according to its best understanding of such terms.

28.     Aftermath objects to Instruction Paragraph 3 as vague, ambiguous, unduly burdensome and beyond the requirements of the Federal Rules or the Local Rules of this District. Aftermath is under no obligation to, and will not, explain why an answer is incomplete, provide a best estimate or judgment, provide available information that comes closest to providing the requested information, or identify other sources of information that might contain the requested information.

29.     Aftermath reserves the right to supplement or modify its responses and objections to the Interrogatories.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

## INTERROGATORY NO. 1:

Please identify each person who prepared or assisted in the preparation of the responses to these First Set of Interrogatories, and the Requests for Production of Documents served contemporaneously herewith, and identify the specific discovery request for which the person answered (other than anyone who simply typed or copied the responses.)

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "prepared or assisted in the preparation of." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects that this Interrogatory improperly circumvents the limitation on the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a). This Interrogatory seeks information about the preparation of responses to two sets of discovery requests, served to two different parties, and containing 20 separate interrogatories and 28 separate requests for production. By itself, this single Interrogatory exceeds the total number of Interrogatories Plaintiffs are permitted to serve under Federal Rule 33(a).

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath responds that its responses to Plaintiffs' First Set of Requests for Production of Documents and First Set of Interrogatories were prepared by outside counsel and in-house counsel.

**INTERROGATORY NO. 2**:

Please state with specificity each fact that supports, or forms the basis for, each of the affirmative defenses asserted in your Answer to the Complaint.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory to the extent it calls for a legal conclusion. Aftermath further objects that this Interrogatory is an improper attempt to circumvent the limitation on the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a). This Interrogatory seeks information about 16 separate affirmative defenses and therefore counts as 16 separate interrogatories against the total number of Interrogatories Plaintiffs are permitted to serve under Federal Rule 33(a). Aftermath further objects to this Interrogatory as a contention interrogatory, purporting to require Aftermath to marshal all of its evidence, which is inappropriate at this time, as discovery in this matter has only commenced, Plaintiffs have not yet produced a single document or answered a single interrogatory, and there have been no depositions. Aftermath specifically reserves the right to amend and/or supplement its response to this Interrogatory.

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath responds as follows: Plaintiffs' Complaint attempts to assert claims under the Copyright Act and state law claims. To the extent the evidence shows that any of the claims fail, the Complaint will have failed to state a valid claim and Plaintiffs will have suffered no damages. To the extent Plaintiffs fail to carry their burden to demonstrate they are the owners of the copyrights or exclusive rights under state law alleged to have been infringed or interfered with, Plaintiffs' claims will fail for lack of standing.

The Copyright Act, 17 U.S.C. § 301, preempts Plaintiffs' state law claims because those claims all seek to enforce claimed legal and/or equitable rights that are equivalent to one or more exclusive rights within the general scope of copyright as specified by 17 U.S.C. § 106.

Plaintiffs' claims are barred because the allegedly infringing or unlawful use of the compositions at issue in Plaintiffs' Complaint was licensed or otherwise authorized by persons or entities with the right to license or authorize such use. Among other things, the March 9, 1998 and 2003 Agreements each contain "Controlled Compositions" clauses, pursuant to which (1) each composition at issue in Plaintiffs' Complaint is a "Controlled Composition, and (2) each such Controlled Composition "will be licensed to Aftermath and its distributors/licensees ...." This provision grants a license for the use that Plaintiffs allege to be infringing or unlawful. If, as Plaintiffs contend, the provision requires the granting of a separate license for the use of Controlled Compositions by Aftermath and its distributors/licensees, then Plaintiffs have breached the agreements by failing to grant the licenses that authorize the dissemination of the Controlled Compositions. Plaintiffs' bad faith and inexcusable failure to perform under the Controlled Composition provisions, in addition to other breaches that may be discovered, also bars Plaintiffs' claim for recovery, leaves Plaintiffs with unclean hands, estops them from any recovery in this action, and waives Plaintiffs' right to any recovery.

There also exists an implied license allowing the use of the compositions at issue in the manner claimed to be infringing or unlawful. Plaintiffs and/or other owners of the compositions in issue have received and accepted royalty payments from Aftermath and/or UMG for the use at issue in Plaintiffs' Complaint. The acceptance of these payments gives rise to an implied license as a matter of law. In addition, the same acceptance of such payments without objection by Plaintiffs and/or other owners of the compositions in issue effects an estoppel that precludes Plaintiffs' claims for damages.

