KING & BALLOW

MAR 2 7 2008

RECEIVED

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

        Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

        Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

## AFTERMATH RECORDS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com
Attorneys for Defendants

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9238
kelly.klaus@mto.com
Attorneys for Defendants

PROPOUNDING PARTY:      Plaintiffs Eight Mile Style, LLC and
                               Martin Affiliated, LLC

RESPONDING PARTY:        Defendant Aftermath Records d/b/a Aftermath
                               Entertainment

SET NO.                        One (1)

Eight Mile Style, LLC et al v. Apple Computer, Incorporated   Doc. 33 Att. 5

4678146.1

Dockets.Justia.com

Pursuant to Federal Rule of Civil Procedure 34, Defendant Aftermath Records d/b/a Aftermath Entertainment ("Aftermath") hereby submits the following objections and responses to Plaintiffs' First Set of Requests for Production of Documents ("Requests").

## GENERAL OBJECTIONS

The following General Objections apply to and are incorporated in each and every response to each and every specific request, whether or not such General Objections are expressly incorporated by reference in such response.

1.       Aftermath objects to the Requests to the extent they purport to impose on Aftermath any obligation that is different from or greater than any obligation imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Michigan, or any other applicable law or rule.

2.       Aftermath objects to the Requests to the extent they request production of documents subject to the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure, including without limitation any joint privilege relating to the same. Aftermath claims such privileges and protections to the extent implicated by each request, and excludes privileged and protected information from its responses to the Requests. Any disclosure of such protected or privileged information is inadvertent, and is not intended to waive those privileges or protections.

3.       Aftermath objects to the Requests to the extent they seek documents not in Aftermath's possession, custody, or control; that are equally available to Plaintiffs; or that could be derived or ascertained by Plaintiffs with substantially the same effort that would be required of Aftermath.

4.       Aftermath objects to the Requests to the extent they seek documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Aftermath will produce responsive, non-privileged documents containing such information only upon the entry of, and in accordance with the terms of, an appropriate protective order in this case.

5.     To the extent any Request seeks to obtain all documents concerning an identified contention or factual issue, Aftermath objects that the Request is premature. Aftermath's responses are necessarily preliminary and are made without prejudice to its right to produce, introduce or rely upon documents that may be later discovered or produced.

6.     Aftermath objects to the Requests to the extent they seek documents created after, or related to events after, the filing of the Complaint in this action, on the grounds that such documents are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7.     Aftermath will make reasonable efforts to search for information in the places where it is reasonably likely to be found, and Aftermath objects to the Requests to the extent they purport to require a broader search.

8.     Aftermath objects to the Requests to the extent they seek documents outside of any applicable limitations period, whether arising by statute, contract or otherwise.

9.     In responding to the Requests, Aftermath does not waive, or intend to waive, any privilege or objection, including, but not limited to, any objections to the competency, relevance, materiality, or admissibility of any of the documents produced in response to the Requests. No objection or response made in these responses and objections shall be deemed to constitute a representation by Aftermath as to the existence or non-existence of the documents requested.

10.     Aftermath objects to Requests containing the defined terms "You," "Aftermath," "Defendants," or "Defendant" as vague, ambiguous, overly broad and unduly burdensome to the extent any of these terms include any entity other than Aftermath.

11.     Aftermath objects to Requests containing the defined term "Apple" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than the named Defendant Apple Inc., erroneously sued as Apple Computer, Inc.

12.     Aftermath objects to Requests containing the defined term "Plaintiffs" as vague, ambiguous, overly broad and unduly burdensome to the extent the definition includes any entity other than the named Plaintiffs.

13.     Aftermath objects to Requests containing the defined term "Eight Mile" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than the named Plaintiff Eight Mile Style, LLC.

14.     Aftermath objects to Requests containing the defined term "Martin Affiliated" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than the named Plaintiff Martin Affiliated, LLC.

15.     Aftermath objects to Requests containing the defined term "UMG" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any entity other than UMG Recordings, Inc.

16.     Aftermath objects to Requests containing the defined term "Eminem" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any person other than Marshall B. Mathers III.

