# Exhibit 4

# Excerpts from Sidney Shemel & M. William Krasilovksy, *This Business of Music* (5th ed. 1985)

Revised and Enlarged
Fifth Edition

# THIS BUSINESS OF MUSIC

by Sidney Shemel and
M. William Krasilovsky

Billboard Publications, Inc.
New York

tablished artist will be granted the right to approve a proposed joint recording with another royalty artist.

**Publishing**
Many record companies are affiliated with music publishing firms, and some record companies and publishing firms are under common management. Often artists are also successful composers. As a part of negotiations with an artist, a record company may require the artist to assign to its affiliated publishing company all compositions owned or controlled by the artist and recorded during the term of the agreement. A publishing interest in a composition reduces the risk of the recording company in investing in and exploiting a record of the composition.

Record companies may claim that activities financed by the record company accrue to the benefit of publishers who may be riding on the coat-tails of the record manufacturer. A record company may contend that, in fact, except for a publisher's distribution of printed copies and his attempting to secure multiple records of the same composition, it is difficult to differentiate between what a record company and a publishing firm will do to exploit a musical composition. A record firm sends promotional copies of records to radio and television stations and has promotional men call upon disc jockeys to encourage the playing of records. Companies may buy radio time to plug their records. They advertise in trade publications. All of these activities will result in publishing income, since there will be broadcasting performances for which the performing-right organization will pay royalties, sales of records for which the record company will remit mechanical-license fees, and sales of sheet music if the composition becomes popular.

Under the circumstances, the record company can argue strongly for a publishing interest in compositions controlled by the artist and recorded under the recording agreement. The artist may believe that the additional interest of the record company, through its affiliated publishing firm, is worthwhile because it may cause greater exploitation efforts on the part of the record company. On the other hand, the artist may conclude that the record company does not need the additional incentive and that it is not entitled to any publishing income. Or the artist may be willing to compromise by granting an interest in publishing income only for the life of the particular record issued by the record firm.

If the artist has his own publishing firm, he is particularly likely to oppose an assignment of an interest in the copyright or publishing income. An argument used by some artists in contesting a publishing clause may be that the record company's publishing enterprise is a mere shell and does not offer usual publishing services other than the activities of the record company. According to them, a recognized publisher has the staff and budget to supplement that of the record company and exploitation will be effected. However, in employing an established

publisher, the artist may be defeating himself if the publisher obtains a so-called cover version of the same composition by a competing recording artist; this is less probable where the publisher is an affiliate of the artist's record company.

The record company may settle for a provision whereby the record company pays at a bargain rate for a mechanical license for compositions controlled by the artist. Thus the fee for United States sales may be 75 percent instead of 100 percent of the compulsory mechanical-license rate, under the 1976 Copyright Act, per record side. While 100 percent of such rate in the latter half of 1984 would be typically 4.5 cents per composition, the bargain rate would amount to only 3.375 cents. The matter of a reduced mechanical-license rate is discussed further under "Controlled Compositions" below.

### Controlled Compositions

A common paragraph in record contracts relates to "controlled compositions." This covers the terms of the mechanical license issued to a record company by a copyright proprietor or its agent for the right to record and distribute any composition written or owned, in whole or in part, by the artist. The paragraph will set forth the royalty rate negotiated by the company and the artist, which rate is customarily three-quarters of the compulsory license rate under the 1976 Copyright Act.

Despite the fact that albums may contain more than ten compositions, record companies have generally decided that they would pay a maximum overall rate per album equal to that on ten compositions. This is in order to limit their increasing costs for mechanical licenses, the rates having risen from 2¾ cents per composition in 1978 to 4½ cents in the last half of 1984. Further, the contracts with the artists may provide that to the extent mechanical license fees in the aggregate on controlled and *noncontrolled* compositions exceed the maximum overall compulsory license rate for ten compositions, the excess is deductible from moneys otherwise payable to the recording artist for royalties or advances. In effect, this places a responsibility on the artist to negotiate favorable mechanical-license rates with outside publishers for compositions that the artist proposes to record.

Another point for negotiation of the controlled composition paragraph relates to "free goods." In essence, these are records considered to be given free of charge by a record company to its retail distributor in order to encourage the retailer to buy the records of a certain artist. While the record company does not pay artist royalties usually on such records, the retailers actually sell these "free" records at retail. The controlled composition paragraph may provide that no mechanical-license fees for controlled compositions are payable for "free goods" despite their sale at retail. The artist may contend that such fees should be paid because free goods are merely a form of discount that the record