# Exhibit 9

# Declaration of Rand Hoffman

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

_____/

## DECLARATION OF RAND HOFFMAN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9238
kelly.klaus@mto.com

Attorneys for Defendants

# DECLARATION OF RAND HOFFMAN

I, Rand Hoffman, declare as follows:

1. I have worked as a lawyer in the music business since 1981. Starting in January 1999, I have been employed by the Universal Music Group as the head of Business and Legal Affairs for Interscope Geffen A&M, a division of UMG Recordings, Inc. ("UMG"). As part of my job duties and responsibilities, I supervise a staff of attorneys who negotiate and draft artist, joint venture, and profit sharing agreements by which UMG and its affiliates acquire the rights to exploit sound recordings and musical compositions. Except as otherwise indicated, I have personal knowledge of the facts set forth herein. If called as a witness in this action, I could and would testify competently to the contents of this declaration.

2. Defendant Aftermath Records ("Aftermath") is a joint venture whose partners are UMG, Interscope Records (a partnership owned entirely by the companies within the Universal Music Group – including UMG), and ARY, Inc. ("ARY"). ARY is owned by Andre Young (p/k/a Dr. Dre), a prominent recording artist and producer. UMG is responsible for, among other things, the distribution and exploitation of the sound recordings created by the artists signed to Aftermath, including the immensely popular artist Marshall B. Mathers III (p/k/a Eminem).

3. Eminem initially signed a recording agreement with F.B.T. Productions ("F.B.T."), who then furnished his services to Aftermath pursuant to a March 9, 1998 agreement (the "1998 Agreement"). **(A true and correct copy of the 1998 Agreement is attached hereto as Exhibit A.)** Furnishing agreements are common in the music business. When there is a furnishing company (such as F.B.T.), the artist will also typically enter into an "inducement agreement" directly with the record company whereby the artist agrees to be bound by, and to perform all of, the obligations under the furnishing agreement to the extent those obligations apply to the artist. Eminem did just this by entering into a March 9, 1998 inducement agreement

1

directly with Aftermath (the "1998 Inducement Agreement"). **(A true and correct copy of the 1998 Inducement Agreement is attached hereto as Exhibit B.)**

4. Subsequently, pursuant to a September 27, 2000 agreement, F.B.T. assigned its rights and obligations under the 1998 Agreement to Eminem, and Aftermath agreed to assume F.B.T.'s obligations to Eminem (the "2000 Novation Agreement"). **(A true and correct copy of the 2000 Novation Agreement is attached hereto as Exhibit C.)** The 2000 Novation Agreement provided that Eminem and F.B.T. would each be paid a portion of the contractual royalties on a going-forward basis. Thereafter, pursuant to a July 2, 2003 agreement (the "2003 Agreement"), Aftermath, Eminem, and F.B.T. entered into a new recording agreement. **(A true and correct copy of the 2003 Agreement is attached hereto as Exhibit D).**

5. In their simplest terms, all of the agreements contemplated that Eminem would write musical compositions, make recordings embodying those musical compositions, and grant Aftermath the worldwide right to exploit those compositions and recordings in exchange for royalties. More specifically, the agreements provided:

- That Aftermath would have the "exclusive right to exploit all" master recordings created under the agreements "in any and all forms of media now known and hereinafter developed." (1998 and 2003 Agreements ¶ 8.) This would include all forms of media used to exploit master recordings, such as compact discs and digital downloads.

- That, pursuant to the "Controlled Composition" clauses, any musical compositions "written or controlled, directly or indirectly, in whole or in part" by Eminem, a producer, or anyone affiliated with Eminem or a producer "will be licensed to Aftermath and its distributors/licensees." (1998 Agreement ¶ 6(a); 2003 Agreement ¶ 6). Controlled Composition clauses are quite common in recording agreements. In the case of Eminem, the Controlled Composition

2

clauses ensured that when Aftermath distributed a recording by Eminem, it also had the right to distribute compositions written by Eminem embodied in those recordings.

- That the Eminem recordings, along with the compositions embodied in them, would be distributed through the sales of "records" (1998 Agreement ¶ 4(a); 2003 Agreement ¶ 5(a)) and through licenses of the masters "for any other uses." (1998 Agreement ¶ 4(c)(v); 2003 Agreement ¶ 5(c)(v)). "Records" is expressly defined to include "all forms of reproductions." (1998 and 2003 Agreements ¶ 16(e)).

6. Aftermath has in fact exploited the Eminem recordings, along with the compositions embodied in them, in precisely the manner contemplated by the agreements – for example, by manufacturing and selling compact discs through brick and mortar retailers and by selling copies of the recordings in digital format through online services such as Apple's iTunes store. Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (which are music publishing companies) have had no role in the actual distribution of the Eminem recordings.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 5 day May, 2008 at Santa Monica, California.

*Rand Hoffman*
Rand Hoffman

# CERTIFICATE OF SERVICE

I hereby certify that on _____, 2008, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the all counsel.

                                                 s/Daniel D. Quick
                                                 Daniel D. Quick (P48109)
                                                 Dickinson Wright PLLC
                                                 38525 Woodward Avenue
                                                 Suite 2000
                                                 Bloomfield Hills, MI 48304
                                                 (248) 433-7200
                                                 dquick@dickinsonwright.com

4

4958734.1

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

**INDEX OF EXHIBITS TO DECLARATION OF RAND HOFFMAN**

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Kelly M. Klaus
Munger, Tolles & Olson LLP
355 South Grand Avenue
Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9238
kelly.klaus@mto.com

Attorneys for Defendants

# INDEX OF EXHIBITS

Exhibit A:      Recording Agreement dated March 9, 1998 (Filed Under Seal)

Exhibit B:      Inducement Agreement dated March 9, 1998 (Filed Under Seal)

Exhibit A:      Novation Agreement dated September 27, 2000 (Filed Under Seal)

Exhibit D:      Recording Agreement dated July 2, 2003 (Filed Under Seal)

**Exhibit A**

**Recording Agreement dated March 9, 1998 (Filed Under Seal)**

# Exhibit B

# Inducement Agreement dated March 9, 1998 (Filed Under Seal)

# Exhibit C

# Novation Agreement dated September 27, 2000 (Filed Under Seal)

# Exhibit D

# Recording Agreement dated July 2, 2003 (Filed Under Seal)