1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF MICHIGAN
2                SOUTHERN DIVISION

3   EIGHT MILE STYLE, L.L.C., et al,

4                    Plaintiffs,

5        -v-                    Case No. 07-CV-13164

6   APPLY COMPUTER, INC., et al,

7   _____ Defendants./

8      **PLAINTIFFS' MOTION TO COMPEL DISCOVERY**
       **BEFORE THE HONORABLE DONALD A. SCHEER**
9         United States Magistrate Judge
              648 U.S. Courthouse
10            231 West Lafayette
           Detroit, Michigan 48226
11

12            **(Thursday, June 12, 2008)**

13  APPEARANCES:         HOWARD HERTZ, ESQUIRE
                         RICHARD S. BUSCH, ESQUIRE
                         Appearing on behalf of the
14                       Plaintiffs.

15                       DANIEL D. QUICK, ESQUIRE
                         KELLY M. KLAUS, ESQUIRE
16                       Appearing on behalf of the
                         Defendants.
17
    TRANSCRIBED BY:      MARIE METCALF, CSMR, CVR, CM
18                       Official Court Reporter
                         267 U.S. Courthouse
19                       231 W. Lafayette
                         Detroit, Michigan 48226
20                       (313)962-3832

21

22

23

24

25

*EIGHT MILE STYLE v. APPLE COMPUTER*

1                           **TABLE OF CONTENTS**

2

3        Proceedings – Thursday, June 12, 2008

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*EIGHT MILE STYLE v. APPLE COMPUTER*

1                        Detroit, Michigan

2                        Thursday, June 12, 2008

3                        At about 3:04 p.m.

4                        *      *      *

5            DEPUTY COURT CLERK:  Please rise.

6    United States District Court for the Eastern District

7    of Michigan is now in session, the Honorable Donald A.

8    Scheer, United States Magistrate Judge, presiding.

9                 The Court calls case number 07-13164,

10   Eight Mile Style vs. Apple Computer.

11                THE COURT:  Good afternoon.

12                MR. KLAUS:  Good afternoon, Your Honor.

13                MR. BUSCH:  Good afternoon, Your Honor.

14                THE COURT:  Will counsel please state

15   appearances for the record?

16                MR. BUSCH:  Richard Busch, on behalf of

17   Eight Mile Style.

18                MR. HERTZ:  Howard Hertz, on behalf of

19   Eight Mile Style.

20                MR. KLAUS:  Kelly Klaus, on behalf of

21   the defendants.

22                MR. QUICK:  Dan Quick for the

23   defendants.

24                THE COURT:  Thank you.  Please be

25   seated.

*EIGHT MILE STYLE v. APPLE COMPUTER*

1          We are here pursuant to an order of

2     reference from Judge Taylor for consideration of

3     Plaintiff's Motion to Compel Discovery.  I've looked at

4     the motion, response and the list of unresolved issues.

5          Has anything additional been resolved

6     since the delay of the hearing?

7          MR. BUSCH:  Yes, Your Honor, we have

8     resolved a few of the issues and we have not resolved

9     several of the issues.  And if it would be all right

10    with Your Honor, I can just go through and -- on behalf

11    of the plaintiffs and go through our points and take it

12    one by one.

13          THE COURT:  Any objection, Mr. Klaus?

14          MR. KLAUS:  No, Your Honor.  I think

15    that -- I believe that just as a supplement to what Mr.

16    Busch has said, I think we have remaining between us

17    three live issues that were identified and ensconced in

18    the statement and then we've also got an issue that

19    we've been discussing with respect to one of the

20    130(b)(6) notices that was mentioned at the end.  And

21    we may want to take that up separately.

22          But I think there are -- there are two

23    deponents and one interrogatory that I think we've got by

24    my count.

25          MR. BUSCH:  I'm not certain that's

4

*EIGHT MILE STYLE v. APPLE COMPUTER*

1     right.  I'd just like to go through it one by one and
2     make sure --
3                    THE COURT:  You may proceed.
4                    MR. BUSCH:  Thank you, Your Honor.  And
5     I've got the list of unresolved issues documented in
6     front of me and I'll just take it point by point with
7     respect to that.
8                    THE COURT:  Thank you.
9                    MR. BUSCH:  Your Honor, I think it's
10    important -- just a very bit of background, just so
11    that Your Honor understands the nature of the case a
12    little bit and the issues that we are disputing.
13                   Essentially, Your Honor, this case
14    involves the contention of Eight Mile Style that Apple
15    has not obtained what is called a mechanical license,
16    which allowed its compositions to be sold on I-Tunes from
17    Eight Mile Style.
18                   Aftermath, which is part of Universal,
19    intervened in the case on the grounds that a sister
20    company of Eight Mile Style called FBT Productions, which
21    has rights in what's called the master recording.  Master
22    recording is the sound, the tape, the recording.  The
23    composition is the underlying musical work.  That they
24    have a contract with FBT.
25                   And in that contract there's what's called

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    a controlled composition clause, and that under the

2    controlled composition clause, it had the right to make

3    the master and the composition available to Apple and

4    Apple did not have to get a direct license from Eight

5    Mile Style.

6              It is Eight Mile Style's position that

7    that controlled composition clause does not apply to

8    Apple or to licenses, does not give Universal the right

9    to license the composition to Apple.  And it is Eight

10   Mile Style's position that there is no separate license

11   that Universal or Aftermath could have used to pass

12   through the right to use the composition to Apple.

13   Rather, Apple had to get a separate license directly from

14   Eight Mile Style.

15             So that's the dispute.  On the one hand,

16   Universal says, "We have the control of what's called the

17   controlled composition clause and we're allowed to make

18   use of that to make the songs available to Apple without

19   Apple having to come to you, Eight Mile Style."

20             And it's our position that that controlled

21   composition clause does not apply and that Apple had to

22   get a license directly from us.

23             So that's the dispute in the case and that

24   gives rise to many of the discovery issues that we'll be

25   talking about here today.

