## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**EIGHT MILE STYLE, LLC, and MARTIN
AFFILIATED, LLC,**

        **Plaintiffs,**

vs.

**APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT**

        **Defendant.**

**Case No. 2:07-cv-13164
Hon. Anna Diggs Taylor
Magistrate Judge Donald A. Scheer**

| | |
|---|---|
| Howard Hertz, Esq. (P26653) | Richard S. Busch  (TN BPR#14594) |
| Jay G. Yasso, Esq.  (P45484) | King & Ballow |
| Hertz Schram PC | 1100 Union Street Plaza |
| 1760 S. Telegraph Rd., Suite 300 | 315 Union Street |
| Bloomfield Hills, MI 48302 | Nashville, TN 37201 |
| (248) 335-5000 | (615) 259-3456 |
| hhertz@hertzschram.com | rbusch@kingballow.com |
| jyasso@hertzschram.com | Attorneys for Plaintiffs |
| Attorneys for Plaintiffs | |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' CLAIM OF ENTITLEMENT TO PROFITS FROM APPLE'S SALE OF IPODS

## CONCISE STATEMENT OF ISSUES PRESENTED

Whether the Court should preclude Plaintiffs from offering evidence concerning their entitlement to a share of Apple's profits from sales of iPods that were driven, in part, by Apple's infringing conduct, when Plaintiffs have always indicated their claim for damages included all profits of Apple attributable to the infringement at issue herein and disclosed their specific claim for profits from Apple's sale of iPods on July 3, 2009 in their timely expert report detailing their damages, and which provides evidence of a "causal nexus" between the infringement at issue and Apple's profits from the sale of iPods.

Plaintiffs' answer: No.

# CONTROLLING AUTHORITIES

## Federal Cases

*Adell v. John Richards Homes Bldg. Co., L.L.C.*, 312 B.R. 849 (E.D. Mich. 2004)

*Andreas v. Volkswagen of America*, 336 F.3d 789 (8th Cir. 2003)

*DaimlerChrysler Services v. Summit National*, No. 02-71871,
    2006 U.S. Dist. LEXIS 4282 (E.D. Mich. Jan. 26, 2006)

*David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003)

*Design Strategy v. Davis*, 469 F.3d 284 (2d Cir. 2006)

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985)

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651 (2d Cir. 1978)

*Lowry's Reports v. Legg Mason*, 271 F. Supp. 2d 737 (D. Md. 2003)

*Multimatic v. Faurecia Interior Systems, USA*,
    Case No. 05-60120, 2007 U.S. Dist. LEXIS 12896 (E.D. Mich. Feb. 26, 2007)

*Niemi v. Am. Axle Mfg. and Holding Inc.*,
    No. 05-74210, 2008 U.S. Dist. LEXIS 33366 (E.D. Mich. April 23, 2008)

*Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004)

*Rainey v. Wayne State University*, 26 F. Supp. 2d 963 (E.D. Mich. 1998)

*Renteria v. Italia Foods, Inc.*,
    No. 02 C 495, 2003 U.S. Dist. LEXIS 14698 (N.D. Ill. Aug. 21, 2003)

*Thoroughbred Software v. Dice Corporation*, 488 F.3d 352 (6th Cir. 2007)

*Vaughn v. City of Lebanon*, 18 Fed. Appx. 252 (6th Cir. 2001)

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009)

## **Federal Statutes**

Federal Rule of Civil Procedure 26(a)

Federal Rule of Civil Procedure 37(c)

17 U.S.C. § 504

## I.       INTRODUCTION

Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (collectively, "Plaintiffs") hereby file their response in opposition to the Motion to Exclude filed by Defendants Apple Computer, Inc. ("Apple") and Aftermath Records d/b/a Aftermath Entertainment ("Aftermath") (collectively, "Defendants").   Defendants ask the Court to preclude Plaintiffs from offering evidence to support their claim to entitlement to a share of profits Apple has made from sales of iPod MP3 players; sales Plaintiffs contend are driven, in part, by Apple's infringing conduct at issue in this case.   Defendants contend that Plaintiffs' claim should be excluded either under Rule 37, due to the timing of the claim, or under 17 U.S.C. § 504(a) and (b) because the claim is "indeterminate."  As described below, Defendants' motion is without merit.

