**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**EIGHT MILE STYLE, LLC, and MARTIN AFFILIATED, LLC,**

    **Plaintiffs,**

vs.

**APPLE COMPUTER, INC. and AFTERMATH RECORDS d/b/a AFTERMATH ENTERTAINMENT**

    **Defendant.**

**Case No. 2:07-cv-13164**
**Hon. Anna Diggs Taylor**
**Magistrate Judge Donald A. Scheer**

| | |
|---|---|
| Howard Hertz, Esq. (P26653) | Richard S. Busch (TN BPR#14594) |
| Jay G. Yasso, Esq. (P45484) | King & Ballow |
| Hertz Schram PC | 1100 Union Street Plaza |
| 1760 S. Telegraph Rd., Suite 300 | 315 Union Street |
| Bloomfield Hills, MI 48302 | Nashville, TN 37201 |
| (248) 335-5000 | (615) 259-3456 |
| hhertz@hertzschram.com | rbusch@kingballow.com |
| jyasso@hertzschram.com | Attorneys for Plaintiffs |
| Attorneys for Plaintiffs | |

**PLAINTIFFS' MOTION *IN LIMINE* No. 1 TO RULE AS A MATTER OF LAW THAT "CONTROLLED COMPOSITION CLAUSES" MAY NOT GRANT DPD LICENSES**

**CONCISE STATEMENT OF ISSUES PRESENTED**

Whether, as a matter of law, a so-called "controlled composition clause" can grant Digital Phonorecord Delivery licenses, where such clause specifies that the licecnses granted are at rates below the statutory minimum rate set by Copyright Law.

Plaintiffs' answer: Yes.

# CONTROLLING AUTHORITIES

## Federal Cases

*AM Int'l, Inc. v. Int'l Forging Equip. Corp.*, 982 F.2d 989, 994 (6th Cir. 1993)

## Federal Statutes

17 U.S.C. § 115

## Legislative History

Pub. L. No. 104-39, 109 Stat. 336, S. Rep. 104-20

I.  **INTRODUCTION**

Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (collectively, "Plaintiffs") move the Court to rule as a matter of law that a "Mechanical Royalties Clause" or so-called "Controlled Composition Clause," may not grant a Digital Phonorecord Delivery Licenses, at least where such a clause provides that the license it purports to grant would be at a rate below the minimum rate set by United States Copyright Law.

II. **STATEMENT OF FACTS**

   a. **The "Mechanical Royalties" Paragraph of the 1998 and 2003 Recording Agreements**

Both the 1998 and 2003 Recording Agreements at issue in this case contain a provision titled "Mechanical Royalties," which Defendants contend grants them the Digital Phonorecord Delivery ("DPD") licenses Plaintiffs allege they have not obtained in this case. These clauses are colloquially known as "Controlled Composition" Clauses. In the 1998 Agreement, that section reads as follows:

> All Controlled Compositions (i.e., songs written or controlled, directly or indirectly, in whole or in part, by F.B.T., Artist, any affiliated company of F.B.T., Artist, any producer or any affiliated company of any producer) will be licensed to Aftermath and its distributors/licensees and Aftermath and its distributors'/licensees' Canadian licensee for the U.S. and Canada, respectively, at a rate equal to 75% (the "Controlled Rate") of the minimum statutory rate (*i.e.*, without regard to the so-called "long-song formula") which is in effect in the applicable country upon the date the earlier of the actual delivery date of such master or the date such master was supposed to be delivered in accordance with the agreement.

The purpose of the "Mechanical Royalties" clause is to allow Aftermath a method through which to obtain mechanical licenses for compositions embodied in sound recordings delivered under the contract at a reduced rate. At its inception, the 1998 Agreement provided for

a "Controlled Rate" equal to only 75% of the minimum statutory rate. While that rate scaled up on some later albums, and eventually reached 100% of the statutory minimum in the renegotiated 2003 Agreement, the "Mechanical Royalties" clause also provides for other reductions in the minimum rate.

For example, the clause states that the "long song formula," which provides for increased royalties for any song of more than five minutes in length, does not apply. Under the "long song" formula, the royalty for a song six minutes in length licensed today would be 10.5 cents (1.75 cents per minute), but under the reduction in this paragraph, the royalty would be only 9.1 cents. In addition, the "Controlled Rate" is fixed as of the earlier of the date the sound recording embodying the composition in question was delivered or scheduled to be delivered. Thus, under this restriction, Aftermath would continue paying the 8 cents per reproduction rate on any a song included on *The Eminem Show* based on its release date in 2002, as opposed to today's 9.1 cent rate. Finally, both agreements set a "cap" on mechanical royalties paid for the reproduction of an LP, paying as though it contained only 10, 11, or 12 compositions each, as opposed to the number actually on the album - 20, on both *The Eminem Show* and *Encore*, for example. All of these concessions serve to reduce the amount of royalties a composition owner would get in absence of such an agreement.

### III. ARGUMENT

#### a. "Controlled Composition Clauses" are Inapplicable to Digital Phonorecord Deliveries

Plaintiffs maintain the "Mechanical Royalties" paragraphs in the 1998 and 2003 Agreements do not even purport to grant the rights or permissions necessary under copyright law to reproduce and distribute musical compositions but merely sets a reduced royalty rate at which

2

such mechanical licenses can be obtained by Aftermath "and its distributors/licensees," sometime in the future. However, even if this provision did grant licenses in some configurations (e.g., compact discs), as a matter of law, it could not grant such licenses for DPDs.

