UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC, and MARTIN
AFFILIATED, LLC,

    Plaintiffs,

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT

    Defendant.

Case No. 2:07-cv-13164
Hon. Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

| Howard Hertz, Esq. (P26653) | Richard S. Busch (TN BPR#14594) |
| Jay G. Yasso, Esq. (P45484) | King & Ballow |
| Hertz Schram PC | 1100 Union Street Plaza |
| 1760 S. Telegraph Rd., Suite 300 | 315 Union Street |
| Bloomfield Hills, MI 48302 | Nashville, TN 37201 |
| (248) 335-5000 | (615) 259-3456 |
| hhertz@hertzschram.com | rbusch@kingballow.com |
| jyasso@hertzschram.com | Attorneys for Plaintiffs |
| Attorneys for Plaintiffs | |

**PLAINTIFFS' MOTION *IN LIMINE* No. 3 TO EXCLUDE TESTMIONY OF
DEFENDANTS' WITNESSES AS TO THEIR UNDERSTANDING OF THE MEANING
OF THE 1998 AND 2003 RECORDING AGREEMENTS**

# CONCISE STATEMENT OF ISSUES PRESENTED

Whether the Court should exclude any testimony from Defendants' witnesses as to their unexpressed understanding of the meaning of the 1998 and 2003 Recording Agreements, which under California law is irrelevant to the interpretation of the contracts in question.

Plaintiffs' answer: Yes.

# CONTROLLING AUTHORITIES

## Cases

*Alex Robertson Co. v. Imperial Casualty & Indemnity Co.*, 8 Cal. App. 4th 338 (1992).

*Am. Star Ins. Co. v. Ins. Co. of the W.*, 232 Cal. App. 3d 1320 (Cal. App. 4th Dist. 1991)

*Berman v. Bromberg*, 56 Cal. App. 4th 936 (1997)

*General Motors v. Superior Court*, 12 Cal. App. 4th 435 (1993)

*Houghton v. Kerr Glass Mfg. Corp.*, 261 Cal. App. 2d 530 (1968).

*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*, 69 Cal. 2d 33 (Cal. 1968)

*Reigelsperger v. Siller*, 40 Cal. 4th 574 (2007)

*Ribiero v. Dotson*, 187 Cal. App. 2d 819 (1960)

*Shaw v. Regents of University of California*, 58 Cal. App. 4th 44 (Cal. App. 3d Dist. 1997)

*Weisenburg v. Thomas*, 9 Cal. App. 3d 961 (Cal. App. 1st Dist. 1970)

## Statutes

Cal. Civ. Code §§ 1636, 1637, 1638, 1644

## I. INTRODUCTION

Plaintiffs Eight Mile Style, LLC and Martin Affiliated, LLC (collectively, "Plaintiffs") move the Court to exclude the testimony of Defendants' witnesses as to their unexpressed understanding of the meaning of the 1998 and 2003 Recording Agreements. Any such testimony is irrelevant under California law, which governs the interpretation of these two contracts, but Defendants have indicated by their deposition designations that they intend to offer this inadmissible testimony of at least some of their witnesses. All four of the witnesses described below admitted in deposition that while they were involved with negotiating one or both of the Recording Agreements, they had no recollection of any conversations with representatives of F.B.T. Productions or Eminem regarding the wording, meaning or prospective application of the "Mechanical Royalties" paragraph, yet they also testified as to their unexpressed understanding and opinion about that paragraph's application.

## II. STATEMENT OF FACTS

One aspect of this copyright infringement case revolves around the interpretation of a portion of one section of the 1998 and 2003 recording agreements among Eminem, F.B.T. Productions (Eminem's production company), and Defendant Aftermath (the "Recording Agreements"). Defendants allege the "Mechanical Royalties" provision in those contracts grants them Digital Phonorecord Delivery ("DPD") licenses in Plaintiffs' Compositions, while Plaintiffs argue it does not. The Recording Agreements state that California law governs their interpretation.

During the discovery, Plaintiffs deposed four individuals employed by Aftermath or its owner Interscope Records: Peter Paterno, Aftermath's outside counsel, who oversaw the drafting

of the 1998 Agreement and whose form that agreement was based on; Marnie Nieves, Mr. Paterno's associate who helped draft the 1998 Agreement; Rand Hoffman, head of business and legal affairs for Interscope Records, who oversaw the drafting of the 2003 Agreement, and Lisa Rogell, an attorney in Interscope's business and legal affairs department who helped draft the 2003 Agreement. In deposition, each of these individuals testified that they did not recall any conversations with Plaintiffs or with Eminem's representatives regarding the meaning or intent behind the portion of the "Mechanical Royalties" provision at issue, but each also offered their opinions about what that provision means.

      **a. Testimony of Peter Paterno**

As Aftermath's outside counsel, Mr. Paterno oversaw the drafting and negotiation of the 1998 Agreement, assisted by his associate, Marnie Nieves. Guilford Decl. Ex. A, Deposition of Peter Paterno dated April 30, 2008 ("Paterno Dep.") at 31:11-32:10, 82:13-83:25. Mr. Paterno acknowledges the 1998 Agreement was based on a form he drafted, but does not specifically recall any conversations with the representatives of F.B.T. who negotiated the agreement regarding the "Mechanical Royalties" paragraph. *Id.* at 112:11-113:10.

