UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

**DEFENDANT AFTERMATH RECORDS AND DEFENDANT APPLE INC.'S
MOTION IN LIMINE NO. 1: TO EXCLUDE TESTIMONY OF LAW PROFESSOR
HOWARD B. ABRAMS**

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Glenn D. Pomerantz
Kelly M. Klaus
Melinda E. LeMoine
Munger, Tolles & Olson LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9100
glenn.pomerantz@mto.com; kelly.klaus@mto.com;
melinda.lemoine@mto.com

Attorneys for Defendants

8791160.1

# MOTION IN LIMINE NO. 1: TO EXCLUDE TESTIMONY OF LAW PROFESSOR HOWARD B. ABRAMS

Defendants move *in limine* to exclude the testimony of Plaintiffs' purported expert, Howard B. Abrams, a law professor, on the grounds that (1) Plaintiffs propose to elicit improper testimony from Prof. Abrams concerning his *opinions about the law*; (2) Prof. Abrams has *no* relevant expertise in any issue of music industry "custom or practice" that is relevant to any issue at trial; and (3) Plaintiffs propose to have Prof. Abrams offer legal opinions concerning an issue that was resolved adverse to Plaintiffs and/or their privies in their parallel trial against Aftermath in the Central District of California, and Plaintiffs are therefore collaterally estopped to contest that issue in this Court.

Pursuant to Local Rule 7.1, consent to this motion was sought but not obtained.

WHEREFORE, Defendants respectfully request that this Court grant their Motion.

                                                    <u>s/Melinda E. LeMoine</u>

                                                    Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Glenn D. Pomerantz
Kelly M. Klaus
Melinda E. LeMoine
Munger, Tolles & Olson LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9100
glenn.pomerantz@mto.com;
kelly.klaus@mto.com;
melindalemoine@mto.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 1: TO EXCLUDE TESTIMONY OF LAW PROFESSOR HOWARD B. ABRAMS**

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Glenn D. Pomerantz
Kelly M. Klaus
Melinda E. LeMoine
Munger, Tolles & Olson LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9100
glenn.pomerantz@mto.com; kelly.klaus@mto.com;
melinda.lemoine@mto.com

Attorneys for Defendants

8791160.1

# CONTROLLING AUTHORITIES

**Cases**

*Daubert* v. *Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993)

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999)

*Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977)

*Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 919 (6th Cir. 1991)

*N.A.A.C.P. v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)

*Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 547 (6th Cir. 2008)

*North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997)

*TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549-50 (6th Cir. 1981)

*United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984)

**Statutes**
17 U.S.C. § 115(c)(3)(A)
17 U.S.C. § 115(c)(3)(E)(i)

## I. INTRODUCTION

Defendants move *in limine* to exclude the testimony of Plaintiffs' purported expert, Howard B. Abrams, a law professor. All of Prof. Abrams' "opinions" are inadmissible because they are legal opinion testimony, because they have no foundation, and/or because they are irrelevant. For example, Plaintiffs want Prof. Abrams to testify that the controlled composition clauses in issue are not "self-effectuating," but instead require the signing of separate licenses. Prof. Abrams' "opinions" in this regard are based on his views about grammar, not about music industry custom or practice. He says the contract requires a future license because of the tense of the verbs. The Court does not need a law professor to read a contract and say what he thinks it means. The Court likewise does not need a law professor to tell it how to construe a federal statute, which Prof. Abrams also purports to do.

Plaintiffs incorrectly assert that Prof. Abrams is offering "opinions" on music industry "custom or practice." But Prof. Abrams has no foundation for the "customs or practices" that are in issue here. His testimony should be excluded in its entirety.

