UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**EIGHT MILE STYLE, LLC, and MARTIN AFFILIATED, LLC,**

      **Plaintiffs,**

vs.

**APPLE COMPUTER, INC. and AFTERMATH RECORDS d/b/a AFTERMATH ENTERTAINMENT**

      **Defendants.**

**Case No. 2:07-cv-13164**
**Hon. Anna Diggs Taylor**
**Magistrate Judge Donald A. Scheer**

| | |
|---|---|
| Howard Hertz, Esq. (P26653) <br> Jay G. Yasso, Esq. (P45484) <br> Hertz Schram PC <br> 1760 S. Telegraph Rd., Suite 300 <br> Bloomfield Hills, MI 48302 <br> (248) 335-5000 <br> hhertz@hertzschram.com <br> jyasso@hertzschram.com <br> Attorneys for Plaintiffs | Richard S. Busch  (TN BPR#14594) <br> King & Ballow <br> 1100 Union Street Plaza <br> 315 Union Street <br> Nashville, TN 37201 <br> (615) 259-3456 <br> rbusch@kingballow.com <br> Attorneys for Plaintiffs |

**Plaintiffs' Motion in Limine #5 to Exclude Unsigned Licenses, Licenses for Configurations Other than Permanent Download, and Licenses Issued to Third Parties**

**CONCISE STATEMENT OF ISSUES PRESENTED**

1) Whether the Court should exclude from evidence and rule inadmissible licenses which purport to grant permission to Defendants to reproduce Plaintiff's compositions in configurations other than permanent download?

    Plaintiffs' answer: Yes.

2) Whether the Court should exclude from evidence and rule inadmissible unsigned licenses and license requests?

    Plaintiffs' answer: Yes.

3) Whether the court should exclude from evidence and rule inadmissible licenses granted to third parties who are not related to Defendants in this case?

    Plaintiffs' answer: Yes

# CONTROLLING AUTHORITIES

## Cases

*Blossom v. R.R. Co.*, 70 U.S. 196 (1866)

*Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448 (9th Cir. 1996);

*Hogan Sys. v. Cybresource Int'l., Inc.*, 158 F.3d 319 (5th Cir. 1998)

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989)

## Other Authority

Restatement (Second) of Contracts § 50

## I. Introduction

Plaintiffs move the Court to exclude from evidence and rule inadmissible hundreds of licenses marked as exhibits by defendants which do not go to any issue in this case.

Discovery in this case originally closed on June 2, 2008, Doc. No. 46, but, beginning shortly after that date, Defendants produced hundreds of pages of additional exhibits, consisting of recording agreements with third parties and licenses for Plaintiffs' Compositions allegedly granted by third parties, then immediately moved for summary judgment based on these documents on July 16, 2008. *See* Doc. No. 53.

Defendants produced these documents – thousands of pages, all told, only as an afterthought, when they recognized the meritlessness of their argument that the Recording Agreements granted them the licenses they needed. Their production of these license documents continued through, most recently, June 2009, when they produced an additional 3,000 pages of such documents. Most of these documents are simply irrelevant and do not even purport to grant licenses in digital configurations.

Plaintiffs move to exclude from evidence licenses which fall into three broad categories: (1) licenses which purport to grant Defendants the right to produce and sell the composition in configurations other than permanent download, e.g. compact disc, cassette or LP, (2) licenses and "license requests" which are unsigned by one or both parties and are, thus, invalid contracts, (3) licenses which were issued to third parties, not defendants in this case.

The only issue in this case is whether defendants had valid licenses to reproduce 93 compositions owned or controlled, in whole or in part, by Plaintiffs for "permanent download" (PDL). Defendants have marked as exhibits hundreds of licenses which clearly and on their faces do not entitle defendants to reproduce the compositions at issue for PDLs. The

introduction of these documents into evidence is unnecessary, irrelevant and will waste the Court's time and needlessly complicate the record in this case.

## II. Defendants Produce Alleged Licenses After Discovery Closes

As referenced above, Defendants' production of the "licenses" that are subject of this motion came only after the initial close of discovery in June 2008 and continued through June 2009. First, in June and July 2008, Defendants produced several hundred pages of "licenses" and immediately moved for summary judgment based on those licenses, despite 1) Plaintiffs having no opportunity to depose any witness concerning those documents to ascertain their meaning and validity, and 2) the fact that many of those licenses did not even purport to grant DPD licenses on their face. *See* Doc. No. 74 at 24-25, Doc. No. 74-58, Sullivan Decl. Ex. 2; Doc. No. 80 at 7-9. The Court denied Defendants' motion for summary judgment on December 4, 2008 and reopened discovery for limited purposes, including for discovery concerning these documents. Doc. No. 117, Tr. at 50:5-21, 53:2-11; Doc. No. 118.

