UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 4: TO EXCLUDE TESTIMONY OF STEVEN MARKS

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Glenn D. Pomerantz
Kelly M. Klaus
Melinda E. LeMoine
Munger, Tolles & Olson LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9100
glenn.pomerantz@mto.com; kelly.klaus@mto.com;
melinda.lemoine@mto.com

Attorneys for Defendants

8843154.1

# CONCISE STATEMENT OF ISSUES PRESENTED

Whether the Court should prevent Defendants from calling at trial Steve Marks, the General Counsel of the Recording Industry Association of America ("RIAA"), to testify regarding Harry Fox Agency's ("HFA") recent statements at deposition concerning, and performance under, a key provision of a 2001 Agreement between the RIAA, HFA, and the National Music Publishers Association, when Plaintiffs elicited incomplete and misleading testimony about that Agreement, and have no prejudice from the timing of Defendants' disclosure?

Defendants' answer: No.

I.  INTRODUCTION

The Court should deny Plaintiffs' Motion *in Limine* No. 4, to exclude the testimony of Steven Marks, Executive Vice President and General Counsel of the Recording Industry Association of America ("RIAA").  Mr. Marks has highly relevant testimony that undermines Plaintiffs' case concerning nearly 25% of the compositions in suit.  The only reason that Defendants disclosed Mr. Marks after the discovery cut-off is that *Plaintiffs*, just weeks ago (and also after the discovery cut-off), elicited incomplete and misleading testimony from a representative of the Harry Fox Agency ("HFA"), that Plaintiffs want to use to give the Court an inaccurate picture concerning a critical issue.  Plaintiffs are not too "busy" to depose Mr. Marks.  Plaintiffs themselves have been putting their own witnesses up for deposition *this week* as Plaintiffs try to add new theories to the trial that starts next week.  Plaintiffs instead are trying to preserve an inaccurate record.  This motion should be denied.

II.  MR. MARKS HAS HIGHLY RELEVANT TESTIMONY

Plaintiffs cannot, and so do not, dispute the relevance of Mr. Marks' testimony.  Mr. Marks was a principal negotiator of a landmark October 2001 Agreement among the RIAA, HFA and the National Music Publishers Association ("NMPA"), to facilitate the distribution of digital music (hereafter "2001 Agreement").  Here, Plaintiffs claim that HFA-issued licenses for permanent downloads do not license the compositions in their entirety, but only for the HFA-controlled share of the composition.  If Plaintiffs are *wrong*, and an HFA-issued license *does* grant download rights covering the entire composition, then without further inquiry Plaintiffs *lose* their case concerning 19 compositions in suit (almost 25% of the total works) that are

1

covered by HFA licenses.¹ Plaintiffs' position is directly contrary to Section 3.3 of the 2001 Agreement, which provides:

> 3.3. HFA *shall* issue mechanical licenses for DPD configurations (*including but not limited* to Licenses under this Agreement²) with respect to a musical work in its entirety if one or more of its [HFA's] publisher-principals owns or controls a partial interest in such musical work, even if other co-owners of such musical work are not HFA publisher-principals, except that, pursuant to Section 3.2, if all the HFA publisher-principals that own or control a partial interest in such work request that HFA not issue mechanical licenses on their behalf, HFA will not issue such licenses.³

Ex. 1 at 4, § 3.3 (2001 Agreement, Trial Ex. 236) (emphasis added).

As a primary participant in the negotiations over Section 3.3, Mr. Marks has highly relevant, percipient testimony about HFA's expression of its understanding that these words mean what they say: that a license for downloads from one HFA publisher-principal is a license for the composition "in its entirety." As General Counsel of the association whose members obtained HFA licenses pursuant to Section 3.3,⁴ Mr. Marks can and will offer relevant, admissible testimony about the parties' respective expectations in the wake of the 2001 Agreement about what HFA licenses would authorize. Mr. Marks' testimony is indisputably relevant.

---

¹ Plaintiffs also lose as to the HFA-licensed compositions, and all others in suit, because of numerous other licenses, including those granted through the controlled composition clauses in the Eminem recording agreements.

² Although the phrase "licenses under th[e 2001] Agreement" referred to two types of "DPD configurations," namely, "On-Demand Streams" and "Limited Downloads," there is no dispute that a permanent download is another type of "DPD configuration". As such, a permanent download is "included" within a DPD configuration subject to Section 3.3.

³ It is undisputed that the "except" clause in Section 3.3 does *not* apply to any of the works at issue in this case.

⁴ UMG Recordings, Inc., and part owner of Aftermath, is an RIAA member.

2

### III. THE TIME OF MR. MARKS' DISCLOSURE WAS DUE ENTIRELY TO PLAINTIFFS' ELICITING INCOMPLETE AND MISLEADING TESTIMONY FROM AN HFA REPRESENTATIVE ON AUGUST 11, 2009

Plaintiffs' *only* argument for excluding Mr. Marks' testimony is that Defendants disclosed him too late. What Plaintiffs do not tell the Court is that the reason Defendants disclosed Mr. Marks on August 28 is that, on August 11, 2009, Plaintiffs elicited misleading and incomplete testimony from Maurice Russell, an HFA employee who was designated to testify for the entity in response to subpoenas issued by *both* Plaintiffs *and* Defendants. Ex. 2 (Plaintiffs' Subpoena to HFA).[5] Mr. Russell, who was not at HFA when the 2001 Agreement was negotiated and whose knowledge of Section 3.3 and its operation came entirely from HFA's lawyers, Ex. 3 (Russell Tr. at 10:9-12, 70:22-73:21),[6] testified that Section 3.3 does not mean what it says. According to Mr. Russell, even though Section 3.3 says that it is "*not* limited to" On-Demand Streams and Limited Downloads, the provision does not apply to HFA licenses for digital permanent download configurations. Plaintiffs' Ex. C.

