UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EIGHT MILE STYLE, LLC and
MARTIN AFFILIATED, LLC,

    Plaintiffs

vs.

APPLE COMPUTER, INC. and
AFTERMATH RECORDS d/b/a
AFTERMATH ENTERTAINMENT,

    Defendants.

_____/

Case No. 2:07-CV-13164
Honorable Anna Diggs Taylor
Magistrate Judge Donald A. Scheer

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 5

Daniel D. Quick (P48109)
Dickinson Wright PLLC
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Glenn D. Pomerantz
Kelly M. Klaus
Melinda E. LeMoine
Munger, Tolles & Olson LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9100
glenn.pomerantz@mto.com; kelly.klaus@mto.com;
melinda.lemoine@mto.com

Attorneys for Defendants

8847128.1

# CONCISE STATEMENT OF ISSUES PRESENTED

Whether licenses and license requests should be excluded as inadmissible when such licenses and requests are relevant and necessary to prove the circumstances under which Defendants typically send such license requests and obtain separate mechanical licenses, which Plaintiffs have put squarely at issue in this case?

Defendants' answer: No.

Whether the Court should exclude as inadmissible hundreds of Defendants' exhibits in advance of trial without any context as to how the Defendants intend to present such exhibits as evidence, when such challenged exhibits could be easily dealt with individually during trial as the issues arise?

Defendants' answer: No.

# CONTROLLING AUTHORITIES

**Cases**

*Crestview Cemetery Ass'n v. Dieden*, 54 Cal. 2d 744 (1960)

*Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708 (6th Cir. 1975)

**Federal Rules**

Fed. R. Evid. 401

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 5**

**I.      INTRODUCTION**

Plaintiffs move for the blanket exclusion before trial of several "broad categories" of highly relevant evidence —consisting primarily of documents produced from the copyright department of UMG Recordings, Inc. (part owner of Aftermath)—on the ground that these exhibits "do not go to any issue in this case." Mot. at 1.  Plaintiffs know that these documents in fact "go to" the issues Plaintiffs see as central to their case—under what circumstances Aftermath requests individual licenses from publishers for the compositions Plaintiffs claim were infringed ("Eminem Compositions").

Plaintiffs contend that the words "will be licensed" in a controlled composition clause means that licenses have to be separately requested and negotiated "some time in the future," *i.e.*, that "will be licensed" can mean "will *not* be licensed."  Doc. No. 136, Jt. Pretrial Order at 4. Plaintiffs theorize that Aftermath would not have sent license requests if it thought that the Controlled Composition clause itself granted a license. *Id*. at 6-7. The exhibits Plaintiffs are trying to exclude demonstrate precisely the opposite.

*A.  The challenged exhibits demonstrate that Aftermath requested individual licenses from publishers for the Eminem Compositions even when a Controlled Composition clause indisputably granted a license.*  The documents in issue (Mot. Exs. A-C) prove that Aftermath's practices in obtaining or requesting individual mechanical licenses for the Eminem Compositions *were no different* regardless of whether a particular Controlled Composition clause said "will be licensed," "is hereby licensed," or "you grant a license."  They also demonstrate the Aftermath's practices were no different regardless of whether the licenses sought were for physical or digital configurations.  In short, the documents are objective evidence of Aftermath's pre-dispute practices in dealing with individual publishers of the Eminem Compositions.  Even where the Controlled Composition clause with an artist indisputably granted a license under terms even

1

Plaintiffs would agree are "self-effectuating," Aftermath *still* requested individual mechanical licenses from those publishers, just like Eight Mile Style claims Aftermath did with it. Under California law, that evidence is not just relevant: it is entitled to "great weight" to aid the Court in interpreting contracts like those at issue here. *Crestview Cemetery Ass'n v. Dieden*, 54 Cal. 2d 744, 752-53 (1960).

***B. The challenged exhibits demonstrate that Plaintiff Eight Mile Style partnered with another publisher who routinely licensed the Eminem Compositions for use in permanent download form.*** Eight Mile Style hired another publisher, Ensign Music Corp., to issue licenses and collect royalties on Plaintiffs' behalf for the Eminem Compositions. Ensign Music did exactly that, including issuing many licenses authorizing the use of Eminem Compositions *in permanent download configurations.* Plaintiffs object to the admission of licenses that Ensign granted for permanent downloads, on the ground that licenses to anyone other than Aftermath or Apple are irrelevant. Not so. The fact that Eight Mile Style's own licensing agent not only never objected to permanent download configurations, but routinely granted licenses on Eight Mile Style's behalf for permanent download, is highly relevant evidence of how entities in the industry (including Plaintiffs' licensing agent) understood the issuance of licenses, *i.e.*, that they are required and routine.

***C. The challenged exhibits demonstrate that Plaintiffs' claim that Defendants were "willful infringers" is flatly wrong.*** Plaintiffs state that they will attempt to prove not only that Defendants infringed their copyrights, but that Defendants did so "willfully," or with knowledge that their conduct was infringing. *See* Doc. No. 136, Joint Pretrial Order at 34. Aftermath must be permitted to use the challenged exhibits to show that their practices vis-à-vis Plaintiffs are nearly identical to their practices with all of the other publishers of the Eminem Compositions. All of the other publishers of the Eminem Compositions assented to Aftermath's distribution through Apple's iTunes Store of records containing those compositions on the same terms that

2

Plaintiffs see as suspect. That strongly suggests that Defendants and others in the industry understood their methods to be sound. Plaintiffs cannot claim that Defendants' conduct constitutes "willful infringement" on the one hand and then deprive Defendants of the opportunity to show their good faith on the other.

