**UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**EIGHT MILE STYLE, LLC, and MARTIN AFFILIATED, LLC,**

      **Plaintiffs,**

vs.

**APPLE COMPUTER, INC. and AFTERMATH RECORDS d/b/a AFTERMATH ENTERTAINMENT**

      **Defendant.**

**Case No. 2:07-cv-13164
Hon. Anna Diggs Taylor
Magistrate Judge Donald A. Scheer**

| Howard Hertz, Esq. (P26653) <br> Jay G. Yasso, Esq. (P45484) <br> Hertz Schram PC <br> 1760 S. Telegraph Rd., Suite 300 <br> Bloomfield Hills, MI 48302 <br> (248) 335-5000 <br> hhertz@hertzschram.com <br> jyasso@hertzschram.com <br> Attorneys for Plaintiffs | Richard S. Busch (TN BPR#14594) <br> King & Ballow <br> 1100 Union Street Plaza <br> 315 Union Street <br> Nashville, TN 37201 <br> (615) 259-3456 <br> rbusch@kingballow.com <br> Attorneys for Plaintiffs |
|---|---|

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT AFTERMATH RECORDS AND DEFENDANT APPLE INC.'S MOTION IN LIMINE NO. 2: TO LIMIT THE TESTIMONY OF MARK A LEVINSOHN**

**CONCISE STATEMENT OF ISSUE PRESENTED**

Whether the Court should exclude testimony from Mark A. Levinsohn Plaintiffs have already said, on the record, they were not intending to proffer?

Plaintiffs' answer: No.

I.   INTRODUCTION

Defendants move to exclude the testimony of Mark A. Levinsohn based on privilege objections made by Plaintiffs' counsel during the deposition. Specifically, Defendants argue in their Motion in Limine that "Plaintiffs' counsel repeatedly refused to allow Defendants to question Mr. Levinsohn regarding matters that might be relevant to disputed issues of contract interpretation, such as the custom and practice of participants in the music industry regarding controlled composition clauses." Doc. No. 143, p.3. Plaintiffs do not intend to have Mr. Levinsohn testify to any subject he was prevented from testifying on the basis of privilege at his deposition. As such, this Motion is entirely unnecessary.

Moreover, Defendants *did* elicit testimony Levinsohn regarding his understanding of controlled composition clauses generally. To the extent Mr. Levinsohn's understanding of controlled composition clauses is relevant to negotiations he entered into with Rand Hoffman or other individuals at Universal, he should be allowed to testify on the same subjects as at his deposition.

II.  ARGUMENT

   A.   **Mr. Levinsohn Should Be Allowed to Testify to the Same Matters He Testified to At His Deposition.**

Defendants took a deposition of attorney Mark A. Levinsohn which lasted for approximately 10 hours (inclusive of breaks), covering a wide variety of topics for both this case and the *F.B.T.* case, which was then pending in California. Of particular relevance to this case is Mr. Levinsohn's percipient testimony regarding his negotiations on behalf of Plaintiffs with Universal for the "Lose Yourself" digital license. Defendants also briefly questioned Mr. Levinsohn regarding his role in negotiating an agreement between Universal and Plaintiffs

allowing them to license Plaintiffs' Compositions to third parties for use as "mastertones," cellular phone ring-tones.

Defendants claim, incorrectly, that Mr. Levinsohn was prevented from testifying about his understanding of controlled composition clauses. The deposition transcript is clear that Defendants were allowed to elicit Mr. Levinsohn's testimony on this matter. To the extent any testimony elicited by Defendants in Mr. Levinsohn's deposition is relevant background to his negotiations with Universal, he should be permitted to testify. Further, it must be noted, Defendants make no objection to any testimony actually given by Mr. Levinsohn at his deposition.

The record is clear that Mr. Levinsohn did testify about controlled composition clauses. Defendant's counsel asked Mr. Levinsohn his understanding of what a controlled composition clause is. Mr. Levinsohn responded:

> It is generally a provision contained within a recording agreement that speaks to certain terms that the record company would like to have apply to the mechanical licenses that it obtains in order to manufacture and distribute the recordings by the artist who is being signed to the label pursuant to that recording agreement.

Declaration of Marc Guilford ("Guilford Decl."), Ex. A, Transcript of the Deposition of Mark A. Levisohn, 75:4-10. Defendants further questioned Mr. Levinsohn on whether controlled composition clauses that he drafted granted mechanical licenses to record companies. Mr. Levinsohn responded:

> As I've said, the controlled compositions clause established a – certain conditions and terms, particularly with regard to rates of mechanical royalties and caps on mechanical royalties. Record companies in an attempt to mitigate the costs that they have, relative costs to manufacture and to distribute records, seek to limit their exposure and use the controlled compositions clause as a way to let the artist know that the record company does not intend to pay more than a certain amount of royalties per unit for each individual record. And to advise the artist that if the

2

record company is obligated to pay more than the excess that the record company may be required to pay would be typically deducted from other monies payable to the artist under the agreement. And so it is intended to be an incentive or I should say a disincentive for the artist. But for the artist to attempt to exert influence over whoever the publishers are with respect to the compositions that the artist is involved in writing, to persuade those third parties or their representatives to agree for the artist's benefit as well, to issue licenses at the rates and with the caps, and with the limitations prescribed in the controlled compositions clause.