To the extent Plaintiffs have failed to comply with the registration requirements of the Copyright Act, their prayer for statutory damages and attorney's fees under the Copyright Act is barred by 17 U.S.C. § 412(2).

To the extent Plaintiffs attempt to seek relief on claims outside of the three-year limitations period under the Copyright Act, 17 U.S.C. § 507(b), or outside the applicable state law limitations period for any state law claim that is not preempted, the damages claims are barred. In addition, laches bars any claim that Plaintiffs have unreasonably and unjustifiably delayed bringing. Plaintiffs' delay also constitutes a failure of Plaintiffs to mitigate their alleged damages.

**<u>INTERROGATORY NO. 3</u>:**

Please state with specificity the details of all communications, either internally or between you and (1) Plaintiff, its employees, agents or representatives; (2) Eminem; and/or (3) any other third party concerning the Eminem Compositions, including the parties to, and the dates and substance of, each such communication.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "details," "concerning" and "any other third party." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. The Interrogatory is extravagantly overbroad and burdensome, since it asks Aftermath to state the details of every communication over a period of a decade concerning the compositions of an immensely popular musician. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath

further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material.

**INTERROGATORY NO. 4:**

Please explain the basis for your belief that Universal had the authority to license, authorize, or otherwise grant to Apple the right to reproduce, distribute, and sell downloads of sound recordings of the Eminem Compositions through its iTunes Store, including but not limited to each and every license or agreement pursuant to which such authorization was purportedly obtained.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "belief," "license," "authorize, "otherwise grant," and "reproduce, distribute, and sell." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath refers Plaintiffs to its response to Interrogatory No. 2 above regarding Aftermath's contentions that the allegedly infringing or unlawful use of the compositions at issue in Plaintiffs' Complaint was licensed or otherwise authorized by persons or entities with the right to license or authorize such use; that an implied license exists as a matter of law allowing the use of

the compositions at issue in the manner claimed to be infringing or unlawful; and that estoppel bars Plaintiffs' claims.

**INTERROGATORY NO. 5:**

For each license or agreement identified in response to Interrogatory Number 4 above, please identify the person(s) who were involved in the negotiation or drafting of such license or agreements.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "license," "agreements" and "involved in the negotiation or drafting." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath responds that the persons who principally negotiated and drafted the March 9, 1998 and 2003 Agreements for Aftermath and for Plaintiffs and/or their affiliates was Peter Paterno, for Aftermath, and Joel Martin, for Plaintiffs and/or their affiliates. Aftermath further responds that this Interrogatory is incomprehensible and cannot be answered as to implied licenses, which by definition are neither negotiated nor drafted.

**INTERROGATORY NO. 6:**

Please explain the basis for your belief that Apple has the right to synchronize with images, transmit, publicly perform, or reproduce lyrics of the Eminem Compositions through its iTunes Store, or by any other means of display or distribution.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "right," "synchronize with images," "transmit," "publicly perform," "reproduce," and "other means of display or distribution." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**INTERROGATORY NO. 7:**

For each license or agreement identified, referenced, or related to your response to Interrogatory Number 6 above, please identify the person(s) who were involved in the negotiation or drafting of such license or agreements.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint

privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "license or agreement," "referenced, "related to," and "involved in the negotiation or drafting." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

### INTERROGATORY NO. 8:

Please explain the basis for your contention in Defendants' Motion to Transfer Venue that the Controlled Composition clause in the March 9, 1998 Agreement and the 2003 Agreement authorized the sale of the Eminem Compositions on iTunes, and therefore is a "complete defense" to Plaintiffs' claims in this action.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "authorized the sale of the Eminem Compositions." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret

information, and/or competitively sensitive material. Aftermath further objects to this Interrogatory as misleading in its characterization of legal arguments stated in pleadings on file in this action.

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath refers Plaintiffs to its response to Interrogatory No. 2 above regarding Aftermath's contentions that the allegedly infringing or unlawful use of the compositions at issue in Plaintiffs' Complaint was licensed or otherwise authorized by persons or entities with the right to license or authorize such use.