17.     Aftermath objects to Requests containing the defined term "Eminem Compositions" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any works other than those listed on Exhibit A to the Complaint.

18.     Aftermath objects to Requests containing the defined term "1995 Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the purported Exclusive Artist's Recording Agreement entered into by F.B.T. Productions, LLC and Eminem on November 28, 1995.  Aftermath also objects to such

Requests as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

19. Aftermath objects to Requests containing the defined term "March 9, 1998 Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in the first sentence of Paragraph 20 of Aftermath's Amended Answer to the Complaint in the related lawsuit, *F.B.T. Productions, LLC et al. v. Aftermath Records et al.*, Case No. CV-07-3314 PSG (C.D. Cal.) (hereinafter the "F.B.T. Lawsuit"). Aftermath also objects to such Requests as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

20. Aftermath objects to Requests containing the defined term "Letter of Inducement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in the second sentence of Paragraph 20 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Requests as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

21. Aftermath objects to Requests containing the defined term "Novation" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in Paragraph 21 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Requests as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than

the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

22.     Aftermath objects to Requests containing the defined term "2003 Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in Paragraph 23 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Requests as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

23.     Aftermath objects to Requests containing the defined term "2004 Amendment" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement that is referenced in Paragraph 25 of Defendants' Amended Answer in the F.B.T. Lawsuit. Aftermath also objects to such Requests as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

24.     Aftermath objects to Requests containing the defined term "Mastertone Agreement" as vague, ambiguous, overly broad and unduly burdensome to the extent the term includes any document other than the written agreement entered into as of August 26, 2005, by and between Eight Mile and Martin Affiliated, on the one hand, and Interscope Records, a Division of UMG. Aftermath also objects to such Requests as misleading to the extent the defined term is used to include Plaintiffs' characterization of the document rather than the document itself. Aftermath is not bound by, and its responses are not based upon, Plaintiffs' characterizations of said document.

25.     Aftermath objects to Requests containing the defined terms "Document," "Electronically Stored Information" or "Things" as vague, ambiguous, overly broad and unduly burdensome to the extent any of those terms has a meaning or scope that is different than that required by Rule 34 of the Federal Rules of Civil Procedure. Electronically stored information, if any, responsive to any of Plaintiffs' requests will be produced in electronic image files. Aftermath further objects that the terms "draft" and "non-identical copy" in Definition Paragraph Q are vague, ambiguous, overly broad and unduly burdensome to the extent those terms purport to include documents whose human readable text is identical.

26.     Aftermath objects to Requests containing the defined term "Communication" as vague, ambiguous, overly broad and unduly burdensome to the extent the term purports to require Aftermath to produce information other than as embodied in documents as defined by the Federal Rules of Civil Procedure.

27.     Aftermath objects to Definition Paragraph V as vague, ambiguous, overly broad, unduly burdensome, and incomprehensible. Aftermath interprets defined terms to the extent set forth above and undefined terms according to Aftermath's best understanding of such terms.

28.     Aftermath objects to Instruction Paragraph 1 to the extent it purports to impose upon Aftermath any obligation in excess of those required under the supplementation rules of the Federal Rules of Civil Procedure. Except as expressly provided in the Rules, Aftermath specifically disclaims any obligation to supplement its responses or production in response to Plaintiffs' Requests.

29.     Aftermath objects to Instruction Paragraph 2 as overly broad, unduly burdensome, incomprehensible and impossible to comply with. Aftermath is under no obligation to, and will not, provide the log requested in the Instruction.

30.     Aftermath objects to Instruction Paragraph 3 to the extent it purports to impose any obligation for Aftermath to prepare a privilege log, if any, in excess of the requirements of

the Federal Rules of Civil Procedure. Any privilege log that Aftermath prepares will be completed in accordance with the requirements of the Federal Rules.

31.     Aftermath objects to Instruction Paragraph 4 as unduly burdensome and not required by the Federal Rules or Local Rules of this District. Aftermath is under no obligation to, and will not, identify which particular request or requests any documents Aftermath produces may be responsive to.