6

*EIGHT MILE STYLE v. APPLE COMPUTER*

1              Item number six, Interrogatory Number Six,

2    asks Apple to disclose what the basis is for their belief

3    that they have the right to basically make the

4    composition available without obtaining a license from

5    Eight Mile Style.

6              And it is our position that Apple should

7    so state.  The defendants have objected to answering that

8    interrogatory, but Apple should be required to say

9    whether they have a license from Universal or Aftermath.

10   They can either say, "Look, we have a license for the

11   publishing from Aftermath or from Universal, and where

12   they sub-licensed it to us, Apple."

13             Or they can say, "We're just a reseller.

14   We're a seller of music and we don't need a license.  We

15   got the right to reproduce the master recording, and as a

16   result of that, we don't need a license because we're

17   just a reseller of goods."

18             Because one of their positions in another

19   case is that they're just a reseller of the music and

20   they're not a licensee.  So we want to know, is your

21   basis for making these compositions available, is it

22   based upon your status as a licensee or are you saying

23   you don't need a license, one or the other.

24             The defendants are refusing to answer that

25   question or saying they answered it in connection with

*EIGHT MILE STYLE v. APPLE COMPUTER*

1       another interrogatory, which we believe evades the point.

2       And we just want a direct answer to that question.  And

3       that item still remains open between the parties.

4                    THE COURT:  Thank you.  Mr. Klaus?

5                    MR. KLAUS:  Thank you, Your Honor.  Just

6       briefly, on the background of the case, in terms of

7       what the dispute is between the parties, we think it's

8       important to note that there's -- the defendants

9       actually have a -- filed a Summary Judgment Motion that

10      is before Judge Taylor.  There is an opposition brief

11      that is due from plaintiffs in a couple of weeks.

12                   But the argument that is made by the

13      defendant is not simply that there was a controlled

14      composition clause.  In fact, the controlled composition

15      clause was not just by this company called FBT, which is

16      owned by exactly the same -- the same individuals who own

17      the plaintiff Eight Mile Style in this case.

18                   But was a controlled composition clause

19      executed by the artist himself, who was -- who has

20      admitted by the plaintiffs to be an author of the

21      compositions and who, therefore, have the right to do it,

22      and that is Marshall Mathers or Eminem.  So there is an

23      express controlled composition clause.  There have been

24      individual agreements that the plaintiffs in the case

25      have executed with respect to these compositions, which

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    it's our position, even if the first express

2    authorization didn't grant the right, these would have.

3              And the third is, that there's also a

4    doctrine in copyright law called implied license, that

5    says that, where, as here, you have a party that has

6    stood by and has accepted royalty payments for years.

7    The songs that are at issue here have been disseminated

8    over the I-Tunes service, which is very well known, for

9    years, going back to 2003, that if a party acts in

10   accordance with the belief that there is in fact a

11   license and accepts money for it, that there is a license

12   implied as a matter of law.  So there are multiple

13   grounds on which we've moved for summary judgment and

14   that is pending.

15             With respect to Interrogatory Number Six,

16   the first thing that I would say in response to Mr. Busch

17   is, he said that what his question was was, "Why is it

18   that you, Apple, believe you don't need to have a license

19   from us?"

20             That is not the interrogatory that Mr.

21   Busch actually drafted.  The interrogatory that he

22   actually drafted and served, and that we objected to, had

23   to do with the basis for your belief that Apple has the

24   right to synchronize with images the Eminem compositions.

25   Synchronizing with images is a particular right under the

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    copyright act and that is not at issue in the complaint.

2              Transmit, which is not a defined term, but

3    appears to be the same thing as publically perform or

4    broadcast, also is not at issue in the complaint, because

5    that's not what Apple does, or we produce lyrics of the

6    Eminem compositions.  It's undisputed that I-Tunes

7    doesn't reproduce lyrics, and so that particular right

8    isn't at issue.

9              And what we had said to Mr. Busch during

10   the meet and confer was, "That's not the interrogatory

11   that you drafted.  The interrogatory that you drafted

12   doesn't have anything to do with the allegations that are

13   in the complaint."

14             And if he'd wanted to draft a new

15   interrogatory, it was his burden to go and draft -- to go

16   and draft one that was more clear.

17             The other thing is, he did say that we've

18   pointed to -- in terms of what the answer is here, there

19   is another interrogatory, it was number four in our

20   response, which deal with -- which are set forth at tab A

21   of the motion, which gets at exactly the thing that I

22   think he says he's trying to get to with respect to this

23   interrogatory,

24                        "Explain the basis for your belief

25                        that Universal had the authority to

                                                              10

*EIGHT MILE STYLE v. APPLE COMPUTER*

1                                 license, authorize or otherwise grant

2                                 Apple the right to reproduce,

3                                 distribute and sell downloads of the

4                                 sound recordings."

5     And what's stated is, by Apple, is that "Our agreements

6     provide that we are a reseller.  Our agreements provide

7     that we are a reseller and we rely on the label, in this

8     case, Universal, to be responsible for obtaining what are

9     called the mechanical rights to the composition."

10              There is no great mystery here as to what

11    the nature of the arrangement is or why it is that we

12    contend that Apple has the right to resell the sound

13    recordings with the compositions.

14              MR. BUSCH:  Your Honor, if I may just

15    respond briefly?

16              THE COURT:  You may.

17              MR. BUSCH:  First of all, our

18    Interrogatory Number Six was drafted very broadly to

19    cover every possible item that Apple might be doing,

20    and transmit was a broad way of saying, to make

21    available for digital download.  That's why we have the

22    right to "synchronize images, transmit, publically

23    perform, or reproduce lyrics of the Eminem

24    compositions."  It was drafted broadly to encompass

25    every possible thing that Apple did.

1              In connection with our meet and confer,

2      that is where I told -- because Mr. Klaus had some

3      objections to things that he said were not part of this

4      case.  I pointed to the transmit language and I said,

5      "Look, if you will just answer the question about --

6      explain the basis for Apple's belief that Apple has the

7      right to make these songs available for permanent

8      download, the compositions, I will be satisfied with that

9      and I would not require answers on the other items that

10     you say are not part of this case."