First, Plaintiffs have always, in initial disclosures and interrogatory answers, claimed as damages all "profits of Apple that are attributable to" the infringement at issue in this action, but were unable to provide greater detail until Defendants served documents showing their profits, which they delayed doing until approximately May and June, 2009.  Once in receipt of those documents, Plaintiffs disclosed the details of their damages in their expert report, served in accordance with the deadline agreed upon by the parties and Ordered by the Court.  The details of Plaintiffs' claim of entitlement to Apple's iPod profits was disclosed in conformity with the Federal Rules, the Local Rules, the deadline ordered by the Court, and the agreement between the parties and did not violate Rule 26.

Second, Copyright law does not require Plaintiffs to calculate the exact dollar figure of their claim for iPod profits, as Defendants urge.  Instead, all that is required is proof of a "nexus" between the infringement and the indirect profits sought.  Plaintiffs' expert report satisfies these

requirements.

Defendants' criticism of Mr. Cohen's report boils down to questions of reliability, not admissibility. Exclusion of a theory of damages is a drastic remedy that is not favored. Defendants will have ample opportunity to offer whatever evidence they feel is appropriate to rebut Mr. Cohen's opinions, both through their expert, who has already produced a written report, and through the testimony of Apple's fact witnesses, who are named on Defendants' witness list.

Finally, as explained below, Mr. Cohen's opinion concerning Plaintiffs' entitlement to a share of Apple's iPod profits, even if ultimately rejected by the Court, is relevant to determining Plaintiffs' entitlement to statutory damages, and the amount thereof.

## II. PROCEDURAL HISTORY

### 1. July 2007 – May 2008: Plaintiffs' Complaint is Filed, Defendant Aftermath Intervenes, Discovery Commences

This case commenced when the initial complaint was filed on July 30, 2007 against Defendant Apple Computer. Doc. No. 1. Shortly thereafter, Aftermath intervened as a Defendant, *see* Doc. No. 8, and discovery among all parties commenced in approximately February 2008. Guilford Decl. ¶ 2. On or about February 12, 2008, Plaintiffs served their initial disclosures, and stated therein, among other things, a claim to "actual damages and the profits of Apple that are attributable to the digital reproduction, sale, and distribution of the Eminem Compositions, or alternatively, statutory damages…" Doc. No. 128, Ex. 1 ¶ (C).

Plaintiffs' first sets of interrogatories and document requests, served on or about February 12, 2008, requested various documents and information that would allow Plaintiffs to calculate Defendants' profits, and thus Plaintiffs' damages as described in their initial disclosures. *See*

Guilford Decl. ¶ 3, Exs. A, B.  Apple's responses to these requests, served on or about March 20, 2008, stated only that they would produce records showing the "number of permanent downloads" of the Eminem Compositions, and the amounts Apple paid to Universal Music Group as a result.  *Id.* ¶ 4, Ex. A.  Apple produced only the documents indicated and did not produce documents showing their claimed costs for the infringing activity alleged.  Guilford Decl. ¶ 5.  Aftermath refused to produce any documents indicating its profits and losses from the infringement alleged, objecting that "damages discovery is premature and should await a determination as to liability."  Guilford Decl. ¶ 6, Ex. B.

Defendants also served discovery requests on Plaintiffs, including an interrogatory asking Plaintiffs to identify the damages they had suffered, including detailed calculations thereof. Guilford Decl. ¶ 8, Ex. C.  Plaintiffs responded that their damages were subject to expert opinion.  *Id.*

### 2. May 2008 – May 2009: Defendants Move to Bifurcate and Refuse to Produce Damages Discovery

Plaintiffs filed a motion to compel to address these and other deficiencies in Defendants' discovery responses on May 2, 2008.  Doc. No. 33.  That motion was referred to the Magistrate Judge for hearing and determination on May 9, 2008.  Doc. No. 36.  Defendants filed a motion to bifurcate the same day, May 9, 2008, arguing discovery and trial on liability should be conducted before any discovery as to damages.  Doc. No. 38.  The Magistrate Judge deferred decision on Plaintiffs' Motion with respect to the Defendants' refusal to produce documents relating to their profits "pending the Court's resolution of Defendants' Motion to Bifurcate Damages Discovery and Trial."  Doc. No. 50 ¶ 5.