When the 1998 Agreement was entered into, DPD commerce did not exist as it now exists, notwithstanding the passage of the 1995 Digital Performance Rights in Sound Recordings Act ("Digital Rights Act"). 66 F.R. 4099-14103, Vol. 66 No. 47 (Mar. 9, 2001). Apple did not launch its iTunes Store until sometime in 2003, and when the 2003 Agreement was executed, Plaintiffs had not even heard of iTunes.

When the 1995 Digital Rights Act was passed, Section 115 of the Copyright Act was amended to provide that while DPDs were subject to compulsory licensing at the statutory rate, any contract made after June 22, 1995 could not reduce the mechanical rate on DPDs. 17 U.S.C. § 115(c)(3)(E)(i). In other words, Aftermath's prospective controlled composition clauses in the 1998 and 2003 Agreements that permanently fixed a 75% reduction in the statutory rate and caps on the number of compositions upon which mechanical royalties would be paid once a mechanical license was issued were made inapplicable to DPDs by Congress. *Id.*

Indeed, it was the specific intent of the Senate in amending Section 115 to address digital transmissions that controlled composition clauses (similar to the "Mechanical Royalties" paragraphs herein), did not govern DPDs, explaining the amended Section 115(c)(3)(E)(i) as follows:

> There is a situation in which the provisions of voluntarily negotiated license agreements should not be given effect in lieu of any mechanical royalty rates determined by the Librarian of Congress. For some time, music publishers have expressed concerns about so-called 'controlled composition' clauses in recording contracts. Generally speaking, controlled composition clauses are provisions whereby a recording artist who is the author of a non-dramatic musical work agrees to reduce the mechanical royalty rate

3

> payable when a record company makes and distributes phonorecords which include recordings of such artist's compositions. Subject to the exceptions set forth in subparagraph (E)(ii), **the second sentence of subparagraph (E)(i) is intended to make these controlled composition clauses inapplicable to digital phonorecord deliveries.**

Pub. L. No. 104-39, 109 Stat. 336, S. Rep. 104-208 at 41 (emphasis added).

Congress specifically stated that its intention in enacting the amendment discussed above was not just to ensure that a musical artist would receive the statutory minimum rate for DPDs but to make such clauses "*inapplicable*" to digital phonorecord deliveries. The legislative history goes on to state that the statutory minimum rates "are to be given effect in lieu of any contrary rates specified in a contract pursuant to which a recording artist who is the author of a nondramatic musical work grants a mechanical license in that work to a record company," which Defendants argued means that "controlled composition clauses" remain applicable, but with rates different than those specified in the contract. However, this later language says nothing about whether a "controlled composition clause" as a whole remains valid, and the reading urged by Defendants would put the two sentences in direct conflict. As with statutory language, the Court should not read legislative history to create internal inconsistency. *See, e.g, AM Int'l, Inc. v. Int'l Forging Equip. Corp.*, 982 F.2d 989, 994 (6th Cir. 1993) (interpretation that allows two sentences to be read as "internally consistent" is "more palatable and consistent").

Thus, not only does the "Mechanical Royalties" section not even purport to grant a license by it express terms, but the only provision it makes with respect to licenses is that they "will" be entered into at a reduced rate, which is precisely what Congress enacted § 115(c)(3)(E)(i) to preclude. As such, as a matter of law, the "Mechanical Royalties" provision in the 1998 and 2003 Agreements is absolutely inapplicable, and Defendants cannot claim they

4

had DPD licenses in Plaintiffs' Provision as a result of that provision.

### IV. CONCLUSION

For the reasons discussed above, the "Mechanical Royalties" section is, as a matter of law, "inapplicable" to permanent downloads.

Dated: September 14, 2009                                  Respectfully submitted,

/s/ Richard S. Busch
Howard Hertz (P26653)                                      Richard S. Busch (TN BPR#14594)
Jay G. Yasso (P45484)                                      King & Ballow
Hertz Schram PC                                            1100 Union Street Plaza
1760 South Telegraph Road, #300                            315 Union Street
Bloomfield Hills, MI 48302                                 Nashville, TN 37201
(248) 335-5000                                             (615) 259-3456
hhertz@hertzschram.com                                     rbusch@kingballow.com
Attorneys for Plaintiffs                                   Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via the Court's Electronic Filing System:

| Counsel | On behalf of |
| --- | --- |
| Daniel D. Quick, Esq.<br>Dickinson Wright PLLC<br>38525 Woodward Ave<br>Suite 2000<br>Bloomfield Hills, MI 48304<br>(t): (248) 433-7200<br>(e): dquick@dickinsonwright.com<br><br>Kelly M. Klaus, Esq.<br>Munger, Tolles & Olson LLP<br>355 South Grand Ave<br>Suite 3500<br>Los Angeles, CA  90071-1560<br>(t): (213) 683-9238<br>(e): kelly.klaus@mto.com | Apple Computer, Inc. and Aftermath Records d/b/a Aftermath Entertainment |

this 14th day of September 2009.

s/ Richard S. Busch