Despite not recalling any discussions of the paragraph at issue, in deposition Mr. Paterno went on to offer *his* opinions about what he understood the "Mechanical Royalties" section to mean. Mr. Paterno testified he "didn't think" the language of the "Mechanical Royalties" paragraph required a separate license, but when asked for the basis of this opinion offered that he was "just saying in general." *Id.* at 72:22-73:11. Mr. Paterno also testified, for example, that he "doubted" there were any discussions about the "Mechanical Royalties" language used in the 1998 Agreement, but also opined that he saw no difference in its wording, when compared to

another contract that had different language. *Id.* at 112:11-114:17. Mr. Paterno's testimony concerning the meaning of this language was based solely on his experience working in the music business "for 30 years" and his impression of what others in the business "thinks" it means.[1] *Id.* at 114:19-115:18.

### b. Testimony of Marnie Nieves

In 1998, Marnie Nieves was an associate at Mr. Paterno's firm and assisted him in negotiating the 1998 Agreement. Guilford Decl. Ex. B, Deposition of Marnie Nieves ("Nieves Dep.") at 40:11-19. Ms. Nieves later left Paterno's firm and had no involvement in negotiating the 2003 Agreement. *Id.* at 18:10-16. In her deposition, Ms. Nieves testified she did not recall the specifics of any conversations she had with F.B.T.'s representatives in the course of negotiating the 1998 Agreement. Nieves Dep. at 15:21-16:18. She recalled nothing except that she had some conversations and transmitted some documents back and forth; nothing more. *Id.* at 17:5-9. She recalls nothing about conversations regarding the controlled composition clause. *Id.* 20:12-19, 44:4-18.

Despite this void in her recollection, Ms. Nieves went on give her understanding of the meaning and operation of the "Mechanical Royalties" paragraph in the 1998 Agreement, maintaining its operation "is the same" as in clauses with different wording, and stating she believed the provision in question applied to "the distribution of records," despite not knowing if it even contemplated permanent downloads. *Id.* at 109:8-19, 110:8-111:4. Defendants have designated precisely these portions of Ms. Nieves testimony, indicating they intend to play them for the Court at trial. Doc. No. 136 at 197.

---

[1] Defendants have designated Mr. Paterno as an expert witness on this subject as well. Plaintiffs are separately moving to exclude Mr. Paterno's "expert" opinion as unqualified, among other reasons.

3

### c. Testimony of Rand Hoffman-

Mr. Hoffman began working for Interscope in early 1999, after the 1998 Agreement was signed, and had no involvement with the drafting and negotiation of that agreement. Guilford Decl. Ex. C, Deposition of Rand Hoffman dated May 28, 2008 ("Hoffman Dep.") at 21:25-22:6, 29:5-9. Mr. Hoffman was, however, one of the primary negotiators of the 2003 Agreement, along with Lisa Rogell. *Id.* at 46:23-47:2. Ms. Rogell "did the drafting" and Mr. Hoffman "reviewed the drafts." *Id.* at 51:3-7. Although Mr. Hoffman testified that he had some conversations with F.B.T. and Eminem's representatives, he did not recall any conversations about the meaning of the language that is key to this case, "will be licensed to Aftermath and its distributors/licensees," nor was he involved in any way drafting that clause. *Id.* at 51:8-13, 112:7-21. Mr. Hoffman also testified that his entire understanding of the clause was based on having "seen many controlled composition clauses" and "knowing" Mr. Paterno and the representatives of Plaintiffs. *Id.* at 112:23-114:25.

Elsewhere in his deposition, Mr. Hoffman testified as to his unexpressed understanding of this provision. For example, he testified as to his impression of what the language of the "Mechanical Royalties" paragraph "seems to say," *id.* at 107:25-108:1, and his opinion regarding the language of the paragraph in the 1998 Agreement versus the language used in other agreements. *Id.* at 110:14-22. Despite not recalling *any* conversations on this subject, Mr. Hoffman also offered his opinion that the parties "contemplated" that permanent downloads would be covered by the "Mechanical Royalties" provision, basing this on what "everybody in 1998 was familiar with." *Id.* at 192:17-193:7. Defendants have not designated any of Mr. Hoffman's deposition testimony for use at trial, presumably because they have listed him as a

4

witness they intend to call in person at trial. Doc. No. 136 at 43-44.

### d. Testimony of Lisa Rogell

Lisa Rogell was an attorney at Interscope Records who worked with Mr. Hoffman in drafting the 2003 Agreement. Guilford Decl. Ex. D, Deposition of Lisa Rogell ("Rogell Dep.") at 123:7-24. Ms. Rogell testified she did not recall any discussion about the wording of the portion of the "Mechanical Royalties" paragraph described above and does not recall who suggested the language that made its way into the agreement. Rogell Dep. at 70:14-71:2.