## II. BACKGROUND

### A. The Controlled Composition Clauses At Issue In This Case

Prof. Abrams' opinions all relate to the "controlled composition" clauses that are found in two agreements involving Eminem and Plaintiffs' affiliated company, F.B.T. Productions. One agreement is from 1998; the other is from 2003. As the Court recalls from summary judgment and other briefing in the case, these provisions (entitled "Mechanical Royalties") provide:

> *All Controlled Compositions (i.e., songs written or controlled, directly or indirectly, in whole or in part, by F.B.T., Artist [Eminem], any affiliated company of F.B.T., Artist, any producer or any affiliated company of any producer) will be licensed to Aftermath and its distributors/licensees* and Aftermath and its

1

distributors'/licensees' Canadian licensee for the U.S. and Canada, respectively, at a rate equal to 75% (the "Controlled Rate") of the minimum statutory rate (i.e., without regard to the so-called "long-song formula").[1]

One of Plaintiffs' legal theories in the case is that the controlled composition clauses in the Eminem agreements are not "self-effectuating," because they say that compositions "will be licensed," rather than that the compositions "are licensed."  Defendants contend that the foregoing language grants the necessary license rights in dispute here, and that in no event can the phrase "will be licensed" be contorted to mean "will *not* license."

### B. Prof. Abrams And His "Opinions" Regarding The Controlled Composition Clause

Prof. Abrams has been a law professor at the University of Detroit Mercy School of Law since 1977.  During that time, Prof. Abrams' "experience" in the music industry has consisted of working on drafting "[t]wo or three" artist agreements; meeting on occasion with students whose "brother or sister or cousin or boyfriend or girlfriend … is in a band" and explaining general facts about copyright to them "in the school cafeteria"; teaching courses on copyright law and entertainment law; speaking on panels; and on occasion representing individuals (including Plaintiffs' manager/owner, Joel Martin) in connection with legal disputes.  Ex. 1 (Abrams Depo. Tr. at 6-18).  One of the matters in which Prof. Abrams provided counsel to a musical group ("The Verve Pipe") involved an issue concerning a "controlled composition" clause, but that issue concerned the *rate* to be paid for controlled compositions, not whether the clause was (in Prof. Abrams' words) "self-effectuating."  Prof. Abrams testified that he could not remember

---

[1] This language is in the 1998 Agreement.  The 2003 Agreement contains the same language regarding the grant of license, but increases the Controlled Rate and removes the reference to F.B.T.  "F.B.T." is F.B.T. Productions, LLC, owned by Jeff and Mark Bass, who also own Eight Mile Style.  Martin Affiliated is owned by Joel Martin, who is Eight Mile's manager.  F.B.T. was party to the 1998 Agreement; Jeff Bass (for F.B.T.) and Joel Martin signed the 2003 Agreement.

2

whether the controlled composition clause in that case used words like "will [be] license[d]" or "is hereby licensed." *Id*. at 20-21.[2] Prior to becoming a law professor, Prof. Abrams negotiated artist agreements in private practice. But he was unable to say whether any of those agreements used language similar to "will [be] license[d]" or "is hereby licensed," which are the subject of his opinions in this case. *Id*. at 30-32.[3]

Plaintiffs retained Prof. Abrams to testify as an expert in this case on about July 31, 2008. Expert disclosures were due less than two weeks later, on August 12. Between July 31 and August 10, Prof. Abrams recorded a total of two hours, during which he said he talked to Plaintiffs and their lawyers, and looked at some documents. Ex. 2 (Prof. Abram's Statement of Services); Ex. 1 (Abrams Depo. Tr. at 41:21-44:20). Prof. Abrams did not even start "working" on his report until August 11, the day before his report was due. Prof. Abrams did not even prepare the initial draft of his report. Plaintiffs' counsel drafted it for him. Ex. 1 (Abrams Depo. Tr. at 46:6-18 ("all of a sudden I found out that the expert report was like due, you know, tomorrow or the next day"). Prof. Abrams did not even read some of the deposition testimony that he purports to comment on until after he had signed his report. *Id*. at 60-61.

### III. ARGUMENT

#### A. "Expert" Testimony On The Law Is Inadmissible

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), requires this Court to act as a "gatekeeper" before putative expert testimony may be admitted. Regardless of whether the

---

[2] Prof. Abrams testified that he also represented a music producer in connection with negotiating a contract that "implicate[d] a possible future" controlled composition clause, but the issues in that representation had nothing to do with the issues here. Ex. 1 (Abrams Depo. Tr. at 28-29).

[3] In his Report, and at his deposition, Prof. Abrams used the words "will license" in referring to the controlled composition clauses in this case. In fact, the clauses say "will be licensed."