Later still, in June 2009, Defendants produced approximately 3,000 more pages of purported licenses of Plaintiffs' Compositions, the majority of which contain no reference to digital configurations and thus do not even purport to grant DPD licenses. Many other documents produced June-July 2008 and June 2009 are merely "license requests," letters sent to publishers *asking* them to grant the licenses in question and do not contain any grant from the publisher to Defendants. As described below, Defendants' exhibit list contains hundreds of these documents, despite the fact that they can have absolutely no relevance to this case.

**III.     Defendants' Exhibits Should be Excluded under Fed R. Evid. 402 and 403**

**A.     Licenses which authorize other configurations do not, by themselves, authorize Permanent Download**

Defendants' exhibit list contains hundreds of exhibits which purport to grant them licenses to reproduce Plaintiffs' Compositions in configurations other than PDL; however, no configuration other than permanent download is at issue in this case.

Licenses for configurations other than permanent download do not grant the authority to reproduce compositions for permanent downloads.  Copyright licenses are construed narrowly and assumed to prohibit any use not authorized.  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989); *see also Hogan Sys. v. Cybresource Int'l., Inc.*, 158 F.3d 319, 324 (5th Cir. 1998) (noting that copyright licenses are to be given a narrow reading).  Thus, even if valid, these licenses will not change Defendants' liability in this case.

Exhibits of this type can be subdivided into licenses issued by the Harry Fox Agency ("HFA") and those issued directly by other third party publishers.

**1.     Harry Fox licenses for compact disc, cassette and/or LP do not permit Defendants to reproduce Plaintiffs' compositions for digital download.**

Defendants have included on their exhibit list certain licenses granted by the Harry Fox Agency (HFA), the largest U.S. licensing agency for music publishers, on behalf of third party publishers which purport to authorize UMG Recordings, Inc. to reproduce Plaintiffs' Compositions in configurations other than PDL, namely compact disc, cassette and/or LP.  These licenses are in no way relevant to the issues of this case and should be excluded under Federal Rules of Evidence 402 and 403.

Typical of this class of licenses is Defendants' Exhibit 2487 (AFT 0063849-50), attached hereto as Exhibit A (under seal).  Exhibit 2487 is a license granted to Universal Music Corp. by

HFA on behalf of Music of Windswept for the composition entitled "Evil Deeds." Section C of the license clearly states the license is for CD. Again, on page 2 of the license, the configuration is clearly stated as "CD – Compact Disc." *Id*. The license makes no reference to PDLs or Permanent Downloads.

Defendants cannot contend these licenses grant them any right to reproduce Plaintiffs' Compositions as permanent downloads, since, as discussed above, licenses are strictly construed and are limited to the configurations listed therein. *S.O.S., Inc.; Hogan Sys., supra*. These licenses unambiguously do not grant Defendants the right to reproduce Plaintiffs' compositions for permanent download. Thus, this license, and licenses like it, have no relevance to the case at bar.

Attached hereto as Exhibit A-1 is a list of Harry Fox Agency Licenses organized by the exhibit number given them in Defendants' exhibit list which, like the above, authorize reproduction in configurations other than PDL. Plaintiffs move to exclude this group of Defendants' exhibits. The documents listed on A-1 will be submitted to the Court under separate cover.

> **2. Licenses directly from other publishers which grant a right to physical configurations do not grant a right to Defendants to make PDLs.**

In addition to licenses granted on behalf of publishers by the Harry Fox Agency, Defendants have listed licenses granted directly by third party publishers which do not purport to authorize the reproduction of Plaintiffs' Compositions in as PDLs.

Typical of this class of exhibits is Defendants' Exhibit 2210 (AFT 0063230-32), attached hereto as Exhibit B (under seal). Exhibit 2210 is a license issued by EMI April Music, Inc. and

4

EMI Blackwood Music, Inc. to Universal Music Group for the compositions "Spread Yo Shit" and "Outro" for the compact disc configuration, specifically an "explicit CD." *Id.*

This document, and the other documents like it, do not mention permanent downloads at all. Moreover, ¶ 3 in this license specifically limits the license to "one particular recording of said copyrighted work as performed by the artist and on the record number identified above." *Id.* The record number identified above is "0060-249860 7558 (Explicit CD)." Thus, the license is clear, on its face, not for permanent download. *S.O.S., Inc.; Hogan Sys., supra*. Like the Harry Fox licenses discussed above, this license cannot be construed as authorizing the reproductions at issue in this case and therefore is not relevant to this case. This license and licenses of this type are not relevant to the issues of this case and should, thus, be excluded.

Attached hereto as Exhibit B-1 is a list of additional licenses from third parties organized by the exhibit number given them in Defendants' exhibit list which purport to grant licenses for configurations other than permanent download. Plaintiffs move to exclude these exhibits on the grounds discussed above. The documents listed on B-1 will be submitted to the Court under separate cover.