Mr. Russell's testimony is incomplete and misleading because HFA's counsel *repeatedly* refused to allow Defendants' counsel to discover the basis for Mr. Russell's counter-factual reading of Section 3.3. The following exchange was typical:

> [Q]: In view of what the 2001 agreement with the RIAA says about the licensing for DPD configurations in section 3.3, does that second paragraph [of a statement on HFA's frequently asked questions webpage about the coverage of HFA-issued download licenses] apply to any RIAA members who seek mechanical licenses for digital permanent downloads?
>
> [Mr. Busch objects]
>
> A: *Again, I am not a lawyer.* So I'm not in a position to interpret the [2001] RIAA agreement. *My understanding* is that with regard to full downloads, the agreement provides a process for obtaining licenses only [*i.e.*, only for the HFA-controlled share].

---

[5] Plaintiffs' failure to tell this Court that *they* also subpoenaed HFA, Mot. at 5, is (at best) highly misleading.

[6] "Q: You played no role in negotiating [Section 3.3]; correct? Mr. Russell: No role. Q: And you never discussed that provision with anyone at the RIAA; correct? A: Not that I recall." Ex. 3 (Russell Tr. at 73:16-21).

3

> Q: *And the basis of that is things you were told by your lawyers*.
>
> A. *Yes*.
>
> Mr. Pomerantz: *And you're not going to allow him to answer any questions about those conversations; correct?*
>
> [HFA Counsel]: *That's correct.*

Ex. 3 (Russell Tr. at 94:7-95:7) (emphasis added). This scenario - Mr. Russell making representations about his understanding based on what his lawyers told him, followed by instructions not to answer when Defendants' counsel tried to explore the basis for Mr. Russell's claimed understanding - occurred multiple times at the deposition. *See id*. at 52-53, 75-77.

It would be highly unfair and prejudicial for the Court to admit Mr. Russell's testimony as evidence of HFA's understanding, when Defendants were blocked from exploring the basis of that purported "understanding." The prejudice to Defendants increases two-fold if Mr. Marks is not permitted to testify about the facts he knows about HFA's contemporaneously expressed statements and actions concerning the language and operation of Section 3.3.

## IV. PLAINTIFFS' CRIES OF PREJUDICE FROM THE TIMING OF MR. MARKS' DISCLOSURE ARE FEIGNED

Mr. Russell's deposition was on August 11, 2009. Defendants immediately set about trying to secure Mr. Marks' availability to be deposed and to testify at trial. Mr. Marks had been on a summer vacation with his family in mid-August, and as soon as Defendants could contact him, they disclosed him to Plaintiffs, on August 28. They told Plaintiffs they would make Mr. Marks available for deposition, an offer that Plaintiffs tactically chose to bypass.

Plaintiffs now claim they are too "busy preparing for trial" to depose Mr. Marks. Mot. at 4. That explanation is contrived. What is really going on is that Plaintiffs are trying to score a "gotcha," and to present an incomplete factual record for the Court's consideration on Section 3.3. Plaintiffs have been attending depositions (including by videoconference, with witnesses and counsel in different cities) as late as *this very week*. *See* Ex. 4 (Martin Tr. Cover Page); Ex. 5 (Cohen Tr. Cover Page). The reason that Plaintiffs will make time for the depositions of these

4

witnesses is because Plaintiffs want them to testify next week on theories Plaintiffs think will help them.[7] Plaintiffs' gambit to bypass a deposition of Mr. Marks in favor of the instant motion is a tactical maneuver aimed to secure an unjust and prejudicial record.

## V.     CONCLUSION

If Plaintiffs will stipulate that Section 3.3 of the 2001 Agreement means what it says - and that the HFA issued licenses for permanent downloads in evidence in this case cover each underlying composition "in its entirety," then neither Mr. Russell nor Mr. Marks needs to testify regarding the 2001 Agreement.  If not, Plaintiffs' motion should be denied.

| | |
|---|---|
| s/Daniel D. Quick<br>Daniel D. Quick P48109<br>Dickinson Wright PLLC<br>38525 Woodward Avenue, Suite 2000<br>Bloomfield Hills, MI 48304<br>(248) 433-7200<br>dquick@dickinsonwright.com<br><br>Attorneys for Defendants | s/Melinda E. LeMoine<br>Munger, Tolles & Olson LLP<br>355 South Grand Avenue Suite 3500<br>Los Angeles, CA 90071-1560<br>(213) 683-9171<br>melinda.lemoine@mto.com<br><br>Attorneys for Defendants |

---

[7] Plaintiffs' cries of late disclosure also ring hollow in light of Plaintiffs' disclosure, just last week, in the pretrial order, of a witness (Mike Boila) whom Plaintiffs *never* before disclosed. Ex. 6 at 42 (Joint Final Pretrial Order).

8843154.1

# CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2009, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the all counsel.

s/Melinda E. Lemoine
Melinda E. LeMoine
Munger, Tolles & Olson LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9100
melinda.lemoine@mto.com

Attorneys for Defendants