*D. Plaintiffs' Motion is premature.* Finally, the Sixth Circuit has held that it is inadvisable to deal with broad categories of evidence in in limine motions. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). ("Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise."). There is no reason this Court must determine in advance of trial the relevance of whole categories of documents that Plaintiffs have challenged, without any context. If Plaintiffs have a valid objection to a particular document, they should raise it at the appropriate time at trial. *Id*. If the Court questions the relevance or Defendants' need for these documents after reviewing the parties' papers in this Motion, Sixth Circuit law shows the Court should defer any questions until they are ripe at trial, and thus "deal with questions of admissibility of evidence as they arise." *Id*.

## II.     ARGUMENT
### A.     The Challenged Documents Demonstrate Aftermath's Actual Practices of Seeking and Obtaining Individual Mechanical Licenses from Publishers

Plaintiffs have put Aftermath's practices of seeking and obtaining individual mechanical licenses squarely at issue in this case. According to Plaintiffs, because Aftermath sent license requests to Plaintiff Eight Mile Style, Aftermath must have known it did not have the right to distribute records embodying the Eminem Compositions in permanent download form. Doc. No. 136, Joint Pretrial Order at 6-7. Plaintiffs contend that Aftermath's practice is to only send such license requests when it believes it does not have a license under a Controlled Composition clause. *Id*. Under Plaintiffs' theory, if Aftermath believes it has a license granted through a Controlled Composition clause, it sends an advice letter -- not a license request. *Id*.

3

By contrast, Aftermath contends that at the time the Eminem Compositions were processed and released on records, Aftermath frequently sent mechanical license requests *regardless* of whether it believed it had a license granted through a Controlled Composition clause. Aftermath's process of obtaining individual mechanical licenses was wholly unrelated to the question of whether a pre-existing license had already granted the necessary rights to distribute records embodying the compositions. Among other reasons, mechanical license requests are sent to confirm payment terms, confirm publishers' respective shares, and to provide administrators on both sides of the deal with the necessary paperwork to set up payment. Under Aftermath's theory, the sending of a mechanical license request was not reflective of whether Aftermath believed it had a license granted through a Controlled Composition clause.

The documents Plaintiffs challenge thus are relevant -- they tend to show that Aftermath's factual contentions are more probable than Plaintiffs with regard to the significance of the exchange of individual mechanical licenses. *See* Fed. R. Evid. 401 (defining relevance). The challenged documents show that Aftermath sent license requests to publishers regardless of whether a Controlled Composition clause indisputably granted a license. For example, one of the documents Plaintiffs seek to exclude is Defendants' Exhibit 2219, a license for the explicit vinyl configuration of the album "D12 World" issued to Shady Records on behalf of D12's publisher, EMI Music. No one disputes that D12 is covered by an explicit, "self-effectuating" Controlled Composition clause, even under Plaintiffs' theory. *See* Ex. 1 (D12 agreement) at 12.01. Nevertheless, just as it did with Eight Mile Style, the copyright department still sent to D12's publisher a license request, which the publisher signed and returned. *See* Ex. 2 (Exhibit 2219). Exhibit 2219 and similar documents thus are relevant to show that the copyright departments' practices are no different, regardless of whether a particular artist's Controlled Composition clause reads that compositions "will be licensed" or that the artist "grant[s] a license".

4

### B. The Challenged Documents Demonstrate that Plaintiffs' Co-Publisher and Administrator Licensed the Eminem Compositions for Permanent Download

In their Complaint, Plaintiffs claimed to be the "exclusive" owners of several Eminem Compositions. But it was later revealed that in fact Plaintiffs *shared* ownership of many of the Eminem Compositions with Ensign Music Corp., who served as Plaintiffs' co-publisher and administrator. The licenses issued to third parties that Plaintiffs list in Exhibit D are not introduced to authorize Aftermath or Apple's distribution of records containing compositions. Rather, they are offered to show that Plaintiffs' co-publisher, Ensign, routinely issues licenses for the Eminem Compositions in permanent download configurations.

### C. The Challenged Documents Prove that Plaintiffs Claim of "Willful Infringement" is Baseless

The challenged documents in Plaintiffs' Exhibits A-C further prove that the copyright departments' practices with regard to the interplay between Controlled Composition clauses and individual mechanical licenses do not prove "willfulness." Plaintiffs point to Aftermath having sent requests to Eight Mile Style as evidence that Aftermath knew it did not have the right to distribute the compositions. But Aftermath sent licenses regardless of the tense and verbiage in Controlled Composition clauses, and regardless of whether a particular party purported to "object." Their conduct thus could not be "willful," because the fact that a license was sent does not indicate that Aftermath did not think it had a license.

### III. CONCLUSION

Plaintiffs' Motion should be denied.

s/Daniel D. Quick
Daniel D. Quick P48109
Dickinson Wright PLLC
38525 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
(248) 433-7200
dquick@dickinsonwright.com

Attorneys for Defendants

s/Melinda E. LeMoine
Munger, Tolles & Olson LLP
355 South Grand Avenue Suite 3500
Los Angeles, CA 90071-1560
(213) 683-9171
melinda.lemoine@mto.com

Attorneys for Defendants

8847128.1

# CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2009, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the all counsel.

                                              <u>s/Melinda E. Lemoine</u>
                                              Melinda E. LeMoine
                                              Munger, Tolles & Olson LLP
                                              355 South Grand Avenue, Suite 3500
                                              Los Angeles, CA 90071-1560
                                              (213) 683-9100
                                              melinda.lemoine@mto.com

                                              Attorneys for Defendants