[. . . ]

Q. As you sit here today, can you identify any recording agreements that you worked on for any of your record company clients in which you believe that the artist granted a license through the controlled composition clause?

A. No.

*Id.* at 77:19-78:23; 80:24-81:4, 11.

Defendants took up this subject again with Mr. Levinsohn, and he again answered:

Q. Do you see paragraph 6, "Mechanical Royalties"?

A. Yes.

Q. And you see in the first sentence there it states, and I'll delete the parenthetical, "All Controlled Compositions will be licensed to Aftermath and its distributors/licensees," and then it goes on. Do you see that?

A. Yes.

Q. Have you ever drafted a controlled composition clause which has the language will be licensed in it?

A. I don't believe so.

Q. Have you ever been involved in negotiating a controlled composition clause which has the language will be licensed in it?

A. I don't recall.

*Id.* at 245:24-246:24.

Defendant's Motion in Limine is, thus, based on a faulty premise. Defendants were able

3

to question Mr. Levinsohn on a wide range of subjects relating to controlled composition clauses and he should be permitted to testify at trial in the same manner. Further, Mr. Levinsohn is also clear that he communicated Joel Martin's understanding of controlled composition clauses to Rand Hoffman of Universal.

> Q. Did you have a conversation with Mr. Hoffman about what the phrase will be licensed means in the agreements between F.B.T. and Aftermath?
>
> A. The conversation that I had with Mr. Hoffman concerned that Universal knew that Joel believed that the mechanical royalties paragraph did not cover digital reproductions and that Joel objected to the digital distribution of his song catalogue in the form of digital downloads and other digital distribution. And that with the exception of the Lose Yourself license that he was willing to enter into as an experiment, and with the exception of the mastertones agreement that the paragraph 6, "Mechanical Royalties" paragraph, did not cover digital rights.

*Id.* at 247:18-248:9.

Contrary to defendants' Motion in Limine, Mr. Levinsohn does give testimony regarding controlled composition clauses. Plaintiffs will only elicit testimony from Mr. Levinsohn on matters he testified to during his deposition. To the extent it purports to reach testimony actually given by Mr. Levinsohn in deposition, Defendants' Motion should be denied.

> **B. Mr. Levinsohn is Not Offering Expert Testimony and Defendants Do Not Object to the Testimony Mr. Levinsohn Gave at his Deposition.**

Defendants weakly assert the Court should preclude Mr. Levinsohn from testifying based on Plaintiffs not identifying him as an expert witness. Doc. No. 143, p. 4. Defendants also, in the same breath, assert that Plaintiffs' instructions precluded any questioning of Mr. Levinsohn on such matters at his deposition. *Id.* Thus, it appears Defendants have no issue with Mr. Levinsohn testifying on the same matters that he did at his deposition, which is precisely the testimony Plaintiffs intend Mr. Levinsohn give. Defendants will be free, of course, to object to

any proffered expert testimony at trial, if necessary.

Plaintiffs do not intend to question Mr. Levinsohn on any subject Mr. Levinsohn was prevented from testifying about at his deposition due to privilege, and Plaintiffs are not offering Mr. Levinsohn as an expert witness. Thus, Defendant's Motion on this point is unnecessary and should be denied.

## IV. CONCLUSION

For the reasons described above, the Court should allow Mr. Levisohn to testify to the same matters he testified to at his deposition.

Dated: September 17, 2009          Respectfully submitted,

/s/ Richard S. Busch

| | |
|---|---|
| Howard Hertz (P26653) | Richard S. Busch (TN BPR#14594) |
| Jay G. Yasso (P45484) | King & Ballow |
| Hertz Schram PC | 1100 Union Street Plaza |
| 1760 South Telegraph Road, #300 | 315 Union Street |
| Bloomfield Hills, MI 48302 | Nashville, TN 37201 |
| (248) 335-5000 | (615) 259-3456 |
| hhertz@hertzschram.com | rbusch@kingballow.com |
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served via the Court's Electronic Filing System:

| Counsel | On behalf of |
| --- | --- |
| Daniel D. Quick, Esq.<br>Dickinson Wright PLLC<br>38525 Woodward Ave<br>Suite 2000<br>Bloomfield Hills, MI 48304<br>(t): (248) 433-7200<br>(e): dquick@dickinsonwright.com<br><br>Kelly M. Klaus, Esq.<br>Munger, Tolles & Olson LLP<br>355 South Grand Ave<br>Suite 3500<br>Los Angeles, CA 90071-1560<br>(t): (213) 683-9238<br>(e): kelly.klaus@mto.com | Apple Computer, Inc. and Aftermath Records d/b/a Aftermath Entertainment |

this 17th day of September 2009.

s/ Richard S. Busch