**INTERROGATORY NO. 9:**

Please explain the basis for your belief that Apple is authorized to sell through its iTunes Store downloads of sound recordings of the Eminem Compositions, including but not limited to each and every license or agreement pursuant to which such authorization was purportedly obtained.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "belief," "authorized to sell," "license," and "agreement." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath states that UMG's agreements with Apple for Universal Sound Recordings authorize Apple to sell through its iTunes store downloads of Universal Sound Recordings, including the sound recordings alleged to embody the Eminem Compositions at issue in the Complaint.

## INTERROGATORY NO. 10:

For each license or agreement identified in response to Interrogatory Number 9 above, please identify the person(s) who were involved in the negotiation or drafting of such license or agreements.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "license," "agreement" and "involved in the negotiation or drafting." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath responds that the agreements referred to in Aftermath's Response to Interrogatory No. 9 have been principally negotiated and/or drafted by David Weinberg and Amanda Marks, on behalf of UMG, and Eddy Cue and Kevin Saul, on behalf of Apple.

**INTERROGATORY NO. 11:**

Please state with specificity all of the sources of revenue, both foreign and domestic, including date and source, earned and/or received by Apple derived from the sound recordings of the Eminem Compositions through the iTunes Store, including the statements or accountings on which the receipt of such revenues is reflected.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "sources of revenue," "earned and/or received," "derived from," and "statements or accountings." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, insofar as the Interrogatory seeks information regarding any sales of any downloads outside the United States, the Interrogatory does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation. Aftermath further objects that this Interrogatory seeks information that is in the possession, custody or control of another party, and that this Interrogatory is not properly directed to Aftermath.

**INTERROGATORY NO. 12:**

Please describe all costs incurred by Apple related to providing a digital file of a sound recording of an Eminem Composition to an end user through the iTunes store. If you contend

that you have costs each time a sound recording of an Eminem Composition is downloaded by an end user, please describe in detail all such costs related to such download.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "costs," "related to" and "providing a digital file of a sound recording of an Eminem Composition." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Interrogatory seeks information that is in the possession, custody or control of another party, and that this Interrogatory is not properly directed to Aftermath.

### INTERROGATORY NO. 13:

Please state with specificity all payments made by Apple to UMG related sound recordings embodying the Eminem Compositions through the iTunes Store, including the period in which each such payment was made and the number of downloads generating such payments.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "payments," "related," "period in which each such

payment was made" and "number of downloads generating such payments." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request seeks documents relevant, if at all, only to damages, and that damages discovery is premature and should await a determination as to liability.

## INTERROGATORY NO. 14:

Please state with specificity all categories and types of payments made by Apple to UMG with respect to repertoire, creative services, technology or other intellectual property licenses, including but not limited to any consulting arrangement, relating to the catalog of sound recordings owned or controlled by UMG, and describe the specific nature of the consideration given by each party.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "with respect to," "relating to," "categories and types of payments," "repertoire" "creative services," technology," "other intellectual property licenses," "consulting arrangement," and "specific nature of the consideration given." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it

seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects on the ground that this Interrogatory does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**INTERROGATORY NO. 15:**

List all restrictions, reserved rights, including but not limited to DRM requirements, in any of the relevant agreements between Universal and Apple concerning sound recordings and musical compositions on the iTunes Store.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "restrictions," "reserved rights," "DRM requirements," and "concerning." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects on the ground that this Interrogatory does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**INTERROGATORY NO. 16:**

Please state with specificity any and all parties who have purportedly obtained rights at any time from Aftermath, Interscope, UMG, or any of its related companies to reproduce, distribute, or sell sound recordings of the Eminem Compositions in any form of digital media, including but not limited to digital download, streaming, mastertones, and ringtones, including the date the license or agreement was executed and the parties thereto.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "purportedly obtained rights," "related companies," "reproduce, distribute, or sell," "digital media, "digital download," "streaming," "mastertones," "ringtones," and "license or agreement." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**INTERROGATORY NO. 17:**