32.     Aftermath reserves the right to supplement or modify its responses and objections to the Requests.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Each and every document that in any way refers to, relates to, or pertains to, or that you relied on or reviewed in preparing each and every allegation contained in your Answer and affirmative defenses.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "relates to, or pertains to," "relied on or reviewed," and "preparing." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath will produce non-privileged documents in Aftermath's possession, custody or control that refer

or relate specifically to any of the factual matters pleaded by Aftermath in its Answer and affirmative defenses.

## REQUEST FOR PRODUCTION NO. 2:

Each and every document that in any way refers to, relates to, or pertains to your answers and responses to Plaintiffs' First Set of Interrogatories, including all documents that you relied on or reviewed in preparing your answers thereto.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "relates to, or pertains to," "relied on or reviewed," and "preparing." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath will produce non-privileged documents in Aftermath's possession, custody or control that refer or relate specifically to any of the factual matters set forth by Aftermath in its responses to Plaintiffs' First Set of Interrogatories, and/or which were relied upon in preparing Aftermath's responses to Plaintiffs' First Set of Interrogatories

**REQUEST FOR PRODUCTION NO. 3:**

Each and every document in your custody, possession, or control that was obtained from Plaintiffs, Eminem, or any third party that in any way relates to, refers to, or pertains to, the reproduction, distribution, or sale of the Eminem Compositions through Apple's iTunes Store.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "any third party," or "relates to," "pertains to," or "reproduction, distribution, or sale." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath will produce UMG's agreements with Apple for Universal Sound Recordings; non-privileged documents that refer to or discuss those provisions in the March 9, 1998 and 2003 Agreements referred to in this litigation as the "Controlled Composition clauses"; and the royalty statements from UMG and/or Aftermath to Plaintiffs that reflect payments made to, and received by, Plaintiffs, on account of the sale through Apple's iTunes of the sound recordings that Plaintiffs allege embody the Eminem Compositions at issue in the Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

Each and every document that relates to the reproduction, distribution, performance, and/or sale of sound recordings of the Eminem Compositions in any digital form including but not limited to interactive and non-interactive streaming transmissions, permanent and conditional downloads, mastertones and ringtones.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "relates to," "reproduction, distribution, performance, and/or sale," and "digital form including but not limited to interactive and non-interactive streaming transmissions, permanent and conditional downloads, mastertones and ringtones." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings alleged by Plaintiffs to embody the Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.

## REQUEST FOR PRODUCTION NO. 5:

Each and every internal or external communication that relates to, refers to, or pertains to, the reproduction, distribution, or sale of the Eminem Compositions that form the subject matter of this lawsuit in any digital form including but not limited to interactive and non-interactive streaming transmissions, permanent and conditional downloads, mastertones and ringtones.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "relates to," "pertains to," "reproduction, distribution, or sale," "and "digital form including but not limited to interactive and non-interactive streaming transmissions, permanent and conditional downloads, mastertones and ringtones." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings

alleged by Plaintiffs to embody the Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3. Aftermath also will produce non-privileged documents that constitute, refer to or discuss the Mastertone Agreement.

## REQUEST FOR PRODUCTION NO. 6:

Each and every license, contract, or agreement for whatever purpose, that have been entered into or issued by you and/or executed by any party thereto concerning the Eminem Compositions, for any purpose, including but not limited to the reproduction, distribution, or sale of sound recordings of the Eminem Compositions for digital download, streaming, mastertones, and ringtones.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "license, contract, or agreement," "entered into or issued by you and/or executed by any party thereto," and "reproduction, distribution, or sale." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or

control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings alleged by Plaintiffs to embody the Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production Nos. 3 and 5.

### REQUEST FOR PRODUCTION NO. 7:

Copies of each and every license request received relating to the reproduction, distribution, performance, and sale of sound recordings of the Eminem Compositions in digital format.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "license request," "received," "relating to," "reproduction, distribution, performance, and sale," and "digital format." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent

the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that the phrase "license request received" is unintelligible and that the Request does not appear to seek, or to be reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all written communications concerning the Eminem Compositions, including any and all communication between you and any other of the Defendants in this action and/or any other third party.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "concerning." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings alleged by Plaintiffs to embody the

Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production Nos. 3 and 5.