11             So I've agreed to do that.  I've agreed to

12     take that.  And Aftermath's answer is not Apple's answer.

13     And I would like Apple to answer the question

14     specifically on what basis.  If they want to say that

15     they are simply a reseller and they don't need a license,

16     let them say that.  If they believe they have a

17     sublicense from Universal or Aftermath, they can say that

18     too.  It's a very simple, straightforward interrogatory

19     and we'd ask that it be answered.

20             THE COURT:  So you have employed in your

21     rebuttal the formulation, "make available for permanent

22     download."  Is that construction included in the

23     language employed in Interrogatory Number Four, as Mr.

24     Klaus suggests?

25             MR. BUSCH:  Interrogatory Number Four to

12

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    Aftermath -- Interrogatory Number Four to Aftermath
2    says,
3                      "Please explain the basis for your
4                      believe that Universal,"
5    which is defined as part of Aftermath,
6                      "has the authority to license,
7                      authorize or otherwise grant to Apple
8                      the right to reproduce, distribute
9                      and sell downloads of sound
10                     recordings."
11   So it relates to sound recordings as opposed to
12   compositions.  This gets to the compositions that are at
13   issue.
14                    So again, we would be more than satisfied
15   with an answer to the question, "On what basis Apple
16   claims to have the right to make available for download
17   or sell downloads that contain the Eminem compositions?"
18                    MR. KLAUS:  The only thing that I would
19   point out is that Interrogatory Number Four, Mr. Busch
20   suggested that this was limited to the authorization
21   for sound recordings.  What it actually says is, "Sound
22   recordings of the Eminem composition."  It's the
23   composition -- there are two separate -- and the reason
24   for the confusion, Your Honor, is -- in case either one
25   of us is not clear, every song, every popular song has

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    two separate copyrights bound up within it.  One in the

2    actual recording, one in the composition.  And this

3    case deals with the composition rights.

4                    THE COURT:  But Interrogatory Four, as I

5    read it, deals with sound recordings.

6                    MR. KLAUS:  It says it's sound

7    recordings of the compositions, which is --

8                    THE COURT:  Which is sound recordings as

9    far as I'm concerned.  So the question that the

10   plaintiff now wants answered is not asked.

11                   MR. BUSCH:  Oh, it is, in Interrogatory

12   Number Six.  That's the one that we're talking about,

13   is Interrogatory Number Six.  They pointed to

14   Interrogatory Number Four and are saying, "Well, we

15   answered it through Interrogatory Number Four."

16                   THE COURT:  Which word or phrase in

17   Interrogatory Number Six is the functional equivalent

18   of your formulation, quote, make available for

19   permanent download?

20                   MR. BUSCH:  "Transmit," Your Honor.

21                   THE COURT:  And what is the basis for

22   your equivalence?

23                   MR. BUSCH:  Because they are -- what is

24   happening is that Apple is transmitting to the public

25   the compositions for purposes of permanent downloads.

                                                          14

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    That's the transmission that is occurring.  And that's

2    why we drafted it as broadly as possible, to encompass

3    every potential act that Apple did, inclusive of the

4    transmission.

5                THE COURT:  It's going to be a long

6    afternoon.

7                MR. KLAUS:  The only thing I would say

8    on the transmission issue, we've been meeting and

9    conferring on the -- we first met and conferred on

10   these several months ago, Your Honor.  It was the first

11   time that I -- the first time that I heard Mr. Busch

12   say that "transmit" in the sentence was the same as

13   "make available for download," was this afternoon, a

14   few hours before this hearing.  It was never said to me

15   during the meet and confer process, that "transmit"

16   covered "make available for download."  It just wasn't.

17               MR. BUSCH:  Your Honor, we did say, and

18   Mr. Hertz was on the phone call with us, when we first

19   had a meet and confer, and we absolutely did say that.

20               MR. KLAUS:  And I would just say, Your

21   Honor, in response, that the best -- the indication

22   that it wasn't is if you look through the Motion to

23   Compel paper and the -- and even the statement of

24   unresolved issues, that argument isn't made anywhere.

25               THE COURT:  I'm going to grant the

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    motion and direct that an answer be provided,

2    responding to Interrogatory Number Six as it relates to

3    the right to make available for permanent download of

4    the composition.

5            MR. BUSCH:  Thank you, Your Honor.

6            We have resolved point number 16, and as

7    to Interrogatory Number 18, Apple has agreed to provide

8    information to us for purposes of a deposition that we

9    will be taking of Mr. Eddie Q (sic).  So as to Apple, it

10   has been resolved.

11           As to Aftermath, we have -- in our meet

12   and confer process, we have narrowed the issue -- we have

13   narrowed the issue to -- we have narrowed the issue in

14   the meet and confer process to obtaining from Aftermath

15   an answer as to whether they have a license from some

16   other third party, a co-publisher of Eight Mile Style,

17   that would allow them to make the compositions available

18   to Apple through that agreement.  They have agreed to

19   provide us with that information.

20           THE COURT:  Is that correct?

21           MR. KLAUS:  With respect to Apple, there

22   is a separate agreement for purposes of resolving this

23   that Mr. Busch and I have laid forth.  With respect to

24   this Interrogatory Number 18 and Request For Production

25   Number Six, which we'll get to momentarily, yes.  With

16

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    respect to Aftermath it said that we have produced one

2    agreement with a -- with the clause that I referred to

3    earlier with respect to Eminem.  If there are any other

4    co-authors that we're going to rely on, we're going to

5    provide that information and produce the agreements to

6    Mr. Busch.

7                    THE COURT:  That satisfies the

8    plaintiff?

9                    MR. BUSCH:  Co-authors or book

10   publishers, just to make it clear.

11                   THE COURT:  Thank you.  Eighteen is

12   resolved.

13                   MR. BUSCH:  Interrogatory Number 19, I

14   believe Mr. Klaus said his client would provide a

15   supplemental response.