Defendants also filed a motion for summary judgment in early May, Doc. No. 34, and subsequently a second motion for summary judgment in July 2008. Doc. No. 53. Defendants' two motions were consolidated, *see* Doc. Nos. 65, 66, and Plaintiffs filed their response on August 28, 2008. Doc. No. 74. Defendants filed their reply on October 15. Doc. No. 94. The Court held oral argument on all pending motions, including Defendants' motion to bifurcate, on December 4, 2008. Doc. No. 109. Through that date, Defendants had maintained their objections and refused to produce documents necessary for Plaintiffs to calculate their damages. Guilford Decl. ¶ 7.

The Court denied Defendants' motion to bifurcate and described Defendants' failure to cooperate in damages discovery as "unconscionable." Doc. No. 117, Transcript at 59:2-5. The Court granted the parties through April 1, 2009 to conduct outstanding discovery, including discovery on damages. *Id.* at 59:6-15. Because of a pending trial in another case involving the same counsel, that deadline was subsequently extended, and the parties submitted stipulation and agreed order that responses to pending discovery would be exchanged on May 8, 2009, with a final discovery cutoff of June 10, 2009. Doc. No. 119. Both prior to and immediately after submitting that stipulation, Plaintiffs reminded Defendants they had refused to produce documents relating to their profits and they were still under an obligation to do so. *See* Guilford Decl. ¶ 9, Exs. D, E.

### 3. May 2009 – August 2009: Defendants Finally Produce Documents Related to Plaintiffs' Damages and Expert Discovery is Taken

In early May, 2009, Defendant Aftermath produced 44 profit and loss statements and other documents Plaintiffs required to calculate Aftermath's profits from the infringement alleged herein. Guilford Decl. ¶ 10. Apple supplemented its written responses at that time but

did not produce documents showing its profits and losses, stating it was still in the process of gathering them.  *Id.*  Finally, on or about June 3, 2009, Apple produced documents in response to Plaintiffs' outstanding discovery requests relating to damages.  *Id.* ¶ 11.  These documents included the "profit and loss" statements necessary to calculate Apple's profits, and thus Plaintiffs' damages, and Plaintiffs deposed Apple's designated 30(b)(6) representative concerning these documents just two days later, on June 5, 2009.  *Id.*

Shortly after Apple's production, the parties conferred concerning the expert discovery schedule and agreed that Plaintiffs' expert report would be due one month after Apple produced documents relating to damages, on July 3, 2009.  Guilford Decl. ¶ 12.  A stipulation and agreed order was submitted and Ordered by the Court, setting this July 3, 2009 expert disclosure deadline, among others.  Doc. No. 123.

Plaintiffs served their expert report on Defendants on July 3, 2009, which included Plaintiffs' claim to a share of Apple's profits from sales of iPods and the explanation of Plaintiffs' entitlement thereto.  Guilford Decl. ¶ 13.  In late July, Plaintiffs deposed Aftermath's designated witness concerning the profit and loss statements produced by Aftermath.  Guilford Decl. ¶ 14.  Because this witness, Mr. Ciongoli, could not be made available prior to that time, the parties agreed that Plaintiffs' expert, Mr. Cohen, would have until August 10, 2009 to serve any supplemental report in response to Mr. Ciongoli's deposition testimony, and that Mr. Cohen would be deposed during the week beginning August 10.  *See* Doc. No. 126 ¶ 3-4.  Mr. Cohen's supplemental report was served on August 10, and Mr. Cohen was deposed on August 12, 2009.  Guilford Decl. ¶ 15.  At his deposition, Mr. Cohen was questioned extensively on the claim for iPod profits in his expert report.  *Id.* ¶ 16.

Following Mr. Cohen's deposition Defendants served their expert rebuttal report on August 19, 2009, also as agreed in the Court's Order. Guilford Decl. ¶ 16. Defendants' rebuttal report concerned solely Plaintiffs' claim of entitlement to a share of Apple's profits from the sale of iPods. *Id.*

Defendants filed the instant motion the next day, August 20, 2009.