Like the other witnesses described above, despite recalling no conversations with F.B.T.'s representatives concerning the language of the "Mechanical Royalties" provision, or its prospective application, Ms. Rogell offered her opinion about its meaning and effect. For example, Ms. Rogell testified she "thought" the provision was "self-effectuating" (i.e., did not require that subsequent licenses be entered into between the parties). Rogell Dep. at 66:20-68:15.

## III. ARGUMENT

Under California law and statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Cal. Civ. Code, § 1636 (2009). This is first ascertained from the contract and the 'clear and explicit' meaning of contract provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation. *Id.*, §§ 1636-38, 1644. "Where the language of a contract is clear and not absurd, it will be followed," and the Court goes no further than that language. Cal. Civ. Code § 1638; *Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 53 (Cal. App. 3d Dist. 1997). Extrinsic

5

evidence is not admissible if it is offered to prove a meaning to which the language of the contract is not "reasonably susceptible." *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*, 69 Cal. 2d 33, 37 (Cal. 1968). Thus, extrinsic evidence offered in an attempt to depart from the unambiguous language of a contract is not admissible. *Weisenburg v. Thomas*, 9 Cal. App. 3d 961, 965 (Cal. App. 1st Dist. 1970) (trial court committed reversible error in admitting extrinsic evidence "that varied or contradicted the terms of the written contracts" and then basing material findings of fact on such improperly admitted evidence); *see also Am. Star Ins. Co. v. Ins. Co. of the W.*, 232 Cal. App. 3d 1320, 1331 (Cal. App. 4th Dist. 1991) (evidence of intent unavailing against the plain language of a contract).

It is black letter law that a contracting party's undisclosed, subjective intent, such as that testified to by all four witnesses described above, is irrelevant to and therefore inadmissible to prove the objective meaning of that contract's terms. *See, e.g., Reigelsperger v. Siller*, 40 Cal. 4th 574, 579-80 (2007) (California Supreme Court held that a party's intention as to whether or not they would seek further services under a contract was irrelevant, inadmissible, and could not be considered as evidence to relieve their contractual obligation to submit to the arbitration terms in the contract) *General Motors v. Superior Court*, 12 Cal. App. 4th 435, 442 (1993); *Berman v. Bromberg*, 56 Cal. App. 4th 936, 948 (1997); *Houghton v. Kerr Glass Mfg. Corp.*, 261 Cal. App. 2d 530, 537 (1968). The subjective, unexpressed intent of a party is immaterial to a contract's meaning and therefore "entirely inadmissible to show the meaning of the contract." *Ribiero v. Dotson*, 187 Cal. App. 2d 819, 821 (1960); *see also Alex Robertson Co. v. Imperial Casualty & Indemnity Co.*, 8 Cal. App. 4th 338, 346 (1992). Under California law, "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their

unexpressed intentions or understanding." *Reigelsperger*,, 40 Cal. 4th at 579-80 *(citing* 1 Witkin, Summary of Cal. Law (10th ed. 2005 Contracts § 116, p. 155)).To the extent that at the time the Recording Agreements were signed any of these witnesses had such subjective unexpressed intent or understanding with respect to the Mechanical Royalties paragraph as set forth in their deposition, such "intent" or "understanding" was uncommunicated and immaterial to the contract's meaning.

Each of the four witnesses identified above testified they had no recollections of any conversations concerning the "Mechanical Royalties" paragraph, specifically the portion at issue herein. Each witness's alleged understanding of that clause is thus wholly irrelevant to the Court's interpretation of that provision and should be excluded as a matter of law.

### IV. CONCLUSION

For the reasons described above, the Court should grant Plaintiffs' motion and exclude the testimony of Ms. Nieves, Ms. Rogell, Mr. Hoffman and Mr. Paterno as to their unexpressed understanding of the meaning of the "Mechanical Royalties" provision of the 1998 and 2003 Recording Agreements.

Dated: September 14, 2009           Respectfully submitted,

                                    /s/ Richard S. Busch
Howard Hertz (P26653)               Richard S. Busch (TN BPR#14594)
Jay G. Yasso (P45484)               King & Ballow
Hertz Schram PC                     1100 Union Street Plaza
1760 South Telegraph Road, #300     315 Union Street
Bloomfield Hills, MI 48302          Nashville, TN 37201
(248) 335-5000                      (615) 259-3456
hhertz@hertzschram.com              rbusch@kingballow.com
Attorneys for Plaintiffs            Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via the Court's Electronic Filing System:

| Counsel | On behalf of |
| --- | --- |
| Daniel D. Quick, Esq.<br>Dickinson Wright PLLC<br>38525 Woodward Ave<br>Suite 2000<br>Bloomfield Hills, MI 48304<br>(t): (248) 433-7200<br>(e): dquick@dickinsonwright.com<br><br>Kelly M. Klaus, Esq.<br>Munger, Tolles & Olson LLP<br>355 South Grand Ave<br>Suite 3500<br>Los Angeles, CA  90071-1560<br>(t): (213) 683-9238<br>(e): kelly.klaus@mto.com | Apple Computer, Inc. and Aftermath Records d/b/a Aftermath Entertainment |

this 14th day of September 2009.

                                                  s/ Richard S. Busch