3

8791160.1

testimony is "scientific," the Court must ensure that the expert's reasoning and methodology are valid, and that they can be applied to the facts in issue. *Id*. at 592-93; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending *Daubert* to all forms of expert testimony, whether or not such testimony is "scientific").

An expert may *not* testify on the law. There is one expert on the law: the Court. The Sixth Circuit has made it clear that the Court must exclude testimony on the law. *See, e.g.*, *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) ("Expert testimony on the law is excluded because the trial judge does not need the judgment of witnesses. … It is the function of the trial judge to determine the law of the case."); *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 919 (6th Cir. 1991) ("This Court has repeatedly held that it is impermissible for a trial judge to delegate his duty to determine the law of a case to an expert."). This principle applies not only to statutes and regulations, but also to contract interpretation. Where extrinsic evidence is considered, an expert with actual experience with the "customs or practices" of the relevant industry may have admissible opinion testimony. An expert may *not*, however, simply purport to read the language of a contract and tell the fact-finder what that language means. *See, e.g.*, *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549-50 (6th Cir. 1981) ("Absent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible."); *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997) (same). *Accord Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977).

B.     **Prof. Abrams' Opinions Are Inadmissible And Must Be Excluded**

Prof. Abrams' "opinions" are contained in six numbered paragraphs covering two-and-a-half pages of his report. Ex. 3 (Abrams Expert Report at 2-5). None is admissible.

### 1. Opinion Paragraph 1: Prof. Abrams' Opinion That The Controlled Composition Clause Is Not "Self-Effectuating" Is Based Only On Prof. Abrams' Reading Of The Contractual Language

Prof. Abrams first opines that the controlled composition clause in each of the 1998 and 2003 agreements "is not a 'self-effectuating' controlled composition clause as that term is known and understood within the music industry, and under copyright." Ex. 3 (Abrams Expert Report at 2-3 ¶ 1). This is so, Prof. Abrams claims, because "[s]elf-effectuating controlled composition clauses will say that the controlled compositions are "hereby" licensed[.]" *Id*. "[A]s a result," Prof. Abrams opines, the controlled composition clause in each of the Eminem agreements "clearly contemplates the signing of a separate license that would presumably contain the terms generally found within mechanical licenses." *Id*.

This "opinion" is based on nothing more than Prof. Abrams' reading of the contractual language. Prof. Abrams made this clear at his deposition:

> Q. What is your basis for your understanding of what the words "will [be] license[d]" mean in paragraph 6(a) of the 1998 contract?
>
> A. ***That because will is future tense, it's something they will do in the future***.

Ex. 1 (Abrams Depo. Tr. at 72:12-16) (emphasis added).

Hence, Prof. Abrams does not bring any expertise or background to construing the words "will be licensed" in the agreements other than his view of what the sentence says as a matter of grammar. That is not testimony about music industry "custom or practice." It is proffered testimony about Prof. Abrams' view of English. As such, it is inadmissible. *See TCP Indus.*, 661 F.2d at 549-50 ("Absent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible.").

Prof. Abrams does not rehabilitate this opinion with the statement that a "'self-effectuating' controlled composition clause" is a term that is "known and understood within the music industry, and under copyright." Ex. 3 (Abrams Expert Report at 3 ¶ 1). Prof. Abrams testified that he put the term "self-effectuating" in quotation marks in his Report because he had read it in the transcripts of depositions in this case. He had no recollection of hearing the term used to describe controlled composition clauses; Prof. Abrams never used it in any of his writings; and he was unaware of ever reading it in any publication describing anything in the copyright business. Ex. 1 (Abrams Depo. Tr. at 84:25-87:8). Prof. Abrams ultimately offered (once again) only his *own* opinions about grammatical usage to describe what a "self-effectuating" controlled composition clause purportedly would say. *Id*. at 87:15-19 ("Well, for a clause to be self-effectuating or to use a couple of synonyms, self-fulfilling, self-enforcing, you would say something like 'I hereby license' or 'I license.' You would not say 'I will license.' You would not put it in the future tense."). This is not expert testimony about "custom or practice," or anything else that is conceivably admissible. It must be excluded.