### B. Unsigned Licenses, License Requests and incomplete documents should be excluded because they are not valid contracts.

In addition to the valid licenses for non-PDL configurations, discussed above, Defendants have listed many unsigned licenses and "license requests" on their exhibit list. Typical of this class of exhibit is Defendants' Exhibit 2260 (AFT 63715-16), attached hereto as Exhibit C (under seal).

It is black letter law that an unaccepted offer is not a contract. *See, e.g., Blossom v. R.R. Co.*, 70 U.S. 196, 205 (1866) ("Unaccepted offers to enter into a contract bind neither party, and can give rise to no cause of action.").

5

The exhibits in this category proffered by defendants lack "acceptance." "'[A]cceptance' is the 'manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.'" *Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1452 (9th Cir. 1996); Restatement (Second) of Contracts § 50. These license request forms require signature as acceptance, and no signature is present on the exhibits Defendants intend to introduce.

For example, exhibit 2260 is a license request from Todd Douglas at Universal Music Group to Nuez Music for the composition "Without Me."[1] Page one of the document states, in bold, that the recipient is to "sign all copies and return them to us for counter-execution." *Id.* Page two of the document states license terms, but contains no signatures. To be valid, the contract needs to be assented to in the manner specified by the offer. *See Fosson*, *supra*. Here, the offer requires a signature to be accepted and no signature is on Exhibit 2260 as marked. Thus, the Exhibit is not a valid license, and, moreover, does not license, or even purport to license, the composition for digital download.

Attached hereto as Exhibit C-1 is a list of other licenses and license requests organized by the exhibit number given them in Defendants' exhibit list which are unsigned. Plaintiffs move to exclude these exhibits because they are not valid licenses for anything, much less for permanent download. Exhibit C-1 also includes documents that are incomplete, missing one or more pages, and therefore must be excluded. The documents listed on C-1 will be submitted to the Court under separate cover.

---

[1] In addition to being unsigned, Exhibit 2260 is also for a non-PDL configuration. Even if it were signed, the document should be excluded as irrelevant based on the factors discussed above. Further, the document appears incomplete, and can be excluded for that reason as well.

6

### C. Licenses Which Grant Rights to Third Parties are Not Relevant because they Do Not Grant Rights to Defendants

Defendants have also included on their exhibit lists several valid licenses which grant licenses to third parties, not them. Typical of this group of licenses is Defendants' Exhibit 2479 (ENSIGN-0000043), attached hereto as Exhibit Defendant (under seal). Exhibit 2479 shows a license for the composition "Like Toy Soldiers" was issued to "7Logik Technology Inc." *Id.*

The license in this Exhibit does not license the composition to either of the Defendants. Thus, it is immaterial to the issues of this case.

Attached hereto as Exhibit D-1 is a list of similar licenses organized by the exhibit number given them in Defendants' exhibit list which do not reflect a license granted to Defendants and should be excluded on those grounds. The documents listed on D-1 will be submitted to the Court under separate cover.

### III. Conclusion

Defendants have marked as exhibits hundreds of licenses and license requests which are not relevant to the issues in this case. As explained above, these exhibits license configurations other than permanent download, are unsigned and inoperative, or are not to the defendants in this case. As such, these exhibits are not relevant and should be excluded by this court.

Dated: September 14, 2009                     Respectfully submitted,

/s/ Richard S. Busch

| | |
|---|---|
| Howard Hertz (P26653) | Richard S. Busch (TN BPR#14594) |
| Jay G. Yasso (P45484) | King & Ballow |
| Hertz Schram PC | 1100 Union Street Plaza |
| 1760 South Telegraph Road, #300 | 315 Union Street |
| Bloomfield Hills, MI 48302 | Nashville, TN 37201 |
| (248) 335-5000 | (615) 259-3456 |
| hhertz@hertzschram.com | rbusch@kingballow.com |
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via the Court's Electronic Filing System:

| Counsel | On behalf of |
|---|---|
| Daniel D. Quick, Esq.<br>Dickinson Wright PLLC<br>38525 Woodward Ave<br>Suite 2000<br>Bloomfield Hills, MI 48304<br>(t): (248) 433-7200<br>(e): dquick@dickinsonwright.com<br><br>Kelly M. Klaus, Esq.<br>Munger, Tolles & Olson LLP<br>355 South Grand Ave<br>Suite 3500<br>Los Angeles, CA  90071-1560<br>(t): (213) 683-9238<br>(e): kelly.klaus@mto.com | Apple Computer, Inc. and Aftermath Records d/b/a Aftermath Entertainment |

this 14th day of September 2009.

                                                    s/ Richard S. Busch