Please explain the reason why it was necessary for UMG (through Interscope) to enter into the Mastertone Agreement on August 26, 2005 with Eight Mile and Martin Affiliated

granting a limited license to create and digitally distribute mastertone recordings of the Eminem Compositions.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "necessary," "limited license to create and digitally distribute," and "mastertone recordings." Aftermath further objects to this Interrogatory as overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses in this litigation, particularly to the extent this Interrogatory purports to require Aftermath to describe all the business reasons that informed Interscope's decision to enter into the Mastertone Agreement. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiver of the foregoing General and Specific Objections, Aftermath responds that it was not "necessary" for UMG to enter into the Mastertone Agreement. Pursuant to the March 9, 1998 and 2003 Agreements, UMG already had the right to release mastertones embodying performances of compositions by Eminem. However, since there was a controversy regarding whether mastertones were eligible for a statutory license and no rate had been set, the Mastertone Agreement resolved those issues. Thereafter, in its Memorandum Opinion of October 16, 2006, the Copyright Office held that mastertones are phonorecords and that the delivery of the same by wire or wireless technology met the definition of digital phonorecord delivery as set forth in the Copyright Act. As a result of this ruling, the

rate for compositions embodied in mastertones is statutorily the same as for any digital phonorecord delivery.

**INTERROGATORY NO. 18:**

Identify all musical copyright owners and administrators who have entered into agreements directly with you for the reproduction, distribution, transmission, synchronization, or public performance of musical compositions, and the identity of all payees under such agreements.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "musical copyright owners," "administrators," "reproduction," "distribution," "transmission," "synchronization," "public performance," and "payees." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**INTERROGATORY NO. 19:**

With respect to each of the following so-called major label companies, state whether the labels purport to grant licenses to Apple for mechanical reproduction of underlying musical compositions.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, and incomprehensible, particularly in its failure to define "so-called major label companies," "purport to grant licenses," and "mechanical reproduction." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**INTERROGATORY NO. 20:**

Please identity any and all communications between Apple and the Recording Industry Association of America (RIAA) concerning the effectiveness and/or legal support for the positions taken by UMG in this action, including but not limited to the identity of the individual on behalf of the RIAA with whom Apple has had any such communication.

RESPONSE: Aftermath incorporates its General Objections above. Aftermath specifically objects to this Interrogatory to the extent it calls for information protected by the

attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Interrogatory as vague and ambiguous, particularly in its failure to define "positions taken by UMG in this action," "concerning" and "effectiveness and/or legal support." Aftermath further objects to this Interrogatory as overly broad and unduly burdensome. Aftermath further objects to this Interrogatory to the extent the information requested is within the possession, custody or control of Plaintiffs. Aftermath further objects to the Interrogatory to the extent it seeks information that is confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation. Aftermath further objects that this Interrogatory seeks information that is in the possession, custody or control of another party, and that this Interrogatory is not properly directed to Aftermath.

DATED: March 20, 2008

Kelly M. Klaus
Munger, Tolles & Olson LLP

Daniel D. Quick (P48109)
Dickinson Wright PLLC
Attorneys for Defendants

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I, the undersigned, declare: that I am employed in the aforesaid County; I am over the age of 18 and not a party to the within action; my business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California 90071-1560.

On March 20, 2008, I served upon the interested party(ies) in this action the foregoing document(s) described as:

## AFTERMATH RECORDS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

[X] By placing ⊠ the original ☐ a true copy thereof enclosed in sealed envelope(s) addressed as stated on the attached service list.

[X] **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be deposited with postage thereon fully prepaid in the United States mail at a facility regularly maintained by the United States Postal Service at Los Angeles, California. I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation dated or postage meter date is more than one day after dated of deposit for mailing, pursuant to this affidavit.

[ ] **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed for Federal Express collection and delivery at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for Federal Express mailing. Under that practice it would be deposited with the Federal Express office on that same day with instructions for overnight delivery, fully prepaid, at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the Federal Express delivery date is more than one day after dated of deposit with the local Federal Express office, pursuant to this affidavit.

[ ] **BY FACSIMILE (AS INDICATED ON ATTACHED SERVICE LIST)** By sending a copy of said document by facsimile machine for instantaneous transmittal via telephone line.

[ ] **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Howard Hertz                                    *Via Mail*
Jay G. Yasso
Hertz Schram PC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000
hhertz@hertzschram.com
jyasso@hertzschram.com
*Attorneys for Plaintiffs*

Richard S. Busch                                *Via Mail*
King & Ballow
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201
(615) 259-3456
rbusch@kingballow.com
*Attorneys for Plaintiffs*


Executed on March 20, 2008, at Los Angeles, California.

_____
Marie S. Young