## REQUEST FOR PRODUCTION NO. 9:

Each and every document or communication between Apple and UMG relating to, referring to, or pertaining to the reproduction, distribution, and sale of the Eminem Compositions to end users Apple's iTunes Store.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "relating to," "pertaining to," and "reproduction, distribution, and sale." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.

## REQUEST FOR PRODUCTION NO. 10:

Each and every document, communication, license, or agreement that you allege gives Apple the authority to reproduce, distribute, and sell sound recordings of the Eminem Compositions to end users through digital downloads from Apple's iTunes Store.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "license," "agreement," "allege," "authority," and "reproduce, distribute, and sell." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.

## REQUEST FOR PRODUCTION NO. 11:

Each and every document, communication, license, or agreement that you allege gives UMG, Interscope, and/or Aftermath the authority to license or otherwise authorize Apple to reproduce, distribute, and sell sound recordings of the Eminem Compositions to end users through digital downloads from Apple's iTunes Store.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "license," "agreement," "allege," "authority," and "reproduce, distribute, and sell." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.

**REQUEST FOR PRODUCTION NO. 12:**

Each and every document or communication that refers to, relates to, or pertains to the negotiation and formation of the March 9, 1998 Agreement, the 2003 Agreement, or any other agreement or license concerning the Eminem Compositions.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define "relates to," "pertains to," "negotiation," "formation," "agreement," "license," or "concerning." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.

**REQUEST FOR PRODUCTION NO. 13:**

Each and every document that demonstrates, shows or otherwise indicates the date(s) that copies of sound recordings of the Eminem Compositions were made for any purpose, including

but not limited to interactive and non-interactive streaming transmissions, permanent and conditional downloads, mastertones and ringtones.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "demonstrates," "shows," or "indicates." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings alleged by Plaintiffs to embody the Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.

**REQUEST FOR PRODUCTION NO. 14:**

Each and every document that shows all sales and distribution figures (including but not limited to free and promotional copies), revenues, expenses, profit and losses, and reserves for the sale or distribution of the sound recordings of the Eminem Compositions, both domestically and internationally, in any digital media, including but not limited to interactive and non-interactive streaming transmissions, permanent and conditional downloads, mastertones and ringtones, including but not limited to any accountings and all supporting documentation, invoices, statements or other calculations.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "shows," "free and promotional copies," "revenues, expenses, profit and losses, and reserves," "sale or distribution," and "digital media." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, insofar as the Request seeks documents regarding any international sale or distribution of any permanent download, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation. Aftermath further objects that, to the extent this Request

seeks any documents other than those relating directly to the sale through Apple's iTunes Store

of downloads of sound recordings alleged by Plaintiffs to embody the Eminem Compositions,

the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any

information that is relevant to the claims or defenses in this litigation. Aftermath further objects

that this Request seeks documents relevant, if at all, only to damages, and that damages

discovery is premature and should await a determination as to liability.


## REQUEST FOR PRODUCTION NO. 15:

Each and every document showing all money or revenue earned and/or received by

Defendants for the sale or distribution or the licensing for sale, distribution, or exploitation of the

Eminem Compositions, including any fees and royalties collected by Defendants, in any digital

media, including but not limited to interactive and non-interactive streaming rights, advertising,

mastertones and ringtones, including the accounting period in which the revenue was earned, the

quarter in which the revenue was received and the source of such revenue.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically

objects to this Request as vague and ambiguous, particularly in its failure to define the terms

"showing," "money or revenue," "earned and/or received," "sale, distribution, or exploitation,"

"fees and royalties," "collected," "digital media," "accounting period in which the revenue was

earned, the quarter in which the revenue was received," and "source of such revenue."

Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath

further objects to this Request to the extent it calls for information protected by the attorney-

client privilege and work product doctrine, including without limitation any joint privilege

relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings alleged by Plaintiffs to embody the Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation. Aftermath further objects that this Request seeks documents relevant, if at all, only to damages, and that damages discovery is premature and should await a determination as to liability.