16                   MR. KLAUS:  Correct.  This is directed

17   solely to Apple, as Number 19.  And what I said was

18   that Apple would respond supplemental responses.

19                   THE COURT:  Nineteen is resolved.

20                   MR. BUSCH:  We're up to the document

21   requests now, Your Honor.  And as to the Document

22   Request, Number Six, I believe we have the same

23   agreement as to Document Request Number Six, as we did

24   to Interrogatory Number 18.

25                   MR. KLAUS:  That's correct.

*EIGHT MILE STYLE v. APPLE COMPUTER*

1          THE COURT:  Six is resolved.

2          MR. BUSCH:  Number seven has been

3    resolved?

4          MR. KLAUS:  Yes, Number Seven has been

5    resolved.  I believe plaintiffs have said they're not

6    -- they're not continuing with Number Seven.

7          THE COURT:  Seven is resolved.

8          MR. BUSCH:  Number 13 has been resolved

9    as well?

10          MR. KLAUS:  Yes.  Number 13 was resolved

11    at the same time as Number Seven.

12          THE COURT:  Thirteen is resolved.

13          MR. BUSCH:  That brings us to discovery

14    related to damages, Your Honor.  The defendants -- as

15    to Number 26, I'm sorry, Apple has indicated they have

16    no such documents, and with that representation, it has

17    been resolved, so we would just ask that they make that

18    representation on the record.

19          MR. KLAUS:  I think actually with

20    respect to -- with respect to Number 26, this I think

21    is the -- this was the flip side of our resolution with

22    respect to Interrogatory Number 18, as to Apple.  There

23    is -- I think the response that we have provided, which

24    is that Apple doesn't have any direct agreements for

25    the compositions, remains our answer.  There is an

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    outstanding issue with respect to Apple having

2    agreements with music companies that are owned by some

3    recording artists that will be covered at a

4    30(b)(6)deposition that we had discussed, because I

5    think that's the resolution with respect to both that

6    Interrogatory and Request for Production 26.

7                    MR. BUSCH:  Just stated my way to make

8    sure that Mr. Klaus and I are speaking the same

9    language, what Apple has said to us is they have no

10   specific mechanical licenses with third parties.

11   However, they may have -- or they do have agreements

12   with artists, and to the extent that would encompass a

13   mechanical license, they will provide us with samples

14   of those and we will be able to question a witness,

15   simply Mr. Q about it at his deposition.  And with that

16   representation, it's resolved.

17                    MR. KLAUS:  Resolved.

18                    THE COURT:  Resolved, Number 26.

19                    That brings us up to discovery related to

20   damages.

21                    MR. BUSCH:  And the defendants had a

22   motion to bifurcate that we have opposed.  And we have

23   agreed to short-circuit this to hold off on the

24   disputes we have on this pending the resolution of the

25   motion to bifurcate, and we have agreed that once the

*EIGHT MILE STYLE v. APPLE COMPUTER*

1       motion to bifurcate is resolved, if the Court approves

2       this structure, that we would be able to meet and

3       confer on these discovery requests relating to damages

4       and either reach a resolution or come to the Court.

5       And whatever the Court decides as far as the

6       breadth of the discovery, we would be allowed to take

7       depositions or discovery related to damages at the

8       appropriate time following the bifurcation decision.

9                   THE COURT:  Sounds like a deal.

10                  MR. KLAUS:  That's what we have decided

11      to do.

12                  THE COURT:  That takes us up to

13      deposition disputes.

14                  MR. BUSCH:  Yes, sir.  And the first

15      deposition dispute we have relates to -- it's the same

16      thing, it's Leo Ferrante and Tim Hernandez.  The issues

17      are relatively similar here, and that is this.  Mr.

18      Ferrante -- let's do a -- let's start with -- let's

19      start with the deposition of Eddie Q actually.  As to

20      the deposition of Eddie Q, that matter has been

21      resolved on the following terms.  They will make Eddie

22      Q available for a deposition on June the 20th.  The

23      deposition will take place at Apple.  It will last the

24      afternoon, one to five, for four hours of deposition

25      time.  Mr. Q will answer the questions relating to

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    these other agreements that we have -- among other
2    topics, the item on the agreements with the artists.
3              We will agree that as far as the financial
4    issues relating to Apple and a witness that relates to
5    the financial issues, that we will also put that off
6    pending the motion for bifurcation resolution and
7    hopefully be able to resolve the -- a deposition of Apple
8    on financial matters at the same time that we meet and
9    confer on a witness for Aftermath on financial matters.
10   And we will not require any other witness from Apple
11   besides Mr. Q and the financial person.
12             MR. KLAUS:  And I think that fairly
13   summarizes the agreement that we have.  The one -- the
14   caveat being a financial -- somebody to speak about the
15   financial information at issue, if and when we get to
16   damages discovery.
17             MR. BUSCH:  Yes.
18             THE COURT:  Eddie Q is resolved.
19             MR. BUSCH:  Now, that brings us to Leo
20   Ferrante and Tim Hernandez.  That's last.
21             As far as Mr. Ferrante and Mr. Hernandez
22   are concerned, they were members of Universal's copyright
23   department at relevant times in this process.  They were
24   both identified in discovery, either through
25   correspondence that was produced or through interrogatory

*EIGHT MILE STYLE v. APPLE COMPUTER*

1     responses as people with information or knowledge.

2                    Mr. Ferrante, some of his correspondence

3     was produced.  I believe Mr. Hernandez, his name was

4     identified specifically, although in response to the

5     question -- let me back up one second if I can, Your

6     Honor.

7                    One of the issues in this case is, did

8     Eight Mile Style object to the making available of its

9     compositions on I-Tunes?  Did it advise Universal that it

10    objected and would not sign licenses.  That is a key

11    issue in this case.

12                   In response to an interrogatory that was

13    served on us by Aftermath, which asked us to identify who

14    we made objections to, we answered that interrogatory by

15    saying that we made objections to various people in the

16    copyright department, including, but not limited to --

17    and we identified five or six people.