## III. ARGUMENT

### 1. Plaintiffs' Disclosure Was Timely Under Rule 26

#### a. Plaintiffs disclosed their damages calculation as early as possible

As explained above, Plaintiffs' expert report on damages could be drafted only *after* Defendants produced their own documents showing their profits and loss from the infringement alleged herein. Aftermath did not produce those documents until May 2009, and Apple delayed their production even longer, until June 3, 2009. After that production, the parties *agreed* on the date Mr. Cohen's report would be due, July 3, 2009, and the report was served on Defendants in accordance with that deadline. Prior to that time, Plaintiffs had served initial disclosures and answered Defendants' interrogatory asking after Plaintiffs' damages by clearly stating they were claiming profits "attributable to" the infringement in question but disclaiming any ability to calculate those damages without an expert report. Thus, Plaintiffs disclosed their damages calculations, including their damages from Apple's sales of iPods, precisely on the schedule the parties explicitly agreed to.

Defendants attempt to backdate this deadline by claiming Plaintiffs' claim for damages from Apple's iPod sales was a mandatory disclosure under Federal Rule of Civil Procedure 26(a). Defendants' are incorrect. While Rule 26(a) does require disclosure of "a computation of

each category of damages claimed by the disclosing party," initial disclosures are to be made "based on the information then reasonably available to it." Fed. R. Civ. P. 26(a)(1)(E). In formulating this rule, the Advisory Committee recognized the reality that a disclosure "a party would not be expected to provide a calculation of damages which…depends on information in the possession of another party or person."

A plaintiff is simply not required to provide a detailed calculation of its damages in its initial disclosures when those calculations will be based on documents not in its possession, as Plaintiffs' damages here are. As a result, Plaintiffs' initial disclosures, which claim "the profits of Apple that are attributable to the digital reproduction, sale, and distribution of the Eminem Compositions…" fully meet the requirements of Rule 26(a), which extend only to the information that was then "reasonably available" to Plaintiffs. Doc. No. 128, Ex. 1 ¶ (C). Plaintiffs have remained consistent since that time about the damages sought: Defendants' profits attributable to the infringement of Plaintiffs' Compositions or, in the alternative, statutory damages. *See, e.g.,* Guilford Decl. Ex. A, Response to Interrogatory No. 4. Defendants claim without citation that Plaintiffs "specifically disavowed" any entitlement to Apple's profits from the sale of iPods, *see* Doc. No. 128 at 8, but that is simply false: Plaintiffs have always maintained their entitlement to Defendants' profits attributable to the infringement at issue.[1]

Other cases that have excluded damages calculations under Rule 37(c) are instructive by

---

[1] Defendants cite nothing in support of their statement that Plaintiffs "specifically disavowed" a claim to a share of Apple's iPod profits. Elsewhere, however, they cite to portions of the deposition of Apple witness Eddy Cue, in which Plaintiffs' counsel states that a line of questioning had "nothing to do with damages." Doc. No, 128 at 5. Defendants' citation is misleading. At that time, damages discovery in this case was on hold due to Defendants' unilateral decision not to produce documents responsive to Plaintiffs' discovery requests, and Plaintiffs' questions to Mr. Cue focused on the issues in the *F.B.T.* case: in what ways Apple's iTunes service was similar to a traditional "brick-and-mortar" store that sold records. Furthermore, although Mr. Cohen mentioned one statement of Mr. Cue in his report, his opinion that Plaintiffs were entitled to a share of Apple's iPod profits was in no way premised on Mr. Cue's testimony. *See* Doc. No. 128, Ex. 3 at 4-5.

contrast. In *Multimatic v. Faurecia Interior Systems, USA*, the defendant and counterclaim-plaintiff did not provide a damages calculation either in its initial disclosures or in response to interrogatories, stating that its expert report would address this issue. Case No. 05-60120, 2007 U.S. Dist. LEXIS 12896 at *18-*19 (E.D. Mich. Feb. 26, 2007). When the expert report deadline came, the defendant stated it would not be submitting an expert report on damages, and it subsequently ignored a request to supplement its prior interrogatory answer that directed the plaintiff to its forthcoming expert reports. *Id.* Faurecia finally provided a damages calculation in response to Multimatic's motion for summary judgment, but the Eastern District of Michigan rejected this evidence under Rule 37(c). *Id.* at *20. Like the defendant in *Multimatic*, Plaintiffs answered discovery by claiming their expert report would address damages, but unlike Faurecia, Plaintiffs actually produced an expert report, and in a timely fashion. In *Design Strategy v. Davis*, the Second Circuit affirmed the district court's exclusion of a claim to damages for "lost profits" that was raised in a proposed pretrial order where the claim would have required at least that discovery be reopened, an expert report prepared, and that expert deposed. 469 F.3d 284, 293, 297 (2d Cir. 2006). As explained below, Defendants cannot show any prejudice resulting from Plaintiffs' claim of entitlement to a share of Apple's iPod profits.