2. **Opinion Paragraph 2: Prof. Abrams' Opinion That "Under The Copyright Law," The Controlled Composition Clause "Does Not Apply To Permanent Downloads," Is Based On Prof. Abrams' Opinion About The Meaning Of A Federal Statute**

Prof. Abrams next opines that "there is no basis in either the 1998 or 2003 mechanical royalties section [*i.e.*, the controlled composition clause] for concluding that the grant of rights excuses the requirement of a separate digital download license." This is so, Prof. Abrams claims, because "[u]nder the copyright law, the reduced statutory rate contemplated within the section cannot, as a matter of law, be applied to permanent downloads, so the provision by its terms does not apply to permanent downloads." Ex. 3 (Abrams Expert Report at 3 ¶ 2). Prof.

Abrams is referring to a provision in the Copyright Act that fixes the mechanical royalty rates paid on "digital phonorecord deliveries." As relevant here, the statute provides that, in the case of digital phonorecord deliveries, the statutory rate applies "*in lieu of*" the rate established in the controlled composition clause. 17 U.S.C. § 115(c)(3)(E)(i).

It is Plaintiffs' position, based on a sentence from a Senate Report, that this provision makes controlled composition clauses *in their entirety* inapplicable to digital phonorecord deliveries. Defendants' position is that the statutory language, as well as the sentence in the Senate Report that follows the sentence Plaintiffs rely on, make it clear that the statute changes only *the rate*, and not the grant of license. Which of these views is correct is a matter of statutory construction. It is a legal question for the Court, not a matter of opinion for a law professor. Prof. Abrams made it clear at his deposition that he was basing his opinion in this regard on his reading of the statute and the legislative history:

> Q. What is the support for your position that the entire [controlled composition] clause is vitiated with respect to any digital products?
>
> MR. BUSCH: Asked and answered.
>
> THE WITNESS: The support is, again, the section of the statute [Section 115] and the portion of the Senate Report that I cited.

Ex. 1 (Abrams Depo. Tr. at 84:7-13).

This is legal opinion testimony, pure and simple, about how the Court should construe a federal statute. It is inadmissible and must be excluded.

### 3. Opinion Paragraph 3: Prof. Abrams' Opinion That "UMG Recognized" That The Controlled Composition Clause Is Based Only On Prof. Abrams' Reading Of Documents And Testimony, Not On Any Relevant Experience In The Music Industry

Prof. Abrams next opines that "UMG [UMG Recordings, Inc., part owner of the Aftermath joint venture] recognized this point [*i.e.*, that the controlled composition clause does not apply to permanent downloads]." Ex. 3 (Abrams Expert Report at 3 ¶ 3). This "opinion," however, is based entirely on Prof. Abrams' review of documents from the case, namely, the individual license concerning the composition, "Lose Yourself," and "correspondence where UMG sent other requests for permanent downloads in the same format." *Id*. Prof. Abrams states that UMG "would not have done that if they understood the mechanical royalties section to apply to permanent downloads." *Id*. This is not permissible expert testimony. It is not based on any "custom or practice" in the industry. It is simply Prof. Abrams reviewing evidence in the light most favorable to his client and urging the Court to draw an inference from it. Plaintiffs' counsel can do that in closing argument, but this is not admissible opinion testimony.

### 4. Opinion Paragraphs 4-6: Prof. Abrams Has No Foundation For His Opinion That Music Industry "Custom Or Practice" Shows That "A Separate License Would Be Required For Third Party Exploitation By Permanent Download"

As noted at the outset, the controlled composition clauses state that the compositions "will be licensed to Aftermath *and its distributors/licensees*." The italicized language presents an obvious problem for Plaintiffs. Although they claimed (through their affiliated LLCs) in the *F.B.T. v. Aftermath* case that Apple is a licensee, not a distributor, of Aftermath, the language of the controlled composition clause makes it clear that Apple's status in this regard is irrelevant. The compositions "will be licensed." The final three paragraphs of Prof. Abrams' report are