### REQUEST FOR PRODUCTION NO. 16:

Each and every document showing all payments from Apple to Universal for the sale or distribution of the Eminem Compositions on the iTunes Store.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "showing," "payments," and "sale or distribution." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain

any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request seeks documents relevant, if at all, only to damages, and that damages discovery is premature and should await a determination as to liability.

### REQUEST FOR PRODUCTION NO. 17:

Each and every document pertaining to the actual number of sales, including but not limited to the number of downloads of sound recordings of the Eminem Compositions on Apple's iTunes Store.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "pertaining to," "actual number," and "sales." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request seeks documents relevant, if at all, only to damages, and that damages discovery is premature and should await a determination as to liability.

**REQUEST FOR PRODUCTION NO. 18:**

Each and every document that shows payments made to Plaintiffs or Eminem in connection to the distribution or sale of sound recordings of the Eminem Compositions for digital download, streaming, mastertones, and ringtones.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "shows," "in connection to," and "distribution or sale." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings alleged by Plaintiffs to embody the Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.

**REQUEST FOR PRODUCTION NO. 19:**

All documents referencing or showing any of your costs related to the downloading or streaming of sound recordings of the Eminem Compositions.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "referencing," "showing," "payments," and "your costs related to the downloading or streaming of sound recordings of the Eminem Compositions." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation. Aftermath further objects that this Request seeks documents relevant, if at all, only to damages, and that damages discovery is premature and should await a determination as to liability.

**REQUEST FOR PRODUCTION NO. 20:**

Each and every document that in any way relates to, refers to, or pertains to any expert witness(es) that you have communicated with relating to the claims brought in this lawsuit, including, but not limited to, any and all correspondence, billing records, documents received from such expert witness, and treatises or other documents referred upon by such expert witness

in forming his or her opinion, as well as a curriculum vitae for any expert witness hired or retained by you.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "relates to," "pertains to," "expert witness," "communicated with," and "relating to." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath also objects to this Request on the ground that it is premature, given that expert discovery has not commenced, and that it seeks the discovery of information beyond that authorized concerning disclosed experts under Rule 26 of the Federal Rules of Civil Procedure. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

## REQUEST FOR PRODUCTION NO. 21:

To the extent not already produced, all documents reviewed or relied upon in this litigation by any expert witness hired or retained by you.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "reviewed," "relied upon," and "expert witness." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath also objects to this Request on the ground that it is premature, given that expert discovery has not commenced, and that it seeks the discovery of

information beyond that authorized concerning disclosed experts under Rule 26 of the Federal Rules of Civil Procedure. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material.

## REQUEST FOR PRODUCTION NO. 22:

Each and every mechanical license for the reproduction of the Eminem Compositions pursuant to the requirements of the U.S. Copyright Act.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "mechanical license" and "pursuant to the requirements of the U.S. Copyright Act." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**REQUEST FOR PRODUCTION NO. 23:**

  Copies of any and all requests from Apple and UMG to the Plaintiffs to issue or execute licenses for the mechanical reproduction of the Eminem Compositions, or any of them.

  RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "requests," "issue or execute," and "licenses for the mechanical reproduction." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that this Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**REQUEST FOR PRODUCTION NO. 24:**

  Copies of any and all licenses between Plaintiffs and Apple or UMG executed by Plaintiffs for the mechanical reproduction of the Eminem Compositions, or any of them.

  RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms

"licenses," executed by," and "mechanical reproduction." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent the requested documents are already in Plaintiffs' possession, custody, or control. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that, to the extent this Request seeks any documents other than those relating directly to the sale through Apple's iTunes Store of downloads of sound recordings alleged by Plaintiffs to embody the Eminem Compositions, the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Aftermath refers Plaintiffs to the documents referenced in Aftermath's response to Request for Production No. 3.