18                   During discovery in this case, we've taken

19    the deposition of several people from the copyright

20    department of Universal, Pat Blair, who was the head of

21    the department and Chad Gary, who was in the department

22    at the relevant time, as well as Todd Douglas.

23                   Mr. Ferrante and Mr. Hernandez no longer

24    work for Universal.  They are not within the control of

25    Universal.  Mr. Ferrante resides in New York and Mr.

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    Hernandez, I believe resides in Nashville, Tennessee.

2                        During the course -- discovery was

3    original scheduled to end in this case on June the 2nd.

4    Before the deposition of Pat Blair, which was occurring

5    -- which occurred in the last week and-a-half or so, we

6    spoke on the record about depositions that needed to be

7    completed.  And we agreed to extend the taking of

8    discovery through the end of June for purposes of

9    completing depositions.

10                        During the conversation that occurred, I

11   neglected to mention Ferrante and Hernandez.  And we then

12   went back after the deposition and we were talking about

13   it.  And almost within the -- it was like a Thursday or

14   Friday.  The following week, at the beginning of the

15   week, I e-mailed Mr. Pomerantz, Mr. Klaus' partner, and I

16   said, "We forgot to mention Ferrante and Hernandez.  We

17   still need to depose those two people as well."

18                        And Mr. Pomerantz, who is Mr. Klaus'

19   partner, said, "Well, you didn't mention it at the

20   deposition, so my view of it is that it's -- you don't

21   get to do it."

22                        Mr. Ferrante and Mr. Hernandez are

23   essential to the case because they have knowledge about

24   Eight Mile's objections.  Mr. Ferrante does have

25   knowledge about the practice in the copyright department

23

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    at Universal concerning sending out separate digital

2    licenses, and we want the chance to depose them.

3              Mr. Ferrante, I will say -- and this will

4    -- some of this will be illuminated further when we talk

5    about Aftermath's -- the 30(b)(6) Notice of Deposition of

6    Aftermath.  But Mr. Ferrante is in New York and we are

7    actually going to New York next week for the deposition

8    of Mark Levinson, who is Eight Mile's lawyer.  We have

9    subpoenaed Mr. Ferrante for a deposition that morning,

10   the same morning.  Mr. Levinson is going to be deposed at

11   noon.  We subpoenaed Mr. Ferrante for a deposition at

12   9:00 on that morning, the same day, at the same location,

13   so there's no prejudice.  We're going to be there anyways

14   and we would ask that we be allowed to take that

15   deposition.  There will be no extra cost, nothing.

16             And then as far as Mr. Hernandez is

17   concerned, he's in Nashville, and we would ask that we be

18   allowed to take his deposition as well.

19             MR. KLAUS:  A couple of points to make

20   in response.  One is, the plaintiff in this case has

21   already taken ten depositions -- has already reached

22   the limit of the number of depositions that it's

23   entitled to take, exclusive of the 30(b)(6) depositions

24   that we haven't gotten to.  We've said we're not

25   objecting on the ten -- we're not objecting on the ten

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    depo, with respect to the 30(b)(6), but the plaintiff

2    had the opportunity to take ten depositions.

3                As was stated by Mr. Busch, three of those

4    depositions were of people from the Universal copyright

5    department covering exactly the same issues that he says

6    he wants to now depose Mr. Ferrante and Mr. Hernandez on.

7                Ms. Blair, who he mentioned as being the

8    head of the department, there was a suggestion that the

9    testimony of these individuals might be somewhat more

10   favorable because they no longer work for Universal.  Ms.

11   Blair no longer works for Universal.  And Mr. Busch

12   subpoenaed her and was able to take her deposition.

13               There was also a suggestion that the

14   omission of Mr. Ferrante and Mr. Hernandez was somehow

15   inadvertent, because it was not mentioned at the start of

16   Pat Blair's deposition.  And I have excerpts from -- I

17   don't think there's any dispute.  They weren't mentioned

18   as somebody that the plaintiff was reserving its right to

19   depose at the deposition, but there wasn't just a -- it

20   wasn't just a five-minute discussion there, where the

21   parties set forth their understanding of what the limited

22   extension of the discovery cut-off in the case would be.

23               The parties also filed a stipulation

24   regarding the extension of the discovery.  And the

25   stipulation, which has not been entered, but which was --

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    or I'm sorry.  There was nothing -- Judge Taylor has not
2    signed the order yet.  But the stipulation refers to the
3    agreement, and it says,
4                        "It is stipulated and agreed the
5                        discovery deadline shall be extended
6                        to June 27th from June 2nd to allow
7                        the parties to conduct the
8                        depositions identified on the record
9                        at the deposition of Patricia Blair
10                       in this case taken on May 29, 2008."
11   And therefore, if there was -- there was another chance
12   for reflection before the stipulation to say, "Oh, yeah,
13   I forgot."
14                   Our position is there had been more than
15   enough depositions in this case.  There had been
16   depositions of -- the depositions that Mr. Busch wants to
17   take here is to go over ground that he's already gone
18   over with three witnesses from the same department.
19   There's been no proffer as to what these individuals
20   would say which would establish any sort of good cause
21   for relief from Rule 30's ten deposition limit, which
22   there hasn't been a motion filed to, or for relief from
23   the stipulation that Mr. Busch himself entered into.  And
24   so we would -- and so we oppose the request to take these
25   two additional depositions.

26

*EIGHT MILE STYLE v. APPLE COMPUTER*

1          THE COURT:  Rebuttal?

2          MR. BUSCH:  Your Honor, very briefly.

3     On the record we talked about the fact that neither

4     side -- or I made clear that the other side would not

5     be raising the ten deposition limit.  We agreed that

6     the depositions would go forward and that we would

7     extend the deadline.

8          And now, in addition to that, Your Honor,

9     we'll get to this in a second, but on Aftermath, which is

10    the defendant in this case, we served a 30(b)(6) notice a

11    long time ago for various -- very important topics that

12    I'll get to in a moment that relate to some of these

13    issues, and they still have not designated a witness.