**b. Plaintiffs' Disclosure is Either Substantially Justified or Harmless**

Even Plaintiffs did have an obligation to disclose their specific claim to iPod profits previous to Mr. Cohen's report, the timing of this disclosure is both substantially justified and harmless, so no sanction is permitted. *See* Fed. R. Civ. P. 37(c)(1). Courts are guided by four factors in this inquiry: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the

trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Here, the factors show that any violation was substantially justified, harmless, or both.

First, as described above, Plaintiffs have always made it clear that the damages claimed included all of Apple's profits "attributable to" Apple's infringing conduct. *See* Exs. A, B; Doc. No. 128, Ex. 1 ¶ (C). Plaintiffs never disclaimed Apple's indirect profits. Even if Defendants were surprised, they cannot demonstrate "prejudice" under this factor, since they not only had ample opportunity to respond to Plaintiffs' iPod profits claim, but identified an expert to testify about this issue and served a lengthy expert report and have identified three fact witnesses who will be called at trial to testify concerning this claim, if their motion fails. *See* Exhibit C, Defendants' List of Potential Trial Witnesses.

Defendants claim allowing Plaintiffs' to maintain their entitlement to a share of Apple's iPod profits prejudices them in two ways: 1) they do not have "a fair opportunity to adequately prepare for trial" on Plaintiffs' claim for iPod damages; and 2) Defendants do not have "a meaningful opportunity to rebut" Mr. Cohen's expert report on this topic. Doc. No. 128 at 18-19.

While belated disclosure can cause prejudice based on inadequate time to respond, the facts in the instant case do not present such a situation. For example, in *Vaughn v. City of Lebanon*, after an expert disclosure deadline of August 3, 2009 came and went, the plaintiff produced affidavits of newly identified experts on October 20 and November 12 in connection with his opposition to a motion for summary judgment. 18 Fed. Appx. 252, 261-62 (6th Cir. 2001). The defendants objected and the magistrate judge struck the affidavits, noting the

defendant were prejudiced because the timing of the disclosures did "not allow[] them an opportunity to prepare a response." *Id.* at 262. Other cases finding prejudice based on insufficient opportunity to prepare are based on analogous circumstances. *See, e.g.*, *Adell v. John Richards Homes Bldg. Co., L.L.C.*, 312 B.R. 849, 865 (E.D. Mich. 2004) (excluding expert report disclosed in mid-trial because opposing party did not have a reasonable opportunity to prepare).

Defendants show they have been prejudiced where they had "ample opportunity" to gather information concerning this claim and, indeed, *did* gather that information from Plaintiffs' expert witness in deposition. *See, e.g., Renteria v. Italia Foods, Inc.*, No. 02 C 495, 2003 U.S. Dist. LEXIS 14698 (N.D. Ill. Aug. 21, 2003) (finding failure to disclose computation of damages harmless where defendants had opportunity during depositions to gather information regarding damages). Plaintiffs' claim to iPod profits was disclosed on July 3, 2009, more than two and a half months before trial. Since that time, Defendants have both deposed Mr. Cohen and produced an expert report to rebut his opinion. Clearly, Defendants have not suffered by the timing of Plaintiffs' disclosure.

Second, Defendants also make the unsupported claim that the assertion of this theory is an effort to postpone the trial date in this case. Doc. No. 128 at 19. Nothing could be further from the truth, as Defendants are well aware. Plaintiffs have repeatedly told Defendants they oppose any attempt to move the trial date any later than it is currently set. *See, e.g.,* Exhibit G. Further, Defendants have already produced their own expert report and have not demonstrated any explanation for why Plaintiffs' claim of entitlement to a share of Apple's iPod profits would delay or disrupt trial.