8791160.1

addressed to Plaintiffs' attempt to deal with this language. Prof. Abrams opines that the term "distributors/licensees" in the controlled composition clauses is "very important," purportedly because it "shows, under industry practice, and custom, that a separate license would be required for third party exploitation by permanent download." Ex. 3 (Abrams Expert Report at 3 ¶ 4). This is so, Prof. Abrams claims, because when a record label licenses a master recording to a third party for its own use, such as for "a compilation album," that "third party licensee must negotiate and obtain a separate mechanical license from the music publisher controlling the musical composition." *Id*. Prof. Abrams claims that the language of the controlled composition clauses supposedly shows "that F.B.T. has a right to enter into a direct license with licensees of UMG/Aftermath." *Id*. at 4 ¶ 5. Prof. Abrams then claims that the UMG-Apple agreement is a license to the master recordings — which is exactly the opposite of the final judgment in *F.B.T. v. Aftermath*, where this issue was litigated — and that the Plaintiffs here therefore have a "right" to have a direct license to Apple. *Id*. at 4-5 ¶ 6. These "opinions" are inadmissible for two reasons.

First, Prof. Abrams has no foundation for these opinions. Prof. Abrams testified that he derived his opinions about industry practice "[f]rom reading about it, from talking to people." Ex. 1 at 111:20. Prof. Abrams did not identify where he had "read[] about" these opinions.[4] As for "talking to people," Prof. Abrams did list several people that he talked to concerning this

---

[4] Prof. Abrams apparently did read not the Copyright Act, which expressly allows a license holder "to distribute *or authorize distribution of*" a licensed composition as a digital phonorecord delivery. 17 U.S.C. § 115(c)(3)(A) (emphasis added). Prof. Abrams also apparently did not read the expert report of Plaintiffs' other purported expert, Patrick Sullivan, who admitted in his report that the Copyright Act expressly authorizes the "pass through" of the record company's license to the distributor of digital phonorecord deliveries. According to Mr. Sullivan, this is the iTunes model." Ex. 4 (Sullivan Report at 14).

9

subject — but he talked to all of them in "two, three minute" conversations in "late July" or "early August" 2008, *i.e.*, **after he formed his "opinions" and submitted his report**. *Id.* at 118:2-20, 119:5-9. There is no foundation for Prof. Abrams' opinions, which are inadmissible.

The second fatal flaw in Prof. Abrams' opinions is that his "opinion" in Paragraph 6 — that UMG is licensing master recordings to Apple — is an issue that was fully and finally adjudicated *adverse* to Plaintiffs' privies (F.B.T. Productions and Em2M) in the *F.B.T. v. Aftermath* case in the Central District of California. The final judgment in that case, issued after a unanimous jury verdict, rules against the claim of Plaintiffs' privies that the distribution of sound recordings over iTunes involves the licensing of master recordings. Ex. 5 (Amended Final Judgment, *F.B.T. v. Aftermath*). That judgment meets all of the requirements for collateral estoppel. *N.A.A.C.P. v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987). And that judgment is binding not just on F.B.T. and Em2M, but also on Eight Mile Style and Martin Affiliated, which are in direct privity with them, *see* n.1, *supra*. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 547 (6th Cir. 2008). Plaintiffs may not attempt to re-litigate this issue in this case, and Prof. Abrams may not offer opinion testimony about it.

## IV. CONCLUSION

The Court should exclude Prof. Abrams' testimony.

| | |
|---|---|
| Daniel D. Quick (P48109)<br>Dickinson Wright PLLC<br>38525 Woodward Avenue, Suite 2000<br>Bloomfield Hills, MI 48304<br>(248) 433-7200<br><br>Attorneys for Defendants | s/ Melinda E. LeMoine<br>Glenn D. Pomerantz<br>Kelly M. Klaus<br>Melinda E. LeMoine<br>Munger, Tolles & Olson LLP<br>355 South Grand Avenue, Suite 3500<br>Los Angeles, CA 90071-1560<br>(213) 683-9100<br><br>Attorneys for Defendants |

10

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2009, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the all counsel.

                                          s/Melinda E. Lemoine
                                          Melinda E. LeMoine
                                          Munger, Tolles & Olson LLP
                                          355 South Grand Avenue, Suite 3500
                                          Los Angeles, CA 90071-1560
                                          (213) 683-9100
                                          melinda.lemoine@mto.com

                                          Attorneys for Defendants