**REQUEST FOR PRODUCTION NO. 25:**

Copies of any and all "Notices of Intention to Obtain a Compulsory License for Making and Distributing Phonorecords" under 17 U.S.C. § 115 received by you.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "Notices of Intention to Obtain a Compulsory License for Making and Distributing

Phonorecords' under 17 U.S.C. § 115" and "received." Aftermath further objects to this Request as overly broad and unduly burdensome, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects to this Request on the ground that the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

## REQUEST FOR PRODUCTION NO. 26:

Copies of any and all mechanical licenses between Apple and any third party.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "mechanical licenses" and "third party." Aftermath further objects to this Request as overly broad and unduly burdensome. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects to this Request on the ground that the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation. Aftermath further objects that this Request expressly seeks documents that, if they exist at all,

would be in the possession, custody or control of someone other than Aftermath, and that this Request is not properly directed to Aftermath.

## REQUEST FOR PRODUCTION NO. 27:

Beginning one year prior to the date of the first Eminem agreement and continuing every year thereafter (at least one for each year), the standard language from the basic form recording agreement predominantly being used among UMG's labels with respect to the so-called Controlled Compositions provisions, the definitions of the terms "record" and "new medium."

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "standard language," "basic form recording agreement," and "predominantly being used." Aftermath further objects to this Request as overly broad, unduly burdensome, and incomprehensible. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects to this Request on the ground that the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all communications between Apple and the Recording Industry Association of America (RIAA) concerning whether the labels would indemnify Apple on this issue.

RESPONSE: Aftermath incorporates its General Objections. Aftermath specifically objects to this Request as vague and ambiguous, particularly in its failure to define the terms "concerning," "the labels," "indemnify," and "this issue." Aftermath further objects to this Request as overly broad, unduly burdensome, and incomprehensible. Aftermath further objects to this Request to the extent it calls for information protected by the attorney-client privilege and work product doctrine, including without limitation any joint privilege relating to the same. Aftermath further objects to this Request to the extent it seeks documents that contain any confidential, proprietary, trade secret information, and/or competitively sensitive material. Aftermath further objects that the Request does not seek, and it is not reasonably calculated to lead to the discovery of, any information that is relevant to the claims or defenses in this litigation. Aftermath further objects that this Request expressly seeks documents that, if they exist at all, would be in the possession, custody or control of someone other than Aftermath, and that this Request is not properly directed to Aftermath.

DATED: March 20, 2008

Kelly M. Klaus
Munger, Tolles & Olson LLP

Daniel D. Quick (P48109)
Dickinson Wright PLLC
Attorneys for Defendants

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I, the undersigned, declare: that I am employed in the aforesaid County; I am over the age of 18 and not a party to the within action; my business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California 90071-1560.

On March 20, 2008, I served upon the interested party(ies) in this action the foregoing document(s) described as:

**AFTERMATH RECORDS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☒ By placing ☒ the original ☐ a true copy thereof enclosed in sealed envelope(s) addressed as stated on the attached service list.

☒ **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be deposited with postage thereon fully prepaid in the United States mail at a facility regularly maintained by the United States Postal Service at Los Angeles, California. I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation dated or postage meter date is more than one day after dated of deposit for mailing, pursuant to this affidavit.

☐ **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed for Federal Express collection and delivery at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for Federal Express mailing. Under that practice it would be deposited with the Federal Express office on that same day with instructions for overnight delivery, fully prepaid, at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the Federal Express delivery date is more than one day after dated of deposit with the local Federal Express office, pursuant to this affidavit.

☐ **BY FACSIMILE (AS INDICATED ON ATTACHED SERVICE LIST)** By sending a copy of said document by facsimile machine for instantaneous transmittal via telephone line.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Howard Hertz                          *Via Mail*
Jay G. Yasso
Hertz Schram PC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI  48302
(248) 335-5000
hhertz@hertzschram.com
jyasso@hertzschram.com
*Attorneys for Plaintiffs*

Richard S. Busch                      *Via Mail*
King & Ballow
1100 Union Street Plaza
315 Union Street
Nashville, TN  37201
(615) 259-3456
rbusch@kingballow.com
*Attorneys for Plaintiffs*


Executed on March 20, 2008, at Los Angeles, California.

                                   _Marie S Young_
                                   Marie S. Young