14    And now they want additional time to designate witnesses

15    and have agreed or have suggested or we discussed, I

16    should say, postponing our response to summary judgment

17    until mid-July, so that they can figure out who their

18    witnesses are going to be in connection with our 30(b)(6)

19    notice.

20          So I guess my point is that there's --

21    since there is absolutely no prejudice to taking these

22    depositions, and since by their own request they want to

23    postpone identifying who their witnesses will be on very

24    important topics that we'll get to in a moment, there's

25    absolutely no prejudice to not allowing these depositions

27

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    to go forward.  And they are essential to the case,

2    because as third parties who are no longer associated

3    with Universal, we feel like they will be more likely to

4    tell the truth, I would say.

5              MR. KLAUS:  First of all, the agreement

6    with respect to the ten deposition limit, carved out

7    the 30(b)(6)s, but it was reached with respect to other

8    individuals in the case.

9              The second is, is obviously there's

10   expense and inconvenience, certainly of traveling to

11   Nashville for a deposition of Mr. Hernandez, and there's

12   additional expense in terms of preparing for a deposition

13   of another witness.

14             And what we still haven't seen in the

15   statement of undisputed issues or any other statement, is

16   any indication of why it is that there's a belief that

17   Mr. Ferrante will have information that other individuals

18   in the case have not.

19             Mr. Busch just said, "He's a former

20   employee, and we therefore think that he will be more

21   forthcoming."  Patricia Blair is a former employee.  He

22   took her deposition and now wants to take another one

23   from somebody who reported to her.  And we don't see the

24   need to do it, and particularly not where the parties had

25   already entered into not just a stipulation at a

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    deposition, but a subsequent stipulation saying that

2    identified the universe of potential opponents.

3              MR. BUSCH:  Since Mr. Klaus has baited

4    me on saying he wanted a proffer on Mr. Ferrante and

5    Mr. Hernandez, if Your Honor would like one, I would be

6    happy to give it.

7              THE COURT:  No, in light of the rule --

8    in light of the fact that the ten deposition limit is

9    reached and no motion to exceed the limit was filed,

10   I'm disinclined to just grant carte blanche.

11             On the other hand, you're going to be in

12   New York.  You've already deposed three members of

13   copyright department.  I can't imagine that the

14   preparation for Ferrante is going to -- going to be that

15   unduly burdensome.  I'm going to grant the motion in

16   part, and allow the deposition of Ferrante on the New

17   York date that's already been set, a three-hour

18   deposition.

19             And the deposition for Hernandez is not

20   granted, short of a motion to exceed the time and a

21   showing of cause why it wasn't taken care of earlier in

22   the case.

23             MR. BUSCH:  Yes, sir.  Thank you, Your

24   Honor.

25             MR. KLAUS:  I want to add -- I can talk

*EIGHT MILE STYLE v. APPLE COMPUTER*

1        about this with Mr. Busch afterwards, but at the risk

2        of pushing this, we had also -- there were some

3        documents that were produced by the plaintiffs in the

4        case after the deadline and Mr. Busch had agreed to

5        make Mr. Martin available for deposition the same day

6        in New York.  If it would be possible for the Ferrate

7        deposition and the Martin depositions to be two hours

8        each in the morning, then the Levinson four hours in

9        the afternoon?

10                       MR. BUSCH:  That's fine with me, Your

11       Honor.

12                       THE COURT:  Two hours.

13                       MR. KLAUS:  Thank you, Your Honor.

14                       MR. BUSCH:  That brings us to the

15       30(b)(6) notice of Aftermath.  And it also brings us to

16       the other summary judgment, the summary judgment

17       schedule.  Right now, Your Honor, we have stipulated,

18       although the Court has not entered it yet, changing

19       the response date for our motion for summary judgment

20       -- or for their motion for summary judgment to the 24th

21       of June.

22                       And speaking to Mr. Klaus today, there is

23       a concern that Mr. Klaus has identified, that he can not

24       get witnesses that would be responsive to some of these

25       topics in sufficient time that we can take their

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    deposition and be able to incorporate any testimony into

2    our response for summary judgment.

3                    And one topic in particular is very

4    important.  Your Honor, with respect to Subject Matter

5    Number Two, Subject Matter Number Two is,

6                            "Whether the mechanical license

7                            signed by Joel Martin for the song

8                            "Lose Yourself" was ever

9                            countersigned by UMG or otherwise

10                           approved and whether it is now in

11                           effect."

12   A bit of background on that is very important, Your

13   Honor.  Remember, it is the position of Universal in this

14   case that the controlled composition clause in a

15   recording agreement that FBT, which is also owned by Mr.

16   Martin and Eminem, gives them the right to exploit these

17   compositions through digital download.  That's their

18   position in this case.

19                    Shortly after the original FBT agreement

20   with Aftermath was entered into in 1998, there were no

21   permanent downloads in 1998.  There was no I-Tunes, there

22   was no commercially viable, lawful, permanent download

23   service where these downloads were a means of

24   distribution or licensing of the compositions for sale.

25                    In 2002, when permanent downloads began to

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    be a means to license and sell compositions and sound

2    recordings, Universal had the controlled composition

3    clause that they thought that it applied to digital

4    downloads.  However, they contacted Mr. Martin, and they

5    asked him to sign a digital download license specifically

6    for "Lose Yourself," the song "Lose Yourself."

7                    There was a negotiation that took place

8    after Mr. Martin received that license request.  It was

9    ultimately agreed that Mr. Martin would sign the

10   requested license based upon a two-year term, a right to

11   terminate and other conditions.  It drafted a license, a

12   negotiated license, not the license that Universal sent,

13   but a negotiated license that had a two-year term, and a

14   right to terminate and several other conditions within

15   it.

16                    Our position is that if the controlled

17   composition clause at issue in this case actually granted

18   digital distribution rights, the right to license these

19   songs for digital downloads, there would be no need for

20   them to have entered into this license with a two-year

21   term.