Third, as described above, Plaintiffs disclosed their claim to Apple's iPod profits as early as Defendants' document production allowed them to prepare an expert report, only a month after Apple produced documents to Plaintiffs. The only motivation Plaintiffs had for the date their expert report was produced was *Defendants*' "unconscionable" decision to delay production of documents relating to damages until June 3, 2009.

## 2. Plaintiffs' Claim is Not Barred by Copyright Law

### a. Plaintiffs Have Presented Sufficient Evidence Linking Apple's iPod Profits to the Infringing Conduct

As stated by the Eighth Circuit, and endorsed by the Eastern District of Michigan, a copyright plaintiff seeking indirect profits need only demonstrate a "nexus" between the infringement and the profits sought. *Niemi v. Am. Axle Mfg. and Holding Inc.*, No. 05-74210, 2008 U.S. Dist. LEXIS 33366 at *12-*13 (E.D. Mich. April 23, 2008) (citing *Andreas v. Volkswagen of America*, 336 F.3d 789, 796 (8th Cir. 2003)). Once the plaintiff has done so, the burden shifts to the defendant to prove how those profits should be apportioned, *i.e.*, how much of those profits are the result of the infringement in question versus the result of other elements. *Id.*

*Andreas* is instructive in considering the instant case. There, the plaintiff, an artist, sued an advertising agency and an automobile manufacturer (Audi) when they incorporated his copyrighted work into a television commercial. 336 F.3d at 791-92. The jury found for the plaintiff, granting him damages in the form of actual damages, the profits of the advertising agency, and profits of the automobile manufacturer from selling the car (the "TT") depicted in the ad. *Id.* The district court granted Audi's motion for judgment as a matter of law, finding the award of Audi's profits "too speculative" because the plaintiff "failed to prove a causal

connection between the infringement and Audi's profits" from the car being advertised. *Id.* at 795. The appellate court reversed, finding the "circumstantial evidence" presented by the artist was sufficient for the jury to find that the commercial "contributed to" Audi's profits and shifted the burden to Audi of showing what affect other factors had on profits. *Id.* at 796-97. The Eighth Circuit explicitly rejected "the notion that [the plaintiff] was required to put a TT buyer on the stand to testify that she bought the car because of the commercial in order to meet his burden of a causal connection," ruling that once the "nexus" was established, the plaintiff only had to establish Audi's "gross revenue." *Id.* at 797.

Here, Plaintiffs' theory of entitlement to a portion of Apple's iPod profits is analogous to the claim in *Andreas*. Mr. Cohen states in his report that, based on sources he reviewed, "Apple uses iTunes as a vehicle to drive sales of its iPod MP3 players." Doc. No. 128, Ex. 3 at 5-6. Cohen provides further support for the "nexus" between the presence of Plaintiffs' Compositions in Apple's iTunes store and its sales of iPods by noting that Apple has twice featured one popular song at issue in this case in television advertisements not just for the iTunes store, but also for iPods. *Id.*

The "causal nexus" requirement referred to in *Niemi* and *DaimlerChrysler Services v. Summit National* court, a case also cited by Defendants, is not a difficult burden to meet. No. 02-71871, 2006 U.S. Dist. LEXIS 4282 (E.D. Mich. Jan. 26, 2006). All that a plaintiff seeking indirect profits must show is "a causal nexus between the infringing conduct and the infringer's gross revenue." *Id.* at *11 (citing *Lowry's Reports v. Legg Mason*, 271 F. Supp. 2d 737, 751 (D. Md. 2003) (citing cases)). *Lowry's Reports* provides only minimal assistance in parsing this requirement: the court must discern "whether there is a legally sufficient causal link between the

infringement and the subsequent indirect profits" and recovery can be denied if the profits "are only remotely or speculatively attributable to the infringement."  *Id.* at 751 (citing and quoting cases).  Other courts have held that producing evidence that the infringement at issue "was an important part" of the process leading to sales of a non-infringing product is sufficient to meet this burden.  *See, e.g., William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009).  As described above, Mr. Cohen offers precisely this kind of evidence.