22                    The testimony of both Ms. Blair and Mr.

23   Martin was -- and Ms. Blair was the head of the copyright

24   department who negotiated this, was that the parties

25   agreed this would be a trial process for digital

downloads that would only be for this one particular song.

UMG never -- or we don't have a returned, signed copy of that mechanical license. UMG then sent us over the course of the next several years, requests for permanent download licenses that Mr. Martin never signed, never executed. This is -- if Universal did in fact sign this "Lose Yourself" license and if Universal believes it's now in effect, that would, in our view, be strong evidence that they understood that the controlled composition clause did not implicate digital rights.

So we need a witness in responding to summary judgment to testify about (a), whether the song, "Lose Yourself" was -- the mechanical license signed by Mr. Martin was ever signed by UMG. No one who we've deposed so far knows whether it was otherwise approved by Universal. No one who we've testified knows -- who's testified so far knows, and whether Universal believes it's now in effect. Again, no one who has testified on behalf of Universal has said they have any knowledge on that whatsoever.

Mr. Klaus offered to search to see whether they could locate a countersigned "Lose Yourself" mechanical license. Of course, our position would be this litigation has been going on for months now, if not

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    longer, and they should have produced it originally and

2    they should have looked for it originally.  But the point

3    is, is that we need a witness on this, and it is

4    absolutely essential to have that in order for us to

5    respond to summary judgment.

6                 So what I would ask, Your Honor, is that

7    either Mr. Klaus be compelled to produce a witness to us

8    almost immediately on these topics and the other topics

9    that we have been discussing here today, some of them

10   we've agreed not to require a witness, some they've

11   agreed to produce a witness.  We're still taking about

12   it.  Or we would ask that our -- the time for our

13   response to the Motion For Summary Judgment be extended.

14                And Mr. Klaus has said he would agree to

15   that, so that we can get a witness on this topic, which

16   is essential, and any other topic that the parties agree

17   or the Court orders a witness be produced.

18                MR. KLAUS:  Your Honor, first of all, I

19   disagree with a great deal of the information that Mr.

20   Busch just said about the import of the "Lose Yourself"

21   license, about the plausibility of there being a test

22   case when Eminem compositions have been obviously

23   available on I-Tunes for many years, or his

24   representations about Ms. Blair saying that there was

25   an express agreement that there was a test case.

34

*EIGHT MILE STYLE v. APPLE COMPUTER*

1           The problem with what Mr. Busch has done

2     with respect to topic number two, and with respect to the

3     entire Aftermath 30(b)(6), is that he has plucked

4     something out of something that we are in the middle of

5     meeting and conferring on.  There are ten separate

6     requests for topics in the Aftermath 30(b)(6).  And what

7     I proposed to Mr. Busch today -- I heard what he has said

8     about his summary judgment, he -- the reason that the

9     summary judgment date was continued to June 24th was on

10    Mr. Busch's motion for an extension of time to have it

11    moved to the 24th.

12          What I said to him is that with respect to

13    topic number two and with respect to a-half dozen other

14    topics as to which he thinks we still have a dispute and

15    which he and I started our meet and confer and actually

16    discussing the scope of the issues this afternoon after

17    the deposition that we took this morning, is that we

18    agreed to an expedited time frame for -- including the

19    meet and confer, staking out our positions, and to the

20    extent there is an issue that we need to submit to Your

21    Honor for resolution, that we identify it in a statement

22    of unresolved issues.  It is a short document that

23    doesn't have to be a full-blown motion, that we can do it

24    in a format that we hope we could get a resolution on if

25    it's convenient to the Court, either without the need for

*EIGHT MILE STYLE v. APPLE COMPUTER*

1          us to come here for hearing in person or without the need

2          for a hearing, and that we would then be agreeable to an

3          acceptable extension of his time to respond to the

4          summary judgment motion.

5                         THE COURT:  This is the date set for the

6          hearing on the motion and you've had chances to meet

7          and confer.  Why is it that -- if you haven't reached

8          an agreement, why should I believe you're going to

9          reach an agreement?

10                        MR. KLAUS:  The reason for it is, Your

11         Honor, is that the Aftermath 30(b)(6), there's nothing

12         about it in the motion to compel papers.  Our

13         objections to this were served on May the 30th.  We did

14         not -- we did not start discussing the meet and confer

15         in terms of putting together the list of unresolved

16         issues, until Monday night.  We continued to work

17         through the interrogatories and the request for

18         production, almost all of which we've actually reached

19         an agreement and we've come to a resolution on.

20                        Mr. Busch and I started talking about the

21         Aftermath 30(b)(6) depositions this afternoon.  I think

22         that there's reason to believe that we would reach

23         resolution on it, Your Honor.  And if we didn't, there

24         would at least be the opportunity for each party to put

25         in some form of a written statement which says, "Here's

36

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    our positon as to this request," instead of going through

2    them point by point, where there may be no need for the

3    Court's resolution.

4              MR. BUSCH:  Your Honor, I think there's

5    one or two things I have to clear up here, but I don't

6    want to leave the Court with the idea that I waited

7    until this afternoon -- or the parties waited until

8    this afternoon to discuss this.  We served this

9    30(b)(6) notice on the defendants in the middle of May.

10   They served their objections on May the 30th.

11              I have been out in California with Mr.

12   Pomerantz, which is Mr. Klaus' partner, for depositions

13   throughout the second half of the month of May, and then

14   the first week of June.  There were several occasions

15   when I asked Mr. Pomerantz, we were planning on

16   discussing this and the other topics that ultimately

17   became the Motion to Compel, following our depositions,

18   and each time -- and I don't want to put this entirely on

19   Mr. Pomerantz, but each time, after his witness was

20   deposed, it was late in the day, and he decided, "Let's

21   not have the conversation.  Let's do it some other time."

22              Then when we -- at the day of Pat Blair's

23   deposition, we identified this 30(b)(6) matter as

24   something that needed resolution and would be resolved

25   today, would be resolved today if the parties could not

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    reach a resolution on it.