The cases cited by Defendants finding indirect profits insufficiently linked with the infringement therein are distinguishable.  The plaintiff in *Niemi* failed because it brought a case alleging copyright infringement of *drawings* of industrial machinery but claimed profits stemming from the defendant's sale of goods manufactured by the machinery depicted in the drawings.  2008 U.S. Dist. LEXIS 33366 at *5-*8.  The Eastern District of Michigan had previously held in that case that use of the drawings to build the end product did not infringe the plaintiff's copyright.  Here, by contrast, Plaintiffs claim Apple's infringing conduct (making Plaintiffs' Compositions available for download through iTunes) caused some sales of iPods to occur.

*Rainey v. Wayne State University*, which Defendants cite for its statement that a plaintiff must demonstrate "detailed evidence linking gross revenues to the infringement," is also distinguishable.  26 F. Supp. 2d 963 (E.D. Mich. 1998).  There, the plaintiff's copyrighted works were used without her permission in approximately 2,000 brochures given away at an auto show directed at VIPs and the press.  *Id.* at 965-66.  The plaintiff claimed a portion of the defendant auto maker's profits from sales of cars and trucks based on enhancement of the defendant's "good will" by its use of the drawings – the plaintiff did not allege the defendant made *any* sales

based on the presence of her drawings. *Id.* Here, by contrast, Plaintiffs claim is not based on nebulous "good will," but rather that the presence of their songs in the iTunes store drove some consumers to purchase iPod MP3 players.

By contrast, a claim of indirect profits based only on "speculation" is illustrated in *Thoroughbred Software v. Dice Corporation*, also cited by Defendants. 488 F.3d 352 (6th Cir. 2007). There, the plaintiff, who developed and sold software, prevailed against the defendant, who sold unauthorized (i.e., infringing) copies to some of its consumers. *Id.* at 355-58. In addition to actual damages, Thoroughbred asked for Dice Corp.'s profits, but the only evidence it presented was Thoroughbred's *own* suggested prices. *Id.* at 360. The Sixth Circuit rejected this evidence because "Thoroughbred's own retail price…is no measure of Dice Corp.'s revenue." *Id.* Thoroughbred complained that Dice Corp.'s pricing structure was opaque because it charged a flat monthly fee, but the Sixth Circuit countered that Thoroughbred could have at least offered evidence of the entire monthly fee charged and submitted expert testimony to distill a damages amount from that figure. *Id.* at 361. Again, this is what Plaintiffs have done in the instant case, to the best of their ability.

### b. Plaintiffs have Sufficiently Quantified the Damages Sought

Cohen's expert report does not simply opine that Plaintiffs are due a completely undefined amount of Apple's profits from selling iPods, or that Plaintiffs are due 100% of Apple's iPod profits. Instead, Mr. Cohen spends several paragraphs describing *why* he believes the infringing conduct herein is linked to sales of iPods and provides an estimation of the maximum amount Plaintiffs could be entitled to. Doc. No. 128, Ex. 3 at 5-6. Cohen also offered opinion that iPod sales were driven, in part, by the availability of music in the iTunes store, and

that Plaintiffs' Compositions contributed to this factor. *Id.* Cohen calculated that downloads of sound recordings embodying Plaintiffs' Compositions made up approximately 0.17% of Apple's total sales through iTunes from 2003 through 2008. Cohen further calculated Apple's total profit from sales of iPods over the same time period as roughly $9.4 billion. In deposition, Cohen explained that the *maximum* amount that could be due Plaintiffs from Apple's iPod profits could be calculated by multiplying these numbers, which totals nearly $16 million.

Contrary to Defendants' suggestion, copyright law does not require Plaintiffs to stake claim to a specific dollar figure in indirect profits in order to present evidence of their entitlement thereto. Instead, a plaintiff seeking indirect profits need prove only "gross revenue reasonably related to the infringement." *Niemi*, 2008 U.S. Dist. LEXIS 33366 at *14 (citing *Davis v. Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001)). Mr. Cohen's calculation of the "maximum" amount of Apple's profits attributable to the presence of Plaintiffs' Compositions in the iTunes store satisfies this burden. Defendants have the opportunity to argue Mr. Cohen's figures are inaccurate, which they have done in their rebuttal report, as well as to submit evidence as to what portion of this profit figure is due to factors *other* than Apple's infringement of Plaintiffs' Compositions. *See, e.g., Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (once causal nexus is shown, "the infringer bears the burden of apportioning the profits that were not the result of infringement"); *Andreas*, 336 F.3d at 796 (same).