2                    My problem with this is, unlike some of

3    the documents or interrogatories, they can't -- they

4    should have been looking for a witness for these topics

5    for the last month.  And if you hear Mr. Klaus, he's just

6    going to start thinking about who the witness might be

7    and has not offered up who the witness is.  They've got

8    to know who their witness is, who's going to know whether

9    UMG ever countersigned "Lose Yourself."

10                   "Lose Yourself" is a huge song.  It was

11   the biggest song from the "Eight Mile" movie.  It is a

12   huge song.  It is one of the most important documents in

13   this litigation, whether Universal approved it.  They're

14   just starting to look for witnesses now.

15                   THE COURT:  Was there a document request

16   for that license?

17                   MR. BUSCH:  We produced it.  We produced

18   the -- yes, we --

19                   THE COURT:  You're looking for a signed

20   one?

21                   MR. BUSCH:  Yes, for all licenses they

22   had, any licenses, everything.  And nothing has been

23   produced.

24                   And Mr. Klaus said to me today, "Well,

25   we'll do a double secret look later."

*EIGHT MILE STYLE v. APPLE COMPUTER*

1           But the point is, our point is, "Why

2      haven't you looked for it now?  Why can't you identify

3      who the witness is going to be now?  Why are we just

4      starting this process?"  I would like them to advise us

5      when these witnesses will be available.  And we need this

6      information in order to properly respond to the summary

7      judgment.

8           And we would ask that if they can't get a

9      witness to us on these topics that we've agreed to, and I

10     think we will reach resolution on most of these topics

11     that are here, that we be allowed some additional time to

12     respond to summary judgment, which he's agreed to, which

13     he's okay with if the Court is okay with it.

14          THE COURT:  Well, I'm not going to touch

15     this.  It's not in the motion that's referred to me.  I

16     appreciate that you've discussed it and decided that it

17     would be submitted to me, but that's just not how it

18     works.

19          The Magistrate Judge system is subordinate

20     to the District Judge bench.  I decide what Judge Taylor

21     tells me to decide, and the parties can't agree to submit

22     things to me in the absence of a motion and expect me to

23     respond to it.

24          MR. BUSCH:  Your Honor, just to make it

25     very clear, in our stipulation that we filed setting

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    this hearing for today and what we've submitted to the

2    Court, this was one of the issues that we actually did

3    submit to the Court.  The resolution of 30(b)(6) was

4    one of the items listed.

5                    THE COURT:  Well, you meet and confer

6    and see what you can work out.  By way of guidance, I

7    will say that I have long been and remain a proponent

8    of broad discovery.  Absent some good cause why I

9    should not require you to produce a witness on these

10   subject matters, I'm likely to tell you to do it.

11                   So with that in mind, you better get

12   together and talk this thing through.  You can submit a

13   list if you want.  If you can't agree on something, I'll

14   review it, not likely to call you back for a hearing.  So

15   make it good and make it short, because this is not the

16   way these matters are to be addressed.

17                   MR. BUSCH:  Thank you, Your Honor.  The

18   only thing is, is that on the summary judgment issue,

19   on a response, I'm getting a little bit nervous about

20   that, because right now our request was based upon

21   where we stood a couple of weeks ago, that we be

22   allowed to have until the 24th to respond to their

23   summary judgment motion.  That -- and that was part of

24   our stipulation.  That has not been signed yet.

25                   THE COURT:  I consider it part of the

*EIGHT MILE STYLE v. APPLE COMPUTER*

1    agreement.

2                    MR. BUSCH:  Okay.  So could we -- can we

3    stipulate, can we submit something to Your Honor if we

4    agree on the dates for these depositions we're talking

5    about and that we needed to respond, a new schedule for

6    our response and their reply?

7                    THE COURT:  Any objection to that?

8                    MR. KLAUS:  As I indicated to Your

9    Honor, we will meet and confer.

10                   And just so there is no misunderstanding

11   about this, it's not just a question of -- the question

12   here is not meeting and conferring to figure out the

13   dates for deponents and we haven't had peoples' calendars

14   open.  It's that there are issues with respect to the

15   scope of these -- I take to heart what Your Honor has

16   said about your view of discovery.  We'll work often with

17   Mr. Busch to try to get this issue resolved without the

18   need to have to come back.

19                   THE COURT:  Very well.

20                   MR. BUSCH:  And I'm not sure he answered

21   Your Honor's question directly.  I just want to make

22   sure he doesn't object to extending the --

23                   THE COURT:  He doesn't.  He's already

24   said he doesn't, and he won't.

25                   MR. BUSCH:  Okay.

*EIGHT MILE STYLE v. APPLE COMPUTER*

1              THE COURT:  There will be an extension.

2      If it's not stipulated, I'll take care of it.  But I'll

3      be very disappointed if that's necessary.

4              MR. BUSCH:  Thank you, Your Honor.

5              THE COURT:  Thank you.

6              Mr. Busch, I'll direct that you prepare an

7      order effectuating my rulings and your stipulations.

8      Exchange it Messrs. Klaus and Quick for any objections as

9      to form.  Submit it within five working days.

10             MR. BUSCH:  Thank you, Your Honor.

11             MR. KLAUS:  Thank you, Your Honor.

12             THE COURT:  Thank you.

13                  (At 3:57 p.m., court in recess)

14                     *       *       *

15

16

17

18

19

20

21

22

23

24

25

*EIGHT MILE STYLE v. APPLE COMPUTER*

1

2

3

4

5

6

7

8

9

10

11

12

13 **C E R T I F I C A T I O N**

14         I, Marie J. Metcalf, Official Court

15 Reporter for the United States District Court,

16 Eastern District of Michigan, Southern Division,

17 appointed pursuant to the provisions of Title 28,

18 United States Code, Section 753, do hereby certify

19 that the foregoing is a correct transcript of the

20 proceedings in the above-entitled cause on the date

21 hereinbefore set forth.

22         I do further certify that the foregoing

23 transcript has been prepared by me or under my direction.

24 \s\Marie J. Metcalf            _____

25 Marie J. Metcalf, CSMR-3274, CVR, CM    (Date)