*Andreas* also notes the confusion Defendants here are attempting to create: "[t]he burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits." In fact, both cases Defendants cite in support of their argument that Mr. Cohen's failure to name a dollar

figure is fatal to Plaintiffs' claim were analyzing the "causal nexus" described above, not whether an expert "quantified" indirect damages claimed. In *Lowry's Reports*, the plaintiff's claim for indirect damages was thwarted when its expert "admitted that he could not say whether a causal link connected the infringement to [the defendant's] profits." 271 F. Supp. 2d at 752. In *Mackie v. Rieser*, the Ninth Circuit explicitly holds the plaintiff "must proffer sufficient non-speculative evidence to support *a causal relationship* between the infringement and the profits generated indirectly from such an infringement." 296 F.3d 909, 915 (9th Cir. 2002). As in *Lowry's Reports*, the plaintiff's expert stated "he could not 'understand' how it would be possible to establish a causal link…" *Id.* None of the cases Defendants cite provide any support for the requirement they try to graft onto copyright law: that plaintiffs must "quantify the particular amount of revenue that should be considered." Doc. No. 128 at 20.

Exclusion of critical witness testimony is an "extreme" sanction, "not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Quinn v. Consol. Freightways Corp.*, 283 F.3d 572, 576 (3d Cir. 2002) (citing cases); *see also Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 612 (D. Del. 2007) (refusing to exclude expert testimony). As described above, Defendants have retained an expert and produced a written expert report. Defendants' criticisms of Mr. Cohen's related to Plaintiffs' entitlement to Apple's profits from selling iPods go toward weight, not admissibility. *See, e.g., In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008); *United States v. Robinson*, 272 Fed. Appx. 421, 432 (6th Cir. 2007); *Structural Polymer Group, Ltd. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008).

### 3. At A Bare Minimum, Plaintiffs' Claim is Relevant to Statutory Damages

As described above, Defendants do not dispute that iTunes, and the availability of a wide selection of songs on iTunes, plays a role in driving iPod sales, as Mr. Cue admitted in deposition. It is also undisputed that Apple's profits from iPods far exceed their profits from sales of songs on iTunes, and the Eminem is one of the most downloaded artists on iTunes, accounting for 0.17% of all of iTunes' sales. Given these facts, the conclusion that Plaintiffs' Compositions account for some of Apple's profits from selling iPods is hardly farfetched.

Even to the extent the *amount* Apple's indirect iPod profits from the infringement at issue herein are not "ascertainable," Apple's iPod profits are still relevant, because such indeterminacy argues in favor of "a higher award of [statutory] in lieu damages." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985); *see also Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651, 657 (2d Cir. 1978) (citing *Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.*, 329 F.2d 194, 197 (2d Cir. 1964)). Defendants cite no case holding that a failure to state the dollar amount of indirect profits claimed justifies excluding all evidence concerning indirect profits.

## IV. CONCLUSION

For the reasons described above, the Court should deny Defendants' leave to amend the complaint.

Dated: September 3, 2009       Respectfully submitted,

/s/ Richard S. Busch

Howard Hertz (P26653)       Richard S. Busch (TN BPR#14594)
Jay G. Yasso (P45484)       King & Ballow
Hertz Schram PC       1100 Union Street Plaza
1760 South Telegraph Road, #300       315 Union Street
Bloomfield Hills, MI 48302       Nashville, TN 37201
(248) 335-5000       (615) 259-3456
hhertz@hertzschram.com       rbusch@kingballow.com
Attorneys for Plaintiffs       Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via the Court's Electronic Filing System:

| Counsel | On behalf of |
|---|---|
| Daniel D. Quick, Esq.<br>Dickinson Wright PLLC<br>38525 Woodward Ave<br>Suite 2000<br>Bloomfield Hills, MI 48304<br>(t): (248) 433-7200<br>(e): dquick@dickinsonwright.com<br><br>Kelly M. Klaus, Esq.<br>Munger, Tolles & Olson LLP<br>355 South Grand Ave<br>Suite 3500<br>Los Angeles, CA  90071-1560<br>(t): (213) 683-9238<br>(e): kelly.klaus@mto.com | Apple Computer, Inc. and Aftermath Records d/b/a Aftermath Entertainment |

this 3rd day of September 2009.

s/